# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>Ray J. Garcia<br><br>*Defendant(s)* | )<br>)<br>) Case No. 4:21-mj-71517-MAG<br>)<br>)<br>)<br>) |

**FILED**

Sep 24 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __December 2019__ in the county of __Alameda County__ in the
__Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2243(b) | Sexual Abuse of a Ward |

Maximum Penalties: 15 years imprisonment, $250,000 fine, three years supervised release, $100 special assessment, and a fine.

This criminal complaint is based on these facts:

See attached affidavit of FCI Special Agent Katherine Barclay

☑ Continued on the attached sheet.

Approved as to form  /s/ *Molly K. Priedeman*
                    AUSA Molly K. Priedeman

/s/ Katherine Barclay
*Complainant's signature*

Katherine Barclay
*Printed name and title*

Sworn to before me by telephone.

Date: 9/23/21 6:15 pm

*Judge's signature*

City and state: San Jose, California            Hon. Nathanael Cousins, U.S. Magistrate Judge
                                                *Printed name and title*

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Katherine Barclay, a Special Agent with the Federal Bureau of Investigation (FBI), having been duly sworn, hereby declare the following:

### I.  INTRODUCTION

**A.  Purpose of Affidavit**

1. This Affidavit is made in support of a Criminal Complaint and Arrest Warrant for RAY J. GARCIA (hereafter "GARCIA"). This affidavit is made in support of a criminal complaint charging GARCIA with Sexual Abuse of a Ward, in violation of Title 18, United States Code, Section 2243(b).

**B.  Sources of Information**

2. The statements made in this affidavit are based on my experience and training as a Special Agent with the FBI, information provided to me by other law enforcement officers and agents, evidence obtained via subpoenas, search warrants, and from the Federal Bureau of Prisons ("BOP"), which I believe to be reliable, as well as other sources. To the extent this Affidavit discusses statements made by witnesses and/or victims, I have also included examples of information developed independently during the investigation that corroborates many of their statements. The inmate victims and witnesses discussed in this Affidavit have been convicted of one or more felonies, including potentially fraud convictions and other offenses, and were each sentenced to custodial terms with BOP. Because this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that GARCIA violated 18 U.S.C. § 2243(b). Further, my understanding of the facts may evolve as the investigation continues.

### C. Agent Background

3. I am a Special Agent ("SA") with the FBI, and have been since August 2016. As an FBI Special Agent, I have investigated various federal crimes, including computer crimes, crimes involving fraud, public corruption, and civil rights. As a federal agent, I am authorized to investigate violations of the laws of the United States, and to execute warrants issued under the authority of the United States.

4. As part of my training, I have learned about a number of investigative techniques including, but not limited to, interviewing targets, subjects and other witnesses, reviewing financial records, reviewing electronic evidence including information from emails and social media websites, and conducting search warrants of electronic devices, residences, email accounts, and other locations. Through my training, experience, and my discussions with other experienced law enforcement officers and agents, I am familiar with the methods of operation used by correctional officers who attempt to engage or engage in sexual relationships with BOP inmates, and how correctional officers and others introduce contraband into federal prisons, and the types of authorized communication allowed by BOP inmates.

5. Through my training, experience, and my discussions with other experienced law enforcement officers, I am familiar with the method of operation used by correctional officers who attempt to engage or engage in sexual relationships with Federal Bureau of Prisons (BOP) inmates, and how correctional officers and others introduce contraband into federal prisons. During my career to date, I have participated in investigations involving at least four separate BOP employees involved in suspected criminal conduct, including sexual abuse of a ward, in violation of 18 U.S.C. § 2243(b). In the course of these investigations, I have participated in the execution of search warrants, reviewed recorded inmate video visits, listened to recorded inmate

BARCLAY AFF. IN SUPPORT OF CRIMINAL COMPL.

2

telephonic calls, read written correspondence, analyzed financial records, and interviewed witnesses and victims about misconduct allegations. Through this experience, I know that victim inmates may be reluctant to report misconduct by correctional officers or other inmates due to a fear of retaliation, concerns about being negatively labeled as someone that reports misconduct to authorities (commonly referred to using the slang term of "snitch"), fear of being isolated through placement in the Special Housing Unit ("SHU"), and/or causing a problem that could delay their release date from BOP. Further, it is also common for victims of sexual abuse generally to deny sexual conduct occurred due to shame, embarrassment, denial, or a fear of retribution.

6. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code. As a federal agent, affiant is authorized to investigate violations of laws of the United States and is a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

### D.     Applicable Law

7. The elements of Sexual Abuse of a Ward relevant to this application for a criminal complaint are: (1) the defendant knowingly engaged in a sexual act with a victim; (2) at the time the victim was in official detention at a federal facility; (3) the victim was under the custodial, supervisory, or disciplinary authority of the defendant, and (4) the defendant's actions took place within the special maritime and territorial jurisdiction of the United States or in a federal prison. *See* 18 U.S.C. § 2243(b).

## II.   STATEMENT OF PROBABLE CAUSE

### A.   Background on FCI Dublin and GARCIA

8.   The BOP Federal Correctional Institution in Dublin (hereafter, "FCI Dublin") is an all-female low security federal correctional institution with an adjacent minimum-security satellite camp located in Dublin, California.  This facility is located within the Northern District of California (NDCA).

9.   GARCIA is the warden at FCI Dublin.[1]  From approximately December 2018 to November 2020, GARCIA was the associate warden at FCI Dublin.  As the warden, GARCIA is responsible for the safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin.  GARCIA is also responsible for hiring, training, and supervising and managing staff, and determining operating procedures and policies.  In his role as associate warden and warden, GARCIA had disciplinary authority over all inmates incarcerated at FCI Dublin.

10.   GARCIA was required to conduct his work and supervise inmates in accordance with BOP policies and procedures.  He was advised, as part of his training, that he could not maintain inappropriate relationships with inmates, which included becoming emotionally, physically, sexually, or financially involved with inmates or former inmates.  GARCIA was

---

[1] In July 2021, GARCIA was placed on administrative leave based on the allegations described herein.

BARCLAY AFF. IN SUPPORT OF CRIMINAL COMPL.

4

further advised that he could not show favoritism or give preferential treatment to one inmate or group of inmates over another.

11. In 2019 and 2020, GARCIA led training on the Prison Rape Elimination Act ("PREA"),[2] and trained all newly arrived supervisors on PREA procedures and policies. GARCIA was also the PREA chair for the PREA audit at FCI Dublin initially scheduled for 2020.[3] In my training and experience, I know that federal prisons undergo audits to assess compliance with the PREA standards. In preparation of the audit, GARCIA was assigned to set up trainings for inmates to ensure they understood how to report PREA allegations.

### B. Initiation of the Investigation

12. In mid-July 2021, the attorney of an inmate at FCI Dublin reported that GARCIA sexually abused Victim 1. Victim 1's attorney (hereafter Witness 1) told investigators that Victim 1 reported that GARCIA had penetrated Victim 1's vagina with his finger on multiple occasions while Victim 1 was incarcerated at FCI Dublin. Victim 1's attorney also stated that as a result of the sexual abuse, Victim 1 reported psychological distress, including difficulties eating, concentrating, and sleeping. The alleged sexual conduct would violate BOP policies and constitute potential violations of federal law. As a result of this report and other information, FBI and the Department of Justice Office of the Inspector General ("DOJ OIG") began an investigation.

///

---

[2] PREA was passed in 2003. The purpose of the act is to provide for the analysis of the incidence and effects of prison rape in federal, state, and local institutions and to provide information, resources, recommendations, and funding to protect individuals from prison rape.

[3] I understand that the PREA audit was originally scheduled for 2020 but was rescheduled to September 2021 due to the COVID-19 pandemic.

BARCLAY AFF. IN SUPPORT OF CRIMINAL COMPL.

### C. GARCIA Engaged in Sexual Conduct with an Inmate and Graphic Sexual Images Were Discovered on His Electronic Devices

13. As detailed below, agents have developed evidence demonstrating that GARCIA knowingly engaged in a sexual act with at least one inmate while he was the associate warden at FCI Dublin, and while the inmate was incarcerated at FCI Dublin under his custodial, supervisory, or disciplinary authority. Agents have also developed evidence that GARCIA asked at least two inmates to strip naked for him when he did his rounds[4] in the prison, and that he took pictures of at least one of those inmates while she was naked in a cell at FCI Dublin. As detailed below, several nude photographs of Victim 1 were located on GARCIA's personal laptop computer seized from his residence. Further, a large volume of sexually graphic photographs, including images of male and female genitalia, and nude photographs of GARCIA, was discovered on GARCIA's work cellphone issued by BOP.

#### a. GARCIA Digitally Penetrated Victim 1 on Multiple Occasions

14. In July 2021, agents interviewed Victim 1, an inmate at FCI Dublin. Victim 1 reported that GARCIA showed an interest in Victim 1 as soon as GARCIA arrived at FCI Dublin in approximately 2018. GARCIA frequently complimented Victim 1's body, and talked about wanting to eat her "pussy." GARCIA also asked about Victim 1's family, gave her candy, and suggested that he could help her transfer to a facility closer to her family.[5] GARCIA also shared personal information with Victim 1 including his birthday,[6] that he owned a timeshare in Las

---

[4] In my training and experience, "rounds" are when a BOP employee walks around the facility to check in on inmates or otherwise monitor inmates or staff.

[5] BOP records suggest that GARCIA approved a request that Victim 1 be transferred to a facility closer to her family.

[6] Based on personnel records and publicly available data, agents confirmed that GARCIA provided his true birthdate to Victim 1.

BARCLAY AFF. IN SUPPORT OF CRIMINAL COMPL.

6

Vegas,[7] and had a minor son.[8] GARCIA told Victim 1 that he couldn't wait until she was released, so they could be together.

15. Victim 1 described several instances that she and GARCIA had sexual contact, including several instances where he penetrated Victim 1's vagina with his finger. Some of those incidents are described in more detail below.

16. The first sexual contact between Victim 1 and GARCIA occurred in approximately December 2019. Victim 1 reported that GARCIA grabbed Victim 1's breast, pulled down her pants, and inserted his finger in her vagina. Victim 1 reported feeling shocked and uncomfortable by GARCIA's actions, and she pushed his hand away. After Victim 1 pushed GARCIA's hand away, GARCIA took Victim 1's hand and placed it on his penis. Victim 1 stated that she could feel that GARCIA had an erection. Later, GARCIA told Victim 1 that he was taking a "risk" on her.

17. During another incident, GARCIA told Victim 1 that he would be doing rounds at a certain time the next day and he wanted to see her. Victim 1 understood that to mean that she should be naked when GARCIA did his rounds. The day of the incident, Victim 1 went into another inmate's cell (Witness 2)[9] that GARCIA told her to use because it had only one neighboring cell and was therefore "safer."[10] According to Victim 1, when GARCIA did his rounds, he walked into the cell, and closed the door. Victim 1 took off her robe and positioned herself on her hands and knees while naked. While she was in this position, Victim 1 observed that GARCIA appeared to be photographing her. GARCIA then handed Victim 1 a candy cane

---

[7] Phone records corroborate that GARCIA frequently travels to Las Vegas.

[8] Investigators have confirmed that GARCIA has a minor son.

[9] Agents interviewed Witness 2, who confirmed that Victim 1 was permitted to use Witness 2's cell.

[10] In my training and experience, I know that BOP staff members who sexually abuse inmates will often choose areas of a prison without surveillance cameras and/or in areas less likely to attract attention. GARCIA's suggestion that they use a "safer" cell is consistent with this type of behavior.

BARCLAY AFF. IN SUPPORT OF CRIMINAL COMPL.

that appeared as if it had been partially consumed, and instructed her to put it in her vagina. Victim 1 complied. GARCIA then took the candy cane back. Later that same day, Victim 1 saw GARCIA walking around FCI Dublin with the candy cane in his mouth. GARCIA later told Victim 1 that he had checked the cameras, and they were fine. In my training and experience, I know that correctional officers who sexually abuse inmates will check surveillance footage to determine if the abuse was captured on camera. I understand GARCIA's statement to Victim 1 to mean that he had reviewed the surveillance footage, and the abuse was not captured on the video.

18. During a third incident, GARCIA asked Victim 1 to show him a broken sink in a bathroom. GARCIA and Victim 1 kissed in multiple bathrooms and GARCIA put his finger in Victim 1's vagina while they were in a bathroom. During the interaction, GARCIA said "show me, show me," which Victim 1 understood as a demand to pull her pants down. She pulled her pants down, turned around, and bent over at the waist.

19. Victim 1 reported that a fourth incident occurred when the "PREA people" were visiting. I understand Victim 1's reference to "PREA people," to be a reference to PREA staff who visited FCI Dublin to assess FCI's Dublin's compliance with PREA and to make recommendations regarding their policies and procedures.[11] During this incident, and while the PREA staff members were on site, GARCIA told Victim 1 he needed to touch her, took her into one of the changing stalls designed for PREA compliant searches, grabbed her breasts, and briefly grabbed her vagina.

20. Victim 1 reported that GARCIA and Victim 1's sexual contact ended when the prison entered a lockdown due to the COVID-19 pandemic. At one point, GARCIA told Victim 1 that the FBI was watching officers and that they had to be careful. I believe that

---

[11] Based on my training and experience, I know that PREA staff members are trained to analyze a facility's compliance with PREA standards, and that they conduct site visits to assess compliance.

BARCLAY AFF. IN SUPPORT OF CRIMINAL COMPL.

GARCIA may have been referencing an active investigation into a BOP correctional officer, who was later arrested for criminal misconduct occurring at FCI Dublin.[12] In my training and experience, I know that as warden of FCI Dublin, GARCIA would likely have been apprised of the investigations into a BOP correctional officer formerly under his supervision. As a result, I believe GARCIA was aware that federal authorities were investigating allegations of sexual abuse of a ward at FCI Dublin.

### D. GARCIA Requested that Victim 1 and Victim 2 Strip For Him and Took Photographs of Victim 1 While Naked

21. Victim 1 reported that after the first sexual incident occurred between GARCIA and Victim 1 in approximately December 2019, GARCIA began asking Victim 1 to strip naked for him when he did his rounds. GARCIA would tell her what time he would be doing his rounds so Victim 1 could undress for him when he walked by. Victim 1 stated that she would subsequently undress and be naked for GARCIA when he would do his rounds. Victim 1 would use her cell and Witness 2's cell. On some instances, GARCIA would have his cellphone and appeared to be taking pictures of her.

22. Victim 1 also stated that GARCIA showed her pictures of his penis on his cellphone on multiple occasions. For example, Victim 1 stated that on her birthday in 2021, GARCIA showed her a picture of his penis after he had ejaculated and told her, "happy birthday."

23. On or about July 9, 2021, an inmate at FCI Dublin (hereafter, Witness 3) reported that her cellmate (hereafter, Victim 2), was also undressing for GARCIA when he made his rounds.

24. Victim 2 told agents that, similar to Victim 1's allegations, on multiple occasions

---

[12] On or about June 25, 2021, BOP correctional officer Ross Klinger was charged with sexual abuse of a ward, in violation of 18 U.S.C. § 2243(b). (*United States v. Ross Klinger*, Case No. 21-MJ-71085-MAG.)

BARCLAY AFF. IN SUPPORT OF CRIMINAL COMPL.

GARCIA had requested that Victim 2 be undressed for him when he did his rounds. According to Victim 2, GARCIA would tell her at breakfast, which was before he did rounds, whether it was a "yes" or a "no" day. Victim 2 understood that if it was a "yes" day, she should be naked when GARCIA did his rounds, and if it was a "no" day, she should not be naked when he did his rounds.

25. On or about July 22, 2021, law enforcement executed a federal search warrant on GARCIA's residence, his office at FCI Dublin, his vehicle, and his person. On GARCIA's personal laptop, agents located naked photographs of Victim 1 inside a prison cell. In one of the photographs, Victim 1 is standing, facing the camera, and positioned next to bunk beds. The photograph captures Victim 1's body from her upper-thigh to the top of her head and she fills most of the frame. Based on my review of the photograph, I believe GARCIA was likely inside of the cell with Victim 1 when he took the photograph of her due to Victim 1's apparent proximity to the camera.[13] Agents also located several photographs of a fully nude woman, believed to be Victim 1,[14] on her hands and knees facing away from the camera and positioned on a bed in a cell at FCI Dublin. In one of those images, GARCIA's reflection can be seen in the window behind Victim 1. In the same image, the cell number is visible in the photograph; it is written on a piece of furniture alongside the wall. Based on BOP records, the cell number in the image matches the cell number assigned to Witness 2 during the timeframe of Victim 1's allegations. This fact corroborates Victim 1's statement that she would use Witness 2's cell to undress for GARCIA, as well as Witness 2's statement that Victim 1 was welcome to be in her

---

[13] I believe GARCIA took this photograph for several reasons, including that the photograph described above was later located on GARCIA's personal laptop at his residence, and that Victim 1 had described GARCIA taking nude photographs of her in a cell at FCI Dublin. In addition, as described in more details below, numerous sexually explicit photographs were located on GARCIA's BOP issued cellphone, which suggests to me that GARCIA may have initially taken this image with his cellphone at FCI Dublin.

[14] This opinion is based on several factors, including the general body build, haircut, and hair color match those of Victim 1.

BARCLAY AFF. IN SUPPORT OF CRIMINAL COMPL.

cell. The images depicting Victim 1 were later shown to Victim 1, and Victim 1 confirmed that the individual in the images was Victim 1; Victim 1 also recognized the figure in the window reflection to be GARCIA.

26. Investigators also located hundreds of images of male and female genitalia, as well as nude and partially nude photographs of GARCIA and other women, on GARCIA's personal laptop and his BOP-issued cell phone. Several of the photographs taken of GARCIA appear to have been taken in a commercial restroom, which investigators suspect may be in a federal facility. Among those photographs found on GARCIA's BOP-issued cellphone, agents identified an image of a penis that appears to have been taken on Victim 1's birthday in 2021. The date associated with this image corroborates Victim 1's statement that GARCIA showed her a picture of his penis on her birthday in 2021.

27. On or about July 22, 2021, law enforcement conducted a recorded interview of GARCIA. GARCIA was asked if he ever stopped and looked when an inmate was undressing during his rounds. Initially, GARCIA said he would not stop and look. Later, GARCIA stated, "if they're undressing, I've already looked." Soon thereafter, he made the following unprompted remark: "I don't like schedule a time like you be undressed and I'll be there." At the time of his remark, agents had not mentioned the allegations made by Victim 1 and Victim 2 that GARCIA told them to be undressed at a certain time, so he could see them naked while doing rounds. GARCIA then told agents that he was "uncomfortable" with the direction of the questioning.

### E.    GARCIA Attempted to Deter Victim 1 From Reporting Abuse

28. Victim 1 reported that she did not trust any of the correctional officers at FCI Dublin. GARCIA told her that he and the head of Special Investigative Services (SIS) were "close friends." Based on my training and experience, I know that SIS is responsible for conducting preliminary investigations into allegations of misconduct by inmates and correctional officers at FCI Dublin.

29. Victim 1 also reported that GARCIA told her that he liked convicts because they

do not go to the cops, that he could not be fired, and that she could not "ruin him."[15]  In my training and experience, correctional officers who sexually abuse inmates often engage in tactics to deter inmates from reporting their misconduct, by threatening them, and/or suggesting that no one will trust them or believe them.  I believe that GARCIA's statements to Victim 1 are consistent with an attempt to discourage her from reporting the abuse.  Further, I believe that GARCIA was well positioned as a high-level member of management at the facility to intimidate Victim 1 from reporting his criminal misconduct.

### III.   CONCLUSION AND REQUEST FOR SEALING

30.   Based upon the above facts, as well as my training and experience, I believe that there is probable cause to believe that in December 2019 in the Northern District of California, the Defendant, Ray J. GARCIA, committed the following federal offense involving Victim 1: Sexual Abuse of a Ward, in violation of Title 18 U.S.C. § 2243(b) – Sexual Abuse of a Ward.

///

///

///

---

[15] Victim 1 told agents that she cared for GARCIA at one time.  Victim 1 eventually suspected GARCIA was engaged in sexual misconduct with another inmate.
BARCLAY AFF. IN SUPPORT OF CRIMINAL COMPL.

31.     I further request that the Court order that all papers in support of this application, including this affidavit, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to the target or other subjects of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, giving the target an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

/s/ *Katherine Barclay*
KATHERINE BARCLAY
Special Agent
U.S. Department of Justice
Federal Bureau of Investigation

Sworn to before me over the telephone and signed by me pursuant to Fed.R.Crim.P. 4.1 and 4(d) on this 23 day of September 2021.

_____
HONORABLE NATHANAEL COUSINS
United States Magistrate Judge