UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, Plaintiff, v. RAY GARCIA, Defendant. | Case No. 21-CR-0429 YGR<br><br>**PRETRIAL ORDER NO. 3 RE: GOVERNMENT'S MOTION IN *LIMINE* NO. 1** |
|---|---|

The United States' Motion in *Limine* No. 1 moves to admit defendant's *uncharged* and alleged sexual abuse of Victim 1, Victim 2, and Victim 3, his alleged abuse of K.D. and M.M., and his alleged sexual assault and abuse of C.V. on the grounds that the acts at issue are inextricably intertwined with the charged conduct, or alternatively, that they are admissible under Fed. R. Evd. 404(b).

In short summary, the government seeks to admit evidence that defendant made numerous inappropriate statements to Victim 1, Victim 2, and Victim 3, instructed those victims to strip naked for him, showed those victims pictures of his penis, and requested and/or took naked photographs of them. Defendant does not oppose admission of the vast majority of the government's evidence; however, as noted below, defendant does object to the admission of pictures of his penis, more than "two or three" pictures taken during a video chat between himself and Victim 3, and Victim 2's anticipated testimony that she believes defendant took a photograph of her on one occasion.

After considering the government's motion, the defendant's opposition, and defendant's non-opposition to the specific items at issue, and after hearing argument, the Court **HEREBY GRANTS IN PART AND DENIES IN PART WITHOUT PREJUDICE** the government's Motion in *Limine* No. 1 as set forth below.

## I. ADMISSION OF UNOPPOSED EVIDENCE

For clarity of the record, the Court understands that the admission of the following evidence in Motion in *Limine* No. 1 as acts inextricably intertwined with the charged conduct, or alternatively, admissible under Fed. R. Evd. 404(b), is unopposed. The motion is **GRANTED** with respect to these items only:

| **EVIDENCE AS TO VICTIM 1** |
|---|
| Testimony that: <br>• The defendant instructed Victim 1 to be undressed while defendant did his rounds; <br>• Victim 1 was instructed to strip naked, handed a candy cane, and told to insert the candy cane inside of her vagina, which was done; <br>• Victim 1 was asked to show defendant her body, and after complying by showing her breasts and genitals, defendant threw candy for her on the floor; <br>• The defendant took naked pictures of Victim 1 on his cellphone; <br>• The defendant promised to help transfer Victim 1 to FCI Dublin Camp, encouraged Victim 1 to apply for compassionate release, and told her that defendant and Victim 1 would be together when she was released; <br>• The defendant took actions consistent with keeping Victim 1 quiet; and <br>• The defendant told Victim 1 he was friends with the investigator at FCI Dublin and shared details of sexual abuse investigations into other correctional officers at FCI Dublin. <br><br>Naked photographs of Victim 1 found on defendant's personal devices, including: <br>• A photograph of Victim 1 naked on a bed with defendant's reflection visible in the window;[1] and |

---

[1] As to Victim 1, defendant did not dispute the relevance of photographs of him taking photographs of Victim 1 naked on a prison bed where he is seen in the reflection of the mirror. As the government argued at the pretrial conference, the orientation of the photographs illustrates the defendant's intent so there is relevance in the various orientation of the photographs. At this juncture, the Court also understands that defendant's anticipated defense is that he was documenting Victim 1's breach of policy, further adding to the relevance of the photographs.

2

- A photograph of Victim 1 topless facing the camera.

**EVIDENCE AS TO VICTIM 2**

Testimony that:

- The defendant began telling Victim 2 to undress when he did his rounds and that Victim 2 acquiesced on multiple occasions;
- The defendant told Victim 2 to leave her window open so he could see her naked from outside of the building; and
- The defendant showed Victim 2 photographs of his penis on his cellphone, made flirtatious remarks to Victim 2, told Victim 2 that she could get in trouble for her relationship with him, and that he promised to approve her compassionate release request.

**EVIDENCE AS TO VICTIM 3**

Testimony that:

- The defendant told Victim 3 to be naked for him while defendant did his rounds and that she did not comply;
- The defendant instructed Victim 3 to take naked photographs of herself and she did not comply;
- The defendant showed Victim 3 pictures of his penis that were taken at FCI Dublin and at a residence;
- The defendant made sexual remarks, including about Victim 3's buttocks;
- The defendant provided Victim 3 with his contact information prior to Victim 3's release from FCI Dublin in approximately September 2020; and
- Victim 3 and defendant video chatted on several occasions while Victim 3 was in a

---

Nevertheless, defendant did object to the quantity of photos that may be used as cumulative and unduly prejudicial. This overlaps with arguments raised in his first motion in *limine*. However, since the exact context for admissions is absent from the record, resolving the objection is premature. Defendant may renew any objection concerning the volume of exhibits once the context and foundation is established.

3

halfway house and that Victim 3 told investigators that on at least one of these occasions, defendant told her to undress and touch herself, which she did. Photographs from defendant's personal computer that depict screenshots from the video chat between defendant and Victim 3 in which both defendant and Victim 3 are naked.

### K.D. – VICTIM NOT NAMED IN SUPERSEDING INDICTMENT

Testimony that:

- The defendant made sexually explicit comments to K.D. and asked her whether she had breast implants;
- The defendant instructed K.D. to be naked when defendant did his rounds in 2020;
- The defendant told K.D. to check with defendant daily so he could tell K.D. if she should be undressed for defendant that day;
- K.D. kept a calendar where she recorded days she stripped naked for defendant pursuant to his demands;
- The last day K.D. stripped for defendant was July 21, 2021, the day before defendant said to agents that he never told inmates to be undressed at particular times; and
- K.D. was previously in the adult film industry and defendant, commenting on K.D.'s breasts, asked if she had implants for business or personal reasons.

### M.M. – VICTIM NOT NAMED IN SUPERSEDING INDICTMENT

Testimony that:

- The defendant began complimenting M.M.'s body and asking why she was fully clothed
- M.M. began undressing when defendant did her rounds;
- The defendant told M.M. that they could be together once M.M. was released and that defendant could help her get into a program closer to M.M.'s family;
- The defendant told M.M. that if he did not come by in the morning that M.M. should keep her external window open so defendant could see M.M. undress from the outside, and that M.M. did this on multiple occasions where she saw defendant outside of her

- window pretending to be on his phone;
- The defendant occasionally had an erection while speaking with M.M.;
- The defendant told M.M. that inmates were trying to get defendant in trouble, but that defendant was not worries because he was friends with the investigator; and
- M.M. was previously an exotic dancer and defendant told M.M. he wanted to see her dance, and that M.M. did dance naked for defendant on four occasions during his lunch rounds. The last dance was in 2021 shortly before M.M. left FCI Dublin.

**C.V. – VICTIM NOT NAMED IN SUPERSEDING INDICTMENT**

Testimony that:
- The defendant approached C.V. from behind and grabbed her buttocks with his hands in the summer of 2019 and that he indicated he could not help himself;
- The defendant commented that he liked how C.V.'s butt jiggled while she was exercising;
- C.V. told defendant that she worked at a gentleman's club for money and defendant indicated that he wanted C.V. to dance for her, including in a crochet outfit that C.V. could have another inmate make for her. Various crochet bikinis were made for C.V. but she never danced for defendant; and
- During conversations defendant told C.V. to look while pointing at his crotch.

## II.   RULINGS AS TO OPPOSED EVIDENCE

First, the government moves to admit naked photographs of defendant that were found on his electronic devices and that are similar to descriptions provided by Victim 1. On the basis of relevance and prejudice, defendant objects to the introduction of any and all photographs other than any which are specifically identified by Victim 1 as photos that she was shown. He further objects to the admission of more than one photograph on the grounds that any more than one would be unduly prejudicial and needlessly cumulative.

Defendant's objection is overruled in part, however, admitting all photographs at this juncture is premature. As discussed at the hearing, the penis photographs may be demonstrative of

5

those seen by Victim 1 and further corroborate her testimony that defendant took and sent photographs of his penis. However, the context of any request for admission is absent as is the context for any rulings on the quantity of pictures to be admitted. Indeed, the government represented that further witness preparation is necessary to determine whether Victim 1 in fact received any of the photographs at issue. Thus, the motion to admit is denied without prejudice.

Second, as to Victim 2, the government also seeks to admit testimony that "[o]n one occasion, Victim 2 believes that Garcia took a photograph of her" while he was outside of her window. Defendant objects to admission on the grounds that this belief is speculative. At this juncture, the context for the request for admission is absent from the record. Accordingly, the motion to admit is denied without prejudice and the objection is premature.

Finally, as to Victim 3, the government moves to admit screenshots seized from defendant's personal computer that depict a video chat between Victim 3 and defendant where both Victim 3 and defendant are naked. Defendant concedes that at least two or three screenshots would be admissible, however, he objects that more than two or three would be unduly prejudicial and cumulative. Given defendant's concession as to the relevance of the screen shot, the motion to admit is granted in part. Since the context of any request for admission is absent as is the context for any rulings on the quantity of pictures to be admitted, the objection is premature. Defendant can renew his objection as to the volume of screenshots once the government finalizes the list of exhibits that it will rely upon.

**IT IS SO ORDERED.**

Dated: November 8, 2022

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**