STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MOLLY K. PRIEDEMAN (CABN 302096)
ANDREW PAULSON (CABN 267095)
Assistant United States Attorneys

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
FAX: (510) 637-3724
molly.priedeman@usdoj.gov
andrew.paulson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAY J. GARCIA,<br><br>Defendant. | **CASE NO. 4:21-CR-00429-YGR**<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL**<br><br>Date: March 15, 2023<br>Time: 2:00 pm<br>Honorable Yvonne Gonzalez Rogers |

**TABLE OF CONTENTS**


I. INTRODUCTION .....1

II. PROCEDURAL BACKGROUND .....1

III. STATEMENT OF FACTS .....2

A. The Government's Pretrial Discovery Production and Reverse Proffer with Defendant .....2

B. Trial Counsel's Investigatory Efforts .....2

C. The Evidence at Trial .....3

IV. LEGAL STANDARD .....3

V. ARGUMENT .....4

A. There is No Evidence of Jury Misconduct .....4

1. Legal Standard for Juror Misconduct Based on Alleged Consideration of Extrinsic Evidence .....4

2. Garcia Has Failed to Establish That the Jury Considered any Extrinsic Evidence .....5

B. Garcia Has Failed to Establish a Conflict of Interest .....7

1. Legal Standard for Demonstrating a Conflict of Interest .....7

2. Garcia's Conflict of Interest Claim Cannot be Evaluated on this Record and Should be Deferred to Collateral Proceedings .....8

3. On the Merits, Garcia Has Failed to Establish Trial Counsel Had an Actual Conflict .....9

C. Defendant Has Failed to Establish Evidence of Judicial Bias .....12

1. Legal Standard for Demonstrating Judicial Bias .....12

2. There is No Evidence of Judicial Bias .....13

VI. CONCLUSION .....13

**TABLE OF AUTHORITIES**

Federal Cases

*Arenas v. Adams*, No. CV 08-7084-AHM (RCF), 2011 WL 7164453 (C.D. Cal. Nov. 30 2011) ............ 8

*Bayramoglu v. Estelle*, 806 F.2d 880 (9th Cir. 1986) ............ 4

*Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995) ............ 10

*Bouldon v. Chrones*, No. CV 06-600 SVW (JC), 2009 WL 2058164 (C.D. Cal. July 9, 2009) ............ 8

*Cannedy v. Adams*, 706 F.3d 1148 (9th Cir. 2013) ............ 12

*Clabourne v. Lewis*, 64 F.3d 1373 (9th Cir. 1995) ............ 12

*Cuyler v. Sullivan*, 446 U.S. 335 (1980) ............ 1, 7

*Earp v. Ornoski*, 431 F.3d 1158 (9th Cir. 2005) ............ 8

*Freund v. Nycomed Amersham*, 347 F.3d 752 (9th Cir. 2003) ............ 4

*Garcia v. Johnson*, No. CV 13-6864-JFW (FFM), 2016 WL 8711525 (C.D. Cal. Dec. 19, 2016) ............ 8

*Grotemeyer v. Hickman*, 393 F.3d 871 (9th Cir. 2004) ............ passim

*Hart v. Broomfield*, No. CV 05-03633 DSF, 2020 WL 4505792 (C.D. Cal. Aug. 5, 2020) ............ 10

*Hughes v. Singh*, No. CV 12-3075-JAK (RNB), 2013 WL 2423128 (C.D. Cal. June 4, 2013) ............ 8

*Jimenez v. Sisto*, No. C 06-3549 SI (PR), 2009 WL 2086646 (N.D. Cal. July 13, 2009) ............ 11

*Kaempf v. Yates*, No. CV 10-02633-PSG VBK, 2013 WL 1858786 (C.D. Cal. Mar. 27, 2013) ............ 10

*Larson v. Palmateer*, 515 F.3d 1057 (9th Cir. 2008) ............ 1, 12, 13

*Liteky v. United States*, 510 U.S. 540 (1994) ............ 12

*Mickens v. Taylor*, 535 U.S. 162 (2002) ............ 7, 8

*Price v. Kramer*, 200 F.3d 1237 (9th Cir. 2000) ............ 5

*Smith v. United States*, 305 F.2d 197 (9th Cir. 1962) ............ 13

*Strickland v. Washington*, 466 U.S. 668 (1984) ............ 1, 7, 8, 12

*Turner v. State of La.*, 379 U.S. 466 (1965) ............ 4

*United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014) ............ 8

*United States v. Budziak*, 697 F.3d 1105 (9th Cir. 2012) ............ 4, 5, 6, 7

*United States v. Cimera*, 459 F.3d 452 (3d Cir. 2006) ............ 4

*United States v. Cortes*, 895 F.2d 1245 (9th Cir. 1990) ............ 10

*United States v. Halali*, No. 14-CR-627-SI, 2017 WL 3232566 (N.D. Cal. July 28, 2017) ..................... 4

*United States v. Halbert*, 712 F.2d 388 (9th Cir. 1983)............................................................................ 6

*United States v. Jinian*, No. 09-CR-1103-JSW, 2011 WL 5056978, (N.D. Cal. Oct. 24, 2011), 725 F.3d 954 (9th Cir. 2013) ............................................................................................ 4

*United States v. Malcolm*, 475 F.2d 420 (9th Cir. 1973) ......................................................................... 13

*United States v. McChesney*, 871 F.3d 801 (9th Cir. 2017)............................................................. 12, 13

*United States v. McGowan*, 668 F.3d 601 (9th Cir. 2012)........................................................................ 9

*United States v. Navarro-Garcia*, 926 F.2d 818 (9th Cir. 1991) ......................................................... 4, 5

*United States v. Pimentel*, 654 F.2d 538 (9th Cir. 1981) .......................................................................... 4

*United States v. Ross*, 206 F.3d 896 (9th Cir. 2000).................................................................................. 8

*United States v. Showalter*, 569 F.3d 1150 (9th Cir. 2009) ....................................................................... 3

*United States v. Steele*, 733 F.3d 894 (9th Cir. 2013)........................................................................ 1, 8, 9

*United States v. Tin Yat Chin*, 275 F.Supp.2d 382 (E.D.N.Y. 2003)........................................................ 5

*United States v. Walter-Eze*, 869 F.3d 891 (9th Cir. 2017) .............................................................. 8, 10, 11

*United States v. Wells*, 394 F.3d 725 (9th Cir. 2005) ............................................................................... 7

*Withrow v. Larkin*, 421 U.S. 35 (1975)............................................................................................... 1, 12

*Wood v. Georgia*, 450 U.S. 261 (1981) ........................................................................................................ 7

## Federal Statutes

18 U.S.C. § 1001(a)(2)........................................................................................................................ 2

18 U.S.C. § 2243(b) ....................................................................................................................... 1, 2

18 U.S.C. § 2244(a)(4)........................................................................................................................ 2

## Federal Rules

Fed. R. Crim. P. 33 ................................................................................................................................ 3

Fed. R. Crim. P. 52(a) ............................................................................................................................ 4

Fed. R. Evid. 606(b)................................................................................................................................ 6

## I. INTRODUCTION

On December 8, 2022, a jury convicted the defendant, Ray J. Garcia, of all eight counts in the superseding indictment. Four days later, on December 12, 2022, current defense counsel filed a substitution of attorney. On February 2, 2023, defense counsel filed a motion for a new trial arguing that (1) there was juror misconduct because two female jurors shared prior personal experiences during deliberations, (2) trial counsel was impaired by a conflict of interest due to the flat-fee payment structure utilized, and (3) Garcia was denied his right to an unbiased judicial officer based on the Court's efforts to control the courtroom and make routine evidentiary findings. None of these arguments have any merit.

First, Garcia's argument that the jurors were inappropriately exposed to "extrinsic matters" fails because the allegedly improper information he points to—the female jurors' personal experiences as women—does not actually constitute impermissible extrinsic evidence. *See Grotemeyer v. Hickman*, 393 F.3d 871, 877 (9th Cir. 2004) (extrinsic evidence is "altogether different from a juror sharing her own experiences with her colleagues on the jury").

Second, Garcia's argument that trial counsel was impaired based on a conflict of interest cannot and should not be considered at this stage in the proceedings without development of facts outside the current record. *See United States v. Steele*, 733 F.3d 894, 897-98 (9th Cir. 2013). Even if the Court decides the issue on the merits, the claim can be summarily denied because the defendant has failed to establish that trial counsel had an actual conflict that adversely affected his representation and that he was prejudiced by the theoretical conflict. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980); *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

Finally, Garcia's argument that the Court was biased against him fails because the remarks and adverse rulings referenced by the defendant are insufficient to overcome the "presumption of honesty and integrity in those serving as adjudicators." *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

## II. PROCEDURAL BACKGROUND

The government filed a criminal complaint against Garcia on September 24, 2021 charging him with sexual abuse of a ward in violation of 18 U.S.C. § 2243(b). Dkt. No. 1. On November 2, 2021, a grand jury returned an indictment charging Garcia with two counts of sexual abuse of a ward in violation of

18 U.S.C. § 2243(b) for sexual acts Garcia committed against Victim 1. Dkt. No. 13. A grand jury returned a superseding indictment on August 23, 2022 charging Garcia with three counts of sexual abuse of a ward for sexual acts he committed against Victim 1; four counts of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(4) for sexual contact he had with Victims 1, 2, and 3; and one count of false statements to a government agency in violation of 18 U.S.C. § 1001(a)(2). Dkt. No. 40.

## III. STATEMENT OF FACTS

### A. The Government's Pretrial Discovery Production and Reverse Proffer with Defendant

Throughout this case, the government has made fulsome, rolling productions of documents and other materials to Garcia. Priedeman Decl. ⁋ 2. In more than two-dozen productions, the government provided a total of over 48,000 pages of discovery, as well as native versions of digital files and devices. *Id.*

On May 23, 2022, the government met with Garcia and his trial counsel, James Reilly. Priedeman Decl. ⁋ 3. At that meeting, the government showed Garcia evidence it planned to admit at trial that had previously been produced to his counsel, including naked pictures of two of the victims and pictures of Garcia's penis that were found on his devices. *Id.*

### B. Trial Counsel's Investigatory Efforts

As discussed in more detail in the declaration of DOJ OIG Senior Special Agent Jennifer Serino, the government is aware of the defense team contacting at least four current or former BOP employees and contacting or attempting to contact three FCI Dublin prisoners leading up to trial. Serino Decl. ⁋⁋ 2-5; Priedeman Decl. ⁋ 4. For example, in September 2022, Garcia's former secretary at FCI Dublin informed agents that Garcia's attorney had contacted her seeking information about the case. Serino Decl. ⁋ 2. On November 10, 2022, another BOP employee informed agents that Garcia's wife had recently contacted him and asked if he would be willing to speak to Garcia's counsel. *Id.* at ⁋ 3. The defense investigator then contacted the employee on approximately November 22, 2022. *Id.* On December 1, 2022, an FCI Dublin employee reported that the defense investigator contacted him on his home telephone and "aggressively" asked him questions about Victim 1. *Id.* at ⁋ 4. The government also learned that in late November 2022, the defense investigator contacted BOP to schedule interviews with three FCI Dublin inmates. *Id.* at ⁋ 5.

In addition to these contacts, on December 3, 2022, Garcia's former counsel provided a memorandum from the defense investigator summarizing a November 23, 2022 interview he conducted with Daniel Flint. Priedeman Decl. ⁋ 4, Exh. 1. Trial counsel indicated that he intended to call Flint as a witness. *Id.* ⁋ 5, Exh. 2. Based on the contents of the memorandum, the Court's pretrial rulings, and the status of the evidence, the government informed trial counsel that it would object to Flint's testimony because Flint did not have any relevant, admissible evidence to offer. *Id.* After receiving the government's objections, on December 4, 2022, trial counsel stated that he would not call Flint because travel to Oakland would create a "significant personal hardship" for Flint. *Id.* ⁋ 6; Exh. 2.

### C. The Evidence at Trial

Trial in this case began on November 28, 2022. Over the course of seven days, the jury received 68 exhibits and heard from 13 government witnesses (11 in its case-in-chief and 2 in rebuttal), including Victim 1, Victim 2, and Victim 3, who testified in excruciating detail about the sexual abuse they suffered at the hands of Garcia. Garcia's trial counsel extensively cross-examined all the government's witnesses, including Victim 1, Victim 2, and Victim 3. Garcia's trial counsel presented an opening statement and closing argument and admitted two exhibits, one of which the defense team had in its possession and did not disclose to the government until near the conclusion of the government's case. Trial Tr. 720:24-721:22; Exh. B. Garcia then testified in his own defense. Over the course of three days, Garcia repeatedly lied under oath and unsuccessfully attempted to explain away the overwhelming evidence of his guilt.

The jury did not find Garcia's testimony credible. On December 8, 2022, after approximately 12 hours of deliberation over the span of three days, the jury returned a unanimous verdict: guilty on all counts. Dkt. No. 111. The Court set the case for sentencing on March 8, 2023. Four days after his conviction, Garcia obtained new counsel. Dkt. No. 116. At a December 19, 2022 hearing, the Court established a briefing schedule for Garcia's motion for new trial and set a hearing on the motion for March 15, 2023. Dkt. No. 125. The Court continued the sentencing to March 22, 2023. *Id.*

## IV. LEGAL STANDARD

Under limited circumstances, Rule 33 permits a court to vacate a judgement and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33. A motion for a new trial "should be granted 'only in exceptional cases in which the evidence preponderates heavily against the verdict.'" *United States v.*

*Showalter*, 569 F.3d 1150, 1157 (9th Cir. 2009) (quoting *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981)). The district court "enjoys broad discretion with regard to a new trial motion" as it is "most familiar with the context of the trial" and the defendant. *Freund v. Nycomed Amersham*, 347 F.3d 752, 765 (9th Cir. 2003). Courts in this district have acknowledged, however, that Rule 33 still imposes a high bar requiring the district court to focus on assessing "whether failing to grant a new trial would result in manifest injustice" such as finding that "there is a real concern that an innocent person may have been convicted." *United States v. Halali*, No. 14-CR-627-SI, 2017 WL 3232566, at *2 (N.D. Cal. July 28, 2017), *aff'd*, 950 F.3d 596 (9th Cir. 2020); *United States v. Jinian*, No. 09-CR-1103-JSW, 2011 WL 5056978, at *7 (N.D. Cal. Oct. 24, 2011), *aff'd*, 725 F.3d 954 (9th Cir. 2013). The defendant bears a heavy burden in meeting the requirements to establish a new trial is warranted. *See, e.g., United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006). Further, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded" as harmless error. Fed. R. Crim. P. 52(a) & advisory committee's note.

## V. ARGUMENT

### A. There is No Evidence of Jury Misconduct

#### 1. Legal Standard for Juror Misconduct Based on Alleged Consideration of Extrinsic Evidence

The Sixth Amendment guarantees a defendant the right to trial by an impartial jury that reaches a verdict based on evidence introduced at trial, exclusive of "extrinsic evidence." *Grotemeyer*, 393 F.3d at 876–77; *Bayramoglu v. Estelle*, 806 F.2d 880, 887 (9th Cir. 1986) ("Jurors have a duty to consider only the evidence which is presented to them in open court.") (citing *Turner v. State of La.*, 379 U.S. 466, 472–73 (1965)). A juror's past personal experiences do not constitute "extrinsic evidence," and are an appropriate and necessary part of a jury's deliberation. *United States v. Navarro-Garcia*, 926 F.2d 818, 821 (9th Cir. 1991). When a defendant presents evidence that the jury considered extrinsic evidence during deliberations, the district court "should ordinarily hold an evidentiary hearing to hear admissible juror testimony" unless the court is "able to determine without a hearing that the allegations if true would not warrant a new trial." *United States v. Budziak*, 697 F.3d 1105, 1111 (9th Cir. 2012) (upholding denial of new trial without an evidentiary hearing because jurors permissibly relied on personal experiences

rather than extraneous evidence). Even if the court finds that the jury considered extrinsic evidence during deliberations, a new trial is warranted only "if there exists a reasonable possibility that the extrinsic material could have affected the verdict." *See Navarro-Garcia*, 926 F.2d at 821 (internal quotations omitted).

### 2. Garcia Has Failed to Establish That the Jury Considered any Extrinsic Evidence

Garcia's argument for a new trial based on supposed juror misconduct fails out of the gate. He claims that a new trial is warranted because the jurors were inappropriately exposed to "extrinsic matters" that helped them reach a unanimous verdict. Mot. at 3. The Court should deny Garcia's motion for a new trial because the purported "extrinsic matters" on which Garcia relies—the female jurors' personal experiences as mothers and daughters and an elderly female juror's personal stories—do not actually constitute impermissible "extrinsic evidence."

As the Ninth Circuit has recognized, "extrinsic evidence" is "altogether different from a juror sharing her own experiences with her colleagues on the jury." *Grotemeyer*, 393 F.3d at 877 (new trial unwarranted where foreperson used experience as medical doctor to opine to jurors that defendant's mental disorders helped him commit crime and he would get treatment as part of sentence); *Budziak*, 697 F.3d at 1111 (two jurors' technical experience with computer program was permissible personal experience not extrinsic evidence); *Price v. Kramer*, 200 F.3d 1237, 1255 (9th Cir. 2000) (jurors' prior experiences with police did not constitute extraneous evidence). Indeed, courts have consistently held not only that jurors' reliance on their personal experiences does *not* violate a defendant's constitutional right to a fair trial, but that jurors *must* rely on their personal experiences to properly evaluate the evidence and render a verdict. *See, e.g., Navarro-Garcia*, 926 F.2d at 821 ("Inevitably, jurors must rely on their past personal experiences when hearing a trial and deliberating on a verdict.") (internal quotations omitted); *United States v. Tin Yat Chin*, 275 F.Supp.2d 382, 384 (E.D.N.Y. 2003) ("Jurors are permitted and expected to bring to their deliberations common knowledge drawn from their life experiences."). In this case, the instructions required the jurors to interpret "all the evidence in light of reason, ***experience***, and common sense." *See* Dkt. No. 108 at 3 (emphasis added).[1] This makes sense. "Were we to require the impossible and prohibit

[1] This instruction was taken word-for-word from the Ninth Circuit's Model Criminal Jury Instruction

jurors from relying on relevant, past personal experience, about all we would accomplish would be to induce jurors to lie about it when questioned afterward, unless we limited jury participation to the most unworldly and ignorant individuals." *Grotemeyer*, 393 F.3d at 880.

The reason our constitutional system relies on a diverse jury of the defendant's peers is simple: "Varied juror experience is a virtue that assists juries in ascertaining the truth." *Grotemeyer*, 393 F.3d at 881. The jury in this case was a diverse set of 12 Bay Area citizens, each of whom brought their unique personal experiences to their evaluation of the evidence in this case, just as they were supposed to. That two of the jurors were females who allegedly shared their personal experiences as "mothers and daughters" while evaluating the evidence shows that the jury process was working precisely as it was intended. This is especially true in a case such as this, where the credibility of witnesses was central to the assessment of the evidence. *Id.* at 871 ("Evaluation of credibility necessarily relies on experience."). Because Garcia has presented no evidence that the jury considered any extrinsic evidence, the Court should deny Garcia's motion.

Despite his inability to point to any "extrinsic evidence," Garcia nonetheless requests an evidentiary hearing. The Court is not required to conduct an evidentiary hearing every time there is an allegation of jury misconduct. *United States v. Halbert*, 712 F.2d 388, 389 (9th Cir. 1983). Specifically, "[a]n evidentiary hearing is not required . . . if the court is able to determine without a hearing that the allegations if true would not warrant a new trial." *Budziak*, 697 F.3d at 1111. That is the case here. As discussed above, even if the foreperson was "moved by [the female jurors'] stories as mothers and daughters" and "an elderly female juror brought her own personal stories and 'touching examples of humanity'" to the deliberations, none of that constitutes "extrinsic evidence" that would have violated Garcia's constitutional rights. Mot. at 3. On the contrary, it shows that the jury was doing precisely what juries in our constitutional system are required to do: weigh the evidence based on their "reason, experience, and common sense." Dkt. No. 108 at 3. Absent any evidence that the jury actually considered "extrinsic evidence" (there is none in this case), an inquiry into the jury's deliberations would be barred by the Federal Rules of Evidence. *See* Fed. R. Evid. 606(b) (prohibiting admission of juror testimony about jury

---

1.5, Direct and Circumstantial Evidence.

deliberations, except for evidence of extraneous prejudicial information, improper outside influence, and mistake on the verdict form); *Budziak*, 697 F.3d at 1111 (inquiry into extent to which "a juror's past personal experiences" played a role in deliberations was "not a legitimate subject of inquiry under the Federal Rules of Evidence").

The Sixth Amendment entitled Garcia "to an impartial jury, not to an ignorant one." *Grotemeyer*, 393 F.3d at 879 (internal quotations omitted). In this case, the jury deliberated over the course of three days, ultimately finding beyond a reasonable doubt that Garcia sexually abused three FCI Dublin prisoners and then lied to the FBI about it. There is no evidence that the jury did anything but reach a verdict based solely on their thorough and impartial evaluation of the evidence presented to them during the trial. And even if the jurors' personal experiences were considered "extrinsic evidence" (they are not), there is no reasonable possibility that it could have affected the verdict, which was supported by the overwhelming weight of the evidence. The Court should therefore reject Garcia's attempt to delay sentencing in this case and deny Garcia's motion for a new trial and request for an evidentiary hearing.

**B. Garcia Has Failed to Establish a Conflict of Interest**

**1. Legal Standard for Demonstrating a Conflict of Interest**

The Sixth Amendment right to effective assistance of counsel includes a "correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). To establish an "actual" conflict, the defendant must show that (1) "counsel actively represented conflicting interests" and (2) that the "actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 350. To demonstrate an adverse effect, the defendant must show "that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005) (internal quotations omitted).

As a general rule, a defendant alleging a Sixth Amendment violation must also "demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984). A limited exception to this rule applies when the conflict of interest at issue stems from joint representation, a situation that is not applicable here. In those narrow circumstances,

once a defendant demonstrates an actual conflict that adversely affected the lawyer's performance, prejudice is presumed. *Id*. Both the Supreme Court and the Ninth Circuit have cautioned extending the exception to the prejudice requirement outside the context of conflicts created by joint representation. *Id.* at 175-76 (calling into question the application of a presumed prejudice rule to conflicts other than those caused by joint representation); *Earp v. Ornoski*, 431 F.3d 1158, 1184-85 (9th Cir. 2005) (interpreting *Mickens* to mean that the exception to the prejudice requirement had not yet extended beyond joint representation); *United States v. Walter-Eze*, 869 F.3d 891, 905-906 (9th Cir. 2017) (acknowledging that whether the presumption of prejudice extended outside the context of joint representation remained an open question). For this reason, when a defendant alleges a conflict arising from an issue other than joint representation, like the alleged financial conflict at issue here, courts have required the defendant to establish prejudice under *Strickland*, in addition to demonstrating an actual conflict. *See, e.g., United States v. Bernard*, 762 F.3d 467, 476 (5th Cir. 2014); *Hughes v. Singh*, No. CV 12-3075-JAK (RNB), 2013 WL 2423128, at *11 (C.D. Cal. June 4, 2013); *Arenas v. Adams*, No. CV 08-7084-AHM (RCF), 2011 WL 7164453, at *12 (C.D. Cal. Nov. 30 2011); *Bouldon v. Chrones*, No. CV 06-600 SVW (JC), 2009 WL 2058164, *4 (C.D. Cal. July 9, 2009), *Garcia v. Johnson*, No. CV 13-6864-JFW (FFM), 2016 WL 8711525, at *6 (C.D. Cal. Dec. 19, 2016), *report and recommendation adopted*, No. CV 13-6864 JFW (FFM), 2017 WL 1330174 (C.D. Cal. Apr. 6, 2017), *aff'd*, 735 F. App'x 402 (9th Cir. 2018).

### 2. Garcia's Conflict of Interest Claim Cannot be Evaluated on this Record and Should be Deferred to Collateral Proceedings

Garcia argues that his attorney was ineffective due to a conflict created by the flat-fee payment structure Garcia and his trial counsel agreed to before trial. Such claims are typically inappropriate at this stage in the proceedings and should be raised instead in habeas proceedings. *See United States v. Ross*, 206 F.3d 896, 900 (9th Cir. 2000). While a district court has discretion to entertain claims of ineffective assistance prior to judgment, the exercise of that discretion depends on "the existence of evidence already in the record indicating ineffective assistance of counsel, or upon the scope of the evidentiary hearing that would be required to fully decide the claim." *United States v. Steele*, 733 F.3d 894, 897-98 (9th Cir. 2013). Where, as here, a motion for a new trial raises several different arguments in a "broad-based" claim, "and the evidentiary record to consider" such claims is "sorely lacking," a district court does not

abuse its discretion in declining to consider the existence of a conflict until ordinary collateral proceedings. *Id.* at 898.

Such an approach is particularly advisable here, where the record currently contains little basis to evaluate whether Garcia's prior counsel's complained-of decisions were, in reality, calculated strategic decisions based on the evidence, the law, and the defense's theory of the case. Garcia urges that trial counsel's performance was adversely affected based on failure to call witnesses, failure to prepare him or meet with adequately, and other classic trial decisions. Those decisions fall squarely within the heart of the kinds of decisions that are not liable to second-guessing on a bare record. *Steele*, 733 F.3d at 898.

Moreover, Garcia's trial "counsel has not yet had an opportunity to explain his actions," and therefore this Court "cannot tell from the record whether the [alleged] failure[s were] . . . calculated stratagem or a mere oversight." *United States v. McGowan*, 668 F.3d 601, 606 (9th Cir. 2012) (internal quotation marks, alterations, and citations omitted); *see also Steele*, 733 F.3d at 898. As a result, deferring consideration of Garcia's claims to collateral proceedings is the appropriate course. *McGowan*, 668 F.3d at 606. To hold otherwise would require a lengthy and undefined series of proceedings to investigate Garcia's claims, which in turn could entail a significant delay in sentencing, an open-ended evidentiary pursuit without the tools and processes in place for habeas proceedings designed to effectuate such inquiries, and would otherwise not promote the well-established public interests in promptness in resolving criminal cases, particularly given the nature of Garcia's crimes and the victims involved. This Court should not decide Garcia's allegations of conflict at this stage, without prejudice to his ability to raise such claims at the appropriate time through collateral proceedings.

**3. On the Merits, Garcia Has Failed to Establish Trial Counsel Had an Actual Conflict**

Even if the Court decides to consider Garcia's argument on the merits, the Court should reject his claim. As an initial matter, the Court need not decide whether the presumption of prejudice extends to conflicts other than those caused by joint representation, because Garcia has failed to meet his burden under either standard. Garcia has both failed to show he was prejudiced by trial counsel's actions and that his trial counsel had an actual conflict that adversely affected his representation in the first instance.

Garcia argues that his flat-fee financial arrangement with his trial counsel created a "perverse

incentive" in that his retainer "provided for the same pay no matter how hard or not so hard he worked." Mot. at 5. The Ninth Circuit has noted that because "'[l]awyers almost always undertake representation of clients because of their desire to profit from the representation . . . a desire to profit does not by itself create [a] direct 'actual' conflict of interest.'" *Walter-Eze*, 869 F.3d at 902 (quoting *Bonin v. Calderon*, 59 F.3d 815, 826 (9th Cir. 1995)). As a result, courts that have considered this issue have uniformly held that a flat-fee agreement for the services of a private criminal defense attorney does not, by itself, create an actual conflict. *See Kaempf v. Yates*, No. CV 10-02633-PSG VBK, 2013 WL 1858786, at *26 (C.D. Cal. Mar. 27, 2013), *report and recommendation adopted*, No. CV 10-02633-PSG VBK, 2013 WL 1858772 (C.D. Cal. Apr. 26, 2013); *Hart v. Broomfield*, No. CV 05-03633 DSF, 2020 WL 4505792, at *39 (C.D. Cal. Aug. 5, 2020); *United States v. Marroquin-Benitez*, No 3:17-CR-00087-002-JO, 2022 WL 2355546, at *12 (D. Or. June 30, 2022).

There is no evidence that an actual conflict manifested in this case that had an adverse effect on trial counsel's representation of the defendant, nor is there any evidence that Garcia was prejudiced by any of trial counsel's alleged actions. Garcia argues that trial counsel was not prepared and failed to take certain actions because the "the less he did, the more he and his firm made." Mot. at 5. While Garcia posits a *theory* for why trial counsel may have been financially motivated, there are no facts in the record that suggest trial counsel's actions were *actually* impacted by the hypothetical conflict. *See Hart*, 2020 WL 4505792, at *38. Indeed, the record supports a different conclusion. Not only did trial counsel present an opening and closing argument, but he vigorously cross-examined the government's witnesses, introduced several exhibits, and put the defendant on the stand.

Many of Garcia's allegations are also simply inaccurate. In a self-serving declaration, Garcia complains that trial counsel never requested discovery from the government, and that he never reviewed the contents of defendant's devices with him. Garcia Decl. ⁋⁋ 3, 5. Contrary to Garcia's representation, the government produced over 48,000 pages of discovery to trial counsel and participated in a reverse proffer with trial counsel *and Garcia* more than six months before the trial, where Garcia was shown the naked images of the victims seized from his devices. Priedeman Decl. ⁋ 2, 3. In addition, because Garcia has failed to establish what discovery trial counsel should have, but did not, request, he is unable to demonstrate that he was prejudiced. *See United States v. Cortes*, 895 F.2d 1245, 1248 (9th Cir. 1990),

*cert. denied*, 495 U.S. 939 (1990) (counsel's failure to request discovery where government had given him all discoverable evidence did not amount to ineffective assistance).

Garcia also alleges that trial counsel did not follow up with *any* of the witnesses identified by the defendant "although they had important knowledge." Mot. at 4; Garcia Decl. ⁋ 3. Once again, Garcia's self-serving statement is inconsistent with the record. Leading up to the trial, the record demonstrates that trial counsel's investigator contacted *multiple* potential defense witnesses. Serino Decl. ⁋⁋ 2-5. While the record is limited at this point in the proceedings, the decision not to call any of those witnesses appears to have been an objectively reasonably trial strategy. *See Walter-Eze*, 869 F.3d at 901 (defendant must identify a tactic or strategy that was not pursued because of conflict); *Jimenez v. Sisto*, No. C 06-3549 SI (PR), 2009 WL 2086646, at *7 (N.D. Cal. July 13, 2009) (failing to make an argument and call witnesses can be a recognized defense strategy).

In support of his motion, Garcia submitted a declaration by Daniel Flint, a former BOP employee. Garcia suggests Flint had "important knowledge" and could have testified at trial. Mot. at 4. But as Flint's declaration makes clear, there is no evidence that Flint ever worked at FCI Dublin, ever saw Garcia interact with female prisoners on a daily basis, or ever witnessed how Garcia behaved as the Associate Warden or Warden at FCI Dublin. *See* Flint Decl. ⁋ 1. Nor does he appear to know any of the victims in this case. *Id.* As a result, Flint lacked the foundation necessary to testify regarding FCI Dublin's policies and practices, as well as the foundation necessary to testify about the alleged "voluntary, aggressive, sexual type, misconduct, engaged in by female inmates" at FCI Dublin. *Id.* ⁋ 5. More importantly, as was made explicit in the jury instructions, consent was not a defense in this case. Dkt. 108 at 6. As a result, Flint's proposed testimony about "voluntary" sexual behavior by inmates was both irrelevant and prejudicial. For these reasons, if trial counsel had attempted to call Flint as a defense witness, as the government informed trial counsel during trial, the government would have objected to his testimony. Priedeman Decl. ⁋ 5. Even if Flint had been permitted to testify, he would have been subject to potentially damaging cross-examination. The government would have highlighted his lack of knowledge and experience at FCI Dublin, undercutting the relevance of his testimony, and may have elicited additional testimony from Flint regarding Garcia's violation of multiple BOP policies, including the policy related to documenting incident reports and the prohibition against communicating with former inmates. Given the government's

anticipated objection, the likely inadmissibility of the bulk of Flint's testimony, and the likelihood of damaging testimony, it was an objectively reasonable trial strategy for trial counsel to decide not to call Flint at trial.[2] For similar reasons, Garcia cannot establish that Flint's testimony would have affected the outcome of the trial. *Cannedy v. Adams*, 706 F.3d 1148, 1163 (9th Cir. 2013), *amended on denial of reh'g*, 733 F.3d 794 (9th Cir. 2013) (holding that "a failure to introduce evidence that is clearly inadmissible cannot be prejudicial"); *Clabourne v. Lewis*, 64 F.3d 1373, 1383 (9th Cir. 1995) (no prejudice for failure to request a duress instruction where duress was not a defense to the charged crime).

Garcia's remaining criticisms of trial counsel—that trial counsel failed to meet with him prior to his testimony and that he admitted only two exhibits at trial—suffer from the same flaws that permeate his other claims. Not only is the record woefully inadequate to address either claim (it relies solely on Garcia's self-serving declaration), but Garcia fails to explain why his representation was adversely affected by trial counsel's alleged failure to meet with him on more occasions and trial counsel's strategic decision not to admit more than two exhibits, nor has he demonstrated how he was prejudiced. *See Strickland*, 466 U.S. at 688-94.

### C. Defendant Has Failed to Establish Evidence of Judicial Bias

#### 1. Legal Standard for Demonstrating Judicial Bias

The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge. *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008). To succeed on a judicial bias claim, the defendant "must 'overcome a presumption of honesty and integrity in those serving as adjudicators'" and show that the judge "displayed deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)); *United States v. McChesney*, 871 F.3d 801, 807–08 (9th Cir. 2017) (quoting *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)). "In the absence of any evidence of some extrajudicial source of bias or partiality, neither adverse rulings nor impatient remarks are generally sufficient to overcome the presumption of judicial integrity, even if those remarks are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases.'" *Larson*, 515 F.3d at 1067 (quoting *Lietky v. United States*, 510 U.S. 540, 555 (1994)). Moreover, bias can "almost never" be

[2] For the same reason, it was objectively reasonable for trial counsel not to request "documentation" of "voluntary and inappropriate sexual-type misconduct" by females at FCI Dublin. *See* Garcia Decl. ⁋ 8.

established based solely on judicial rulings. *Liteky*, 510 U.S. at 555.

**2. There is No Evidence of Judicial Bias**

Garcia argues that the Court expressed "perceptive microaggressions against the defendant and his counsel." Mot. at 6. Specifically, Garcia points to the Court's instruction to him to remove his mask prior to testifying (Trial Tr. 881:9-12), the Court's response (and rejection) of trial counsel's attempt to delay Garcia's testimony (Trial Tr. 880:21-881:1), and a comment the Court made after the government had repeatedly objected to trial counsel's leading questions during direct examination (Trial Tr. 899:19-21). *Id.* Garcia also references a comment made by the Court instructing him to answer a question posed by the government during cross-examination (Trial Tr. 1106:9-11), and the Court's decision to sustain an objection made by the government (Trial Tr. 1110:18-1111:2). *Id.* The Court is more than a "moderator or umpire." *Smith v. United States*, 305 F.2d 197, 205 (9th Cir. 1962). The Court is permitted to participate in "controlling the orderly presentation of the evidence [and] confining counsel to evidentiary rulings." *United States v. Malcolm*, 475 F.2d 420, 427 (9th Cir. 1973). The Court's conduct referenced by Garcia falls squarely into this category and is consistent with the Court's statements to both of the parties at the pretrial conference about how the Court intended to manage the trial proceedings. The remarks and adverse rulings referenced by Garcia are insufficient to overcome the presumption of judicial integrity. *Larson*, 55 F.3d at 1067. For all these reasons, Garcia has failed to establish that the Court engaged in any behavior that made "fair judgment impossible." *McChesney*, 871 F.3d at 807–08.

## VI. CONCLUSION

Based on the foregoing, the United States respectfully requests this Court deny Garcia's motion for a new trial.

DATED: February 23, 2023

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

*Molly K. Priedeman*

MOLLY K. PRIEDEMAN
ANDREW PAULSON
Assistant United States Attorneys