STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

MOLLY K. PRIEDEMAN (CABN 302096)
ANDREW PAULSON (CABN 267095)
Assistant United States Attorneys

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    molly.priedeman@usdoj.gov
    andrew.paulson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 4:21-cr-00429-YGR |
| | ) |
| Plaintiff, | ) **DECLARATION OF MOLLY PRIEDEMAN IN** |
| | ) **SUPPORT OF UNITED STATES' OPPOSITION** |
| v. | ) **TO DEFENDANT'S MOTION FOR NEW** |
| | ) **TRIAL** |
| RAY J. GARCIA, | ) |
| | ) |
| Defendant. | ) Date:  March 15, 2023 |
| | ) Time: 2:00 pm |
| | ) Honorable Yvonne Gonzalez Rogers |
| | ) |

I, Molly Priedeman, declare as follows:

1.  I am an Assistant United States Attorney assigned to the above captioned case.

2.  Over the course of this case, the government made more than two-dozen productions of discovery to the defense.  As part of those productions, the government provided more than 48,000 pages of discovery as well as native versions of digital files and devices seized during the execution of search warrants at FCI Dublin, Garcia's vehicle, and Garcia's residence.

3.  On May 23, 2022, the government met with Garcia and his trial counsel, James Reilly, at the

United States Attorney's Office in Oakland.  At that meeting, I showed Garcia and his counsel evidence the government planned to admit at trial, including naked photographs of Melissa and Rachel that were seized from his personal computer as well as photographs of Garcia's penis that were found on his devices. I also informed Garcia that the government would admit evidence that Garcia searched for an application to "hide photos" on his work phone.  All the materials discussed at this meeting had been previously provided to Garcia in the normal course of discovery.

4.   On December 3, 2022, Garcia's trial counsel emailed to government counsel a memorandum from the defense investigator summarizing a November 23, 2022 interview he conducted with Daniel Flint.  A true and correct copy of that memorandum is attached hereto as **Exhibit 1**.

5.   In the same December 3, 2022 email, Garcia's trial counsel indicated that he intended to call Flint as a witness.  Based on the contents of the memorandum, the Court's pretrial rulings, and the status of the evidence up to that point, the government responded that it would object to Flint's testimony because Flint did not have any relevant, admissible evidence to offer.

6.   After receiving the government's objections, on December 4, 2022, Garcia's former counsel stated that he would not call Flint.  A true and correct copy of the email correspondence exchanged between the government and Garcia's former counsel regarding Flint is attached hereto as **Exhibit 2**.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and accurate to the best of my knowledge.

Executed this 23rd day of February, 2023, in Oakland, California.


*Molly K. Priedeman*
_____
MOLLY K. PRIEDEMAN
Assistant United States Attorney

# EXHIBIT 1

# KOHLER & ASSOCIATES

**private investigation**

███████████████

Lic. No. PI 15096

November 29, 2022

James Reilly, Esq.
Summit Defense

### RE: U.S. v RAY JOE GARCIA

### DAN FLINT

███████████

   Dan Flint was interviewed by telephone on November 23, 2022. He retired from the BOP in September 2017 after 27 years, the last seven of which he was an Associate Warden at FCI Victorville, FCI San Pedro and, finally, FCI Herlong.  Prior to his BOP career, Dan was in the Air Force. During introductory remarks I informed him that I am a Defense Investigator working on behalf of former Warden Ray Garcia.

   Dan specialized in Security issues at both male and female prisons during his stint with the BOP.  He met Ray in 2006, when the BOP created Incident Command training. Both men were lead training instructors. Dan explained that his past experience as an Air Force Firefighter gave him a first responder's perspective, whereas Ray contributed tactical expertise in running investigations and handling emergencies. The two men wrote the Incident Command training manual that BOP still uses.  Dan continued to work with Ray on the Incident Command team until his retirement in 2017.

   Dan never worked in the same BOP facility at the same as Ray, though they both worked in the Regional Office during the same period. Most of the contact between the two men came from their work with Incident Command. Over a 10 year period they worked closely together, going on training roadtrips for blocks of two to eight weeks at a time, several times each year.  After their training tours Dan and Ray returned to their respective prison facilities, but they talked on the phone often about setting up future training.

   Dan spoke highly of Ray, who "has in impeccable reputation as a professional." He has never seen or heard Ray say or do anything inappropriate to an inmate or to Staff. No one ever complained to Dan about Ray, and there were no relevant rumors about Ray.

US v. GARCIA
November 29, 2022
Flint Report

In fact, when Ray and Dan spoke about other BOP personnel who have been found culpable of violating the law they agreed that they were disturbed by such conduct because it reflects poorly on the Bureau as a whole.

From Dan's perspective, the charges against Ray make no sense and he doubts that the alleged violations occurred. After 32 unblemished years with the BOP, why would Ray just start to molest inmates? The notion that he molested several inmates unnoticed is improbable in a prison with cameras everywhere, including in the housing units, and doors to the Units that are locked so one needs a Unit Manager gain access. Moreover, whenever a member of Executive Staff, especially the Warden, is out of their office everyone knows where they are, both inmates and Staff.   When the Warden or Associate Wardens walk the units they are always accompanied by other Staff who Dan said will, at very least, want to be close so they can explain whatever the Executive Staff finds fault with. It is very rare for a Warden or any Executive Staff to be alone on the job in a prison.

Dan has conducted many prison investigations and is knowledgeable in this area. He said that inmates are excellent manipulators and prone to uttering falsehoods. Dan reports that when he's investigated prison matters based on inmate statements nine out of 10 times they lies. Sometimes the inmate has a reason for lying but other inmates lie "just for the thrill of it." One technique BOP Staff have used for years involves catching an inmate in violation of the law or institutional policy, and then leveraging the inmate to work as an informant in exchange for not reporting or writing up the violation. In these circumstances, taking or harvesting photos or videos of the inmate's transgressions is one valid way that Staff can document the inmate's conduct. Sometimes a prison may have a severe backlog of cases investigating inmate misconduct so Staff may reason that having an inmate informant is more useful.

Dan agrees that the Union and inmates have a common interest in taking management down. He said that Ray knows BOP policy better than almost anyone, and that Ray held his subordinates accountable to policy. Dean does not put it past the Union to cultivate inmate complaints against management.  At the same time, inmates know that when they make accusations against Staff they can prevent the accused Staff from advancing on the job, even if the accusations are shown to be false.

**END**

# EXHIBIT 2

| | |
|---|---|
| **From:** | Paulson, Andrew (USACAN) |
| **To:** | "James Reilly"; Priedeman, Molly (USACAN) |
| **Subject:** | RE: U.S. v. Garcia - Possible Defense Witness Dan Flint |
| **Date:** | Sunday, December 4, 2022 4:07:00 PM |

Thanks, Jim.  See you tomorrow morning.

**Andrew Paulson**
Assistant United States Attorney
Northern District of California
1301 Clay Street, Suite 340S
Oakland, CA 94612
andrew.paulson@usdoj.gov
█████████████████
Pronouns: he, him, his

---

**From:** James Reilly <jim@summitdefense.com>
**Sent:** Sunday, December 4, 2022 3:55 PM
**To:** Priedeman, Molly (USACAN) <MPriedeman@usa.doj.gov>; Paulson, Andrew (USACAN)
<APaulson@usa.doj.gov>
**Subject:** [EXTERNAL] Re: U.S. v. Garcia - Possible Defense Witness Dan Flint

Molly and Andrew,

At the very least, in light of the cross-examination conducted thus far, Mr. Garcia's
credibility has been attacked, within the meaning of FRE 608(a).  Therefore, character
evidence of his reputation or the opinion of Mr. Flint regarding Mr. Garcia's character for
truthfulness would be admissible.

We could also have some discussion with the court regarding the admissibility of character
evidence under Rule 404(a)(2(A) as to a pertinent trait of Mr. Garcia's character with
respect to sexual assault on an inmate.

Nevertheless, while I was in the process of preparing a response to you on this issue, I
received a call from my investigator, who advised me that for reasons unrelated to the trial
or his potential testimony, it would create a significant personal hardship for Mr. Flint to
travel to the Bay Area this coming week.  As a result, I have decided not to call him as a
witness after all.

Jim

---

**From:** Paulson, Andrew (USACAN) <Andrew.Paulson@usdoj.gov>
**Sent:** Sunday, December 4, 2022 12:09 PM
**To:** Priedeman, Molly (USACAN) <Molly.Priedeman@usdoj.gov>; James Reilly
<jim@summitdefense.com>
**Subject:** RE: U.S. v. Garcia - Dr. Maegan Malespini ... Possible Defense Witness Dan Flint

Jim,

In light of our objections, please let us know if you still plan on calling Mr. Flint as a witness
so that we can be prepared to address the issue with the Court first thing tomorrow
morning.

-Andrew

**Andrew Paulson**
Assistant United States Attorney
_____

**From:** Priedeman, Molly (USACAN) <Molly.Priedeman@usdoj.gov>
**Sent:** Saturday, December 3, 2022 6:57 PM
**To:** James Reilly <jim@summitdefense.com>; Paulson, Andrew (USACAN)
<Andrew.Paulson@usdoj.gov>
**Subject:** RE: U.S. v. Garcia - Dr. Maegan Malespini ... Possible Defense Witness Dan Flint

Hi Jim,

We do object to Mr. Flint's testimony.  Based on the report, it doesn't appear that he has
any relevant or admissible evidence to offer.  He never worked at FCI Dublin, he doesn't
appear to have knowledge of FCI Dublin, or any of  the witnesses other than your client.
Although it appears he does know Mr. Garcia, it doesn't appear that anything he has to say
that would pertain to a potentially relevant character trait, and therefore be admissible.

Best,

Molly

**Molly K. Priedeman**
Assistant United States Attorney
_____

**From:** James Reilly <jim@summitdefense.com>
**Sent:** Saturday, December 3, 2022 6:11 PM
**To:** Paulson, Andrew (USACAN) <APaulson@usa.doj.gov>
**Cc:** Priedeman, Molly (USACAN) <MPriedeman@usa.doj.gov>
**Subject:** [EXTERNAL] Re: U.S. v. Garcia - Dr. Maegan Malespini ... Possible Defense
Witness Dan Flint

You're welcome, Andrew.

On another subject, I have reconsidered my position regarding other defense witnesses and
am now contemplating calling one after Mr. Garcia's testimony is completed.  This potential
witness is Dan Flint, a former BOP employee who worked closely with Mr. Garcia on a
variety of BOP issues over the years.

Attached is a copy of the report I received on November 29th from my investigator
regarding his interview of Mr. Flint.  Mr. Flint now lives in Arizona and would therefore have
to travel here in order to testify.

Would appreciate it if you'd let me know whether or not you would object to him being
called as a witness?  And if so, on what specific basis?

Thanks.

Jim