Kevin G. Little, SBN 149818
**LAW OFFICE OF KEVIN G. LITTLE**
Post Office Box 8656
Fresno, California 93747
Telephone: (559) 342-5800
Facsimile: (559) 242-2400
E-Mail: kevin@kevinglittle.com

Attorneys for Defendant Ray J. Garcia

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.:  4:21-cr-00429-YGR |
| Plaintiff(s), | *Assigned to: The Hon. Yvonne Gonzalez Rogers* |
| v. | **DEFENDANT RAY J. GARCIA'S SENTENCING MEMORANDUM AND RESPONSE TO PRESENTENCE REPORT; SUPPORTING DECLARATION AND EXHIBITS** |
| RAY J. GARCIA | |
| Defendant(s). | Hearing:      March 22, 2023<br>Time:           2:00 PM<br>Courtroom:   1, 4th floor |

TO THE HONORABLE COURT:

Defendant Ray J. Garcia through as undersigned counsel and in accordance with the Northern District Local Criminal Rules and Federal Rule of Criminal Procedure 32, hereby submits these responses and formal objections to the Presentence Investigation Report, and also his sentencing memorandum regarding his case.  Defendant also submits the supporting Declaration of Kevin G. Little and the accompanying exhibits in support for his request for a downward varied sentence of 23 months, and a sentence no greater than the low-end guideline sentence of 46 months.



I.       *The Requested Upward Variances Are Outrageous*

Probation is recommending an upward varied sentence of 150 months, and the prosecution is recommending the statutory maximum sentence of 180 months.  Both are both outrageous and legally unsupported.

First, there is no indication that either Probation or the government gave any prior consideration to possible guideline departures, as required by the United States Supreme Court.  *See Gall v. United States*, 552 U.S. 38, 49 (2007).  Prior to ordering an upward variance, much less such an extreme one that would be at least triple the low end of the applicable guideline sentence,[1] 18 U.S.C. § 3553(a) contemplates that a district court will give conscientious consideration to available departure provisions.  *See United States v. Pankow*, 884 F.3d 785, 794 (7th Cir. 2018); *United States v. Johnson*, 619 F.3d 910, 921 (8th Cir. 2010) ("While a district court is not bound by departure precedents when making variance decisions, it may still consider the departure precedents as persuasive authority.").  Probation tersely states on page 47, paragraph 315 of the PSIR, that the factors favoring an upward variance are not adequately accounted for in the sentencing guidelines, but it provides no explanation or substantiation for that conclusion.  This is far from the type of careful consideration the Supreme Court required in *Gall* before a variance should be ordered.

Second, the recommended upward departure is based on facts that are not implicit in the jury verdicts and which are contested.  Indeed, concurrent with this filing, the Defendant presents a separate pleading in which he hotly disputes many of the asserted facts in the PSIR characterized as offense or relevant conduct.  Under Federal Rule of Criminal Procedure 32(i)(3), such disputed facts must be resolved before they can be relied upon, and the Defendant requests an evidentiary hearing pursuant to Federal Rule of Criminal Procedure 32(i)(2).

Third, the proposed upward variances invite the Court to ignore the mandate of 18 U.S.C. § 3553(a), which is to impose a sentence "sufficient, but not greater than necessary" to serve the goals of sentencing.  As set forth more fully below, the facts accompanying the convictions are

---

[1] Probation and both parties agree that the applicable guideline sentence range is 46-57 months, i.e., criminal history category I, offense level 23.

not the worst type of conduct criminalized under those statutes – far from it, and there are many countervailing factors that suggest a far more lenient sentence is appropriate.

Fourth, the basis for the proposed variance is that the Defendant was the Warden of FCI Dublin during the subject offenses, but the Defendant was promoted to Warden in November 2020, after most of the offense conduct alleged had already been completed, with the exception of that set forth in Counts V, VI and VII.

In sum, there simply is no basis for the extreme upward variances recommended by Probation and the government, and there is no indication that the analysis required by *Gall* it its progeny was followed.  Furthermore, as set forth below, many mitigating factors suggesting the propriety of a much lower sentence were ignored.

### II.    A Downward Departure or Variance Is Warranted

Defendant attaches the following exhibits in support of his request for an appropriate sentence:  Exhibit A, a compendium of statements obtained from family, friends and former colleagues, specifically Kathy Nicholls (spouse and longtime friend), Robert Garcia (father), Elida Stewart (sister), Amber Bryce (sister), Elida Bryce (mother), Gene Bryce (stepfather), Irene Stiles (sister), Kelly Silva (former longtime significant other), Tristen Silva (son of longtime significant other), Anthony Silva (friend and former colleague), Daniel Flint (friend and former colleague), Charman Perry-Flint (wife of friend and former colleague), Dee Pemberton (friend and former colleague), Earl Stokes (friend and former colleague), Efrain Covarrubias (friend and former colleague), Frank Alvarez (friend and former colleague), Jason Webster (friend and former colleague), Jeff Eastburn (friend and former colleague), Mike Mendez (friend and former colleague), Mike Randall (friend and former colleague), Norma McCarthy (friend and former colleague), Patricia Lawler (sister), Randy McCarty (friend and former colleague), Richie Holman (friend and former colleague), Roger Moles (friend and former colleague), Victor Gonzales (friend and former colleague), and Will Van Horn ((friend and former colleague); Exhibit B, the Defendant's numerous awards and commendations between 2011 and 2021; Exhibit C, the written statement of Kelly Silva; Exhibit D, the written statement of Elida Stewart;



1  and Exhibit E, the declaration of Dan Flint.  These are all attached as exhibits to the

2  accompanying Declaration of Kevin G. Little.

3       The clear picture one gets from reviewing these materials is of a young man who rose

4  from poverty and sporadic homelessness who went on to rise to the level of Bureau of Prisons

5  Warden despite not having a college degree.  Despite Mr. Garcia's lack of formal education, he

6  became recognized as a policy expert within the Bureau of Prisons and received consistent

7  outstanding evaluations over his 32 year career.  Mr. Garcia is the only federal corrections

8  officer ever to himself capture an escaped inmate.  Mr. Garcia lobbied for increased staff

9  diversity within the BOP.  Mr. Garcia was assigned numerous times to handle special details in

10  the Western Region and Central Office in Washington, D.C. due to his recognized outstanding

11  capabilities.  Mr. Garcia has been recognized for his ability to respond to emergencies with calm

12  and has made decisions that have protected both inmates and staff from harm.

13       Mr. Garcia has also been an exemplary family man, who still cares for his elderly father

14  and is the person all of his adult siblings rely upon for assistance and guidance.  Mr. Garcia is

15  also very close to his mother and her current husband.  The interviews of Mr. Garcia's family

16  were consistent that he was the hub of the family, the person everyone else could always count

17  on.  Perhaps most important, Mr. Garcia has a special and close bond with his special needs son,

18  who family members agree will particularly suffer greatly without the love and guidance of his

19  father as he now enters his formative years.  Mr. Garcia's son has never known life without his

20  father with him, and given his developmental issues, the adjustment promises to be extremely

21  difficult for him.  Mr. Garcia is already 55 years old, and the sentences recommended by

22  Probation and the government would take away his remaining vital years where he could

23  continue to assist his family rather than require their assistance.

24       Unlike the other defendants charged in these related cases, Mr. Garcia is not accused of

25  having intercourse with an incarcerated person.  There also is no evidence, only innuendo and

26  conjecture, that Mr. Garcia was the moving force behind the sexual abuse of other inmates by

27  other persons.  There has been no proof presented that any of those other staff members knew

28



1 anything about what Mr. Garcia was allegedly doing, or that he knew anything about their

2 alleged misconduct.  All of these individuals received or stand to receive far lower sentences that

3 those recommended for this Defendant, despite their more repeated and egregious sexual

4 misconduct.

5          There is no indication that Mr. Garcia has ever been a threat to any member of the

6 general public, or that he is a person prone to lead a lawless life.  To the contrary, Mr. Garcia's

7 past shows that he is someone who has historically greatly respected and obeyed the law, which

8 is why the offense conviction conduct (which Mr. Garcia vehemently denies) is so shocking and

9 unbelievable to those who know him well.

10          There also is evidence that the upward variances recommended by Probation or the

11 government will likely result in Mr. Garcia serving an isolated sentence in a remote institution

12 far from his family and supporters.  Specifically, the declaration of former Assistant Warden Dan

13 Flint specifies the extreme difficulties that Mr. Garcia will likely face if incarcerated. Due to Mr.

14 Garcia's prior status as a BOP employee, status as a former law enforcement officer, knowledge

15 of BOP policies and procedures, and offense conviction, Mr. Garcia would be considered a

16 restricted status inmate likely resulting in extended isolation which is well accepted to

17 detrimentally impact inmates psychologically. Further, because of the factors that make Mr.

18 Garcia a security risk if he were housed in the same BOP region where he supervised inmates

19 and worked, he would likely be placed in a remote BOP region, which is counter to general BOP

20 practice of striving to keep inmates near their families. Additionally, violent retaliation from

21 fellow inmates would be very likely expected and nearly impossible to prevent even if assigned

22 restricted status and generally isolated.  Finally, if he were to receive a lengthy sentence, Mr.

23 Garcia would potentially be housed, at least initially, in a United States Penitentiary, where he

24 would be at risk due to being placed with historically violent and dangerous inmates.

25          Given this combination of circumstances, Mr. Garcia appears eligible for any number of

26 downward departures or variances. *See United States v. Smith*, 387 F.3d 826, 834–35 (9th Cir.

27 2004) (departure possible under USSG §5K2.20(a) because the defendant had lived an



28

1   exemplary life prior to the crime; section also permits departure for past employment record and

2   record of prior good works); *United States v. Carmona-Rodriguez*, 2005 WL 840464 (S.D.N.Y.

3   April 11, 2005) (court imposed below guideline sentence on 55 year old); *United States v.*

4   *Martin*, 363 F.3d 25 (1st Cir. 2004) (downward departure where a lengthy incarceration will

5   shorten defendant's life span"); *United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) (departure

6   justified because defendant had never been imprisoned before and a shorter sentence would

7   nonetheless provide adequate deterrence); *Koon v. United States*, 518 U.S. 81 (1996) (no abuse

8   of discretion to grant downward departure to police officers convicted of civil rights violation

9   due to their vulnerability in prison); *United States v. Volpe*, 78 F. Supp. 2d 76 (E.D.N.Y.1999)

10  (two level departure granted due to extraordinary notoriety of the case and general opprobrium

11  toward defendant combined with his status as a police officer which left him unusually

12  susceptible to abuse and might require a lot of time in segregation); *United States v.*

13  *Antonakopoulos,* 399 F.3d 68 (1st Cir. 2005) (district court may consider defendant's role as

14  caretaker for brain-damaged son even though alternative means of care existed); *United States v.*

15  *Autery*, 555 F.3d 864, 874–75 (9th Cir. 2009) (affirming downward variance in child

16  pornography case because in part because the defendant was motivated and intelligent, and had

17  continuing support of his family); *United States v. Howe*, 543 F.3d 128, 138–40 (3d Cir. 2008)

18  (affirming downward variance based on defendant's 20 years of military service, honorable

19  discharge); *United States v. Davis*, 537 F.3d 611, 616–18 (6th Cir. 2008) (court "may account for

20  a defendant's age at sentencing); *United States v. Huckins*, 529 F.3d 1312, 1319 (10th Cir. 2008)

21  (affirming downward variance based on defendant's lack of significant criminal history); *United*

22  *States v. Martin*, 520 F.3d 87, 93 (1st Cir. 2008) (affirming downward variance based in part on

23  "the support that the defendant stood to receive from his family[ and] personal qualities

24  indicating his potential for rehabilitation"); *United States v. Muñoz-Nava*, 524 F.3d 1137, 1143,

25  1148 (10th Cir. 2008) (defendant cared for his eight-year-old son as a single parent and had

26  elderly parents with serious medical problems); *United States v. Lehmann*, 513 F.3d 805, 806,

27  809 (8th Cir. 2008) (per curiam) (affirming downward variance where the court found that a

28



prison sentence would negatively affect the defendant's disabled young son); *United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (per curiam) (affirming downward variance because the defendant's crime "[di]d not pose the same danger to the community as many other crimes"); *United States v. Davis*, 20 F.4th 1217, 1221–22 (8th Cir. 2021) (sentence constituted "a substantial punishment" and the Supreme Court has noted § 3553(a)(3) requires sentencing courts to consider noncustodial sentences). *United States v. Ruff*, 535 F.3d 999, 1001, 1003 (9th Cir. 2008) (affirming variance to one day of imprisonment plus three years' supervised release with a condition of twelve months and one day served at a corrections center that would permit the defendant to participate in work release, receive counseling, and make visits to his young son); *United States v. Merrett*, 8 F.4th 743, 753 (8th Cir. 2021) (variance due to disparity between similarly situated defendants).

The Defendant submits that the proposed upward variances ignore the available 3553 factors that weigh heavily in favor of a downward departure or variance. Under 18 U.S.C. § 3553 a sentence no more than necessary based on the circumstances of the offense should be imposed. Instead of treating the defendant as an individual, as the law requires, Probation and the government ask the Court to treat the Defendant as an issue by recommending such Draconian sentences.

### III.    *Defendant Deserves No More than the Low-End Sentence of 47 Months*

Based on the applicable 3553(a) mitigating factors Mr. Garcia should receive no more than the low end of the guideline range, i.e., 46 months. In fact, Mr. Garcia is requesting that the court consider one of the above-proposed downward departures or downward variances, so that he may be in Zone C of the guidelines, where it would be possible for him to receive an alternative sentence other than imprisonment. A sentence of 23 months would be appropriate and reflect consideration of all the applicable 3553 factors.

### IV.    *Defendant's Wife's Income Should Not Be Considered*

Probation considers the Defendant's spouse's $115,000 income in determining his ability to pay a fine. However, the income of Mr. Garcia's spouse should not be considered in



connection with his ability to pay a fine, or for purposes of restitution. Mr. Garcia was not married until July 2022, long after the offenses in this case, and he and his wife are likely getting divorced. Considering his wife's income for purposes of restitution or in connection with his ability to pay a fine despite their short-term marriage that post-dated the incidents, in this case would be further punitive.

### V.      Defendant Is Not Required To Be Remanded At Sentencing

Probation recommends that Mr. Garcia be remanded at sentencing, although he has a perfect record of attendance at court proceedings and perfect compliance with the conditions of pretrial release. There is nothing in 18 U.S.C. § 3143, the provision cited by Probation, that requires Mr. Garcia to be immediately remanded. Mr. Garcia needs additional time to settle his affairs, including arranging for the care of his elderly, infirm father, and also to attend the 16th birthday of his beloved son. Given the likelihood that Mr. Garcia will be placed in a facility far removed from his family, this is not an unreasonable request.

Also, allowing Mr. Garcia to self-surrender, would enable him to go to his assigned institution directly, instead of being shuttled, from interim institution, to interim institution, some of which will likely be inappropriate for his restricted status conditions. Mr. Garcia is prepared to comply with whatever conditions the court might impose to ensure his self-surrender at his assigned institution in late April or early May.

### VI.      Defendant Requests Bail Pending Appeal

Defendant asserts that his potentially meritorious issues raised in his motion for a new trial, and the extreme ineffective assistance of his trial counsel, support a determination that he should be entitled to bail pending appeal and litigation of his intended concurrent motion under 28 U.S.C. § 2255. Defendant once again will abide by whatever conditions the Court sees fit to impose to ensure his interim accountability. If Defendant receives a guideline sentence of 46 months, there is a strong likelihood that he will have served most or all of that sentence before receiving a decision on his appeal and intended 2255 motion. The only way to ensure that the



1  Defendant's substantial issues get heard in a manner that would make a real difference to him,

2  would be to grant him release pending appeal, and pending resolution of his 2255 motion.

3  Dated: March 8, 2023                                          LAW OFFICE OF KEVIN G. LITTLE

4

5                                                                */s/ Kevin G. Little*
                                                                Kevin G. Little
6                                                                Attorneys for Defendant Ray J. Garcia

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Declaration of Kevin G. Little</u>**

The undersigned, Kevin G. Little, hereby declares as follows:

1.      I am the attorney of record for the defendant, Ray J. Garcia, having been approved to substitute for former counsel James T. Reilly on December 13, 2022.

2.      Attached are true and correct copies of the following exhibits:   Exhibit A, a compendium of statements obtained from family, friends and former colleagues, specifically Kathy Nicholls (spouse and longtime friend), Robert Garcia (father), Elida Stewart (sister), Amber Bryce (sister), Elida Bryce (mother), Gene Bryce (stepfather), Irene Stiles (sister), Kelly Silva (former longtime significant other), Tristen Silva (son of longtime significant other), Anthony Silva (friend and former colleague), Daniel Flint (friend and former colleague), Charman Perry-Flint (wife of friend and former colleague), Dee Pemberton (friend and former colleague), Earl Stokes (friend and former colleague), Efrain Covarrubias (friend and former colleague), Frank Alvarez (friend and former colleague), Jason Webster (friend and former colleague), Jeff Eastburn (friend and former colleague), Mike Mendez (friend and former colleague), Mike Randall (friend and former colleague), Norma McCarthy (friend and former colleague), Patricia Lawler (sister), Randy McCarty (friend and former colleague), Richie Holman (friend and former colleague), Roger Moles (friend and former colleague), Victor Gonzales (friend and former colleague), and Will Van Horn ((friend and former colleague); Exhibit B, the Defendant's numerous awards and commendations between 2011 and 2021; Exhibit C, the written statement of Kelly Silva; Exhibit D, the written statement of Elida Stewart; and Exhibit E, the declaration of Dan Flint.

3.      If called as a witness in this matter, I could truthfully and competently testify to the foregoing.

Sworn under penalty of perjury under the laws of the United States on March 8, 2023, in Fresno, California.

*/s/ Kevin G. Little*
Kevin G. Little

KGL

A

**Kevin Little:** All right. It's the 15th of February 2023. It's 11:28 a.m. This is Attorney Kevin Little. I am conducting a interview for the sentencing of Mr. Ray Garcia. This will be submitted to the court and I'm here with… please state your full name, ma'am.

**Kathy Nicholls:** Catherine Nichols.

**Kevin Little:** And Miss Nichols, you are married to Mr. Garcia; is that correct?

**Kathy Nicholls:** That is correct.

**Kevin Little:** All right. How long have the two of you been married?

**Kathy Nicholls:** A little over six months. We got married in July 2022.

**Kevin Little:** Okay. And prior to marrying Mr. Garcia, how long had you known him?

**Kathy Nicholls:** I've known Ray, probably close to 15 years. Whether it be just knowing of him through the Bureau of Prisons as a trainer, becoming his friend and then later dating him. So, you know, through that time, I've known him in different ways.

**Kevin Little:** Okay. Now, you also work for the Federal Bureau of Prisons, correct?

**Kathy Nicholls:** That is correct.

**Kevin Little:** How long have you worked for the Bureau?

**Kathy Nicholls:** 17 and a half years.

**Kevin Little:** Where are you assigned?

**Kathy Nicholls:** USP Atwater.

**Kevin Little:** Can you tell me some of the other facilities to which you've been assigned?

**Kathy Nicholls:** I started at FCC Victorville in California. And then I also worked as human resource manager at FCI Mendota. And then transferred to USP Atwater two years ago.

**Kevin Little:** So, what I'd like Kathy of you could do is just let me know and pretend like you're speaking to the judge who's going to hopefully be the one hearing this. Just what are some of Ray's best qualities? What are his admirable qualities? What could you say on that issue?

**Kathy Nicholls:** Okay. In the time that I've known him, he is a very caring person. He is very family oriented, his son is his whole life. Having him late in his life, his son means everything to him. Which is, you know, one of those reasons, I know, he would never do anything to take away time from his son. He's very respectful and respected by a lot of people. He's very responsible. In the time I've known him, he takes pride in being responsive

to things, ensuring he's paying his bills on time. It really bothers him to not pay bills early or on time. He's very protective. He's been protective of me, just as his friend for years. He's been supportive to me and my kids, and I've seen him be that supportive person to several people throughout the time I've known him. He has a lot of integrity. The Bureau of Prisons has something that we call our core values. And it's respect, integrity, correctional excellence, and courage. And honestly, Ray is one of those people that embodies the core values of the Bureau of Prisons. And I think a lot of people would say that about him because of his work ethic with the Bureau of Prisons and what he's done. It's been one of those things I've always admired about him and probably what attracted me to him all along. So, I just… he's a really good person. Excuse me, I have a cold.

**Kevin Little:** No, no worries. You obviously have known Ray now for almost 20 years. Have you ever seen him act inappropriately or do anything inappropriate, that you considered inappropriate towards any prisoner?

**Kathy Nicholls:** No, I've never… I have not worked with him in a prison.

**Kevin Little:** Okay, sorry.

**Kathy Nicholls:** But I've heard many stories of him working in prison, and nothing has ever been inappropriate.

**Kevin Little:** In your life with Ray, have you ever gotten a sense that he was a misogynist, an abuser of women?

**Kathy Nicholls:** No, absolutely not. He's actually quite the opposite of that. He's the kind of person… not to be super personal. But he's the kind of person that before he even kissed me the first time asked if he could kiss me. He would never take advantage of women. That's why I just know that these are false allegations. That that is not him at all.

**Kevin Little:** So you've gotten closest to Ray, during the course of this case.

**Kathy Nicholls:** Oh, absolutely.

**Kevin Little:** Tell me the Ray that you got to know very well as he was going through this case, and how he maintained himself through a very difficult time.

**Kathy Nicholls:** It's been really difficult to watch from the outside. Because especially in the beginning, with his other attorney. His other attorney told him from the beginning, he needed to do this on an island. That he shouldn't even talk to me about it. So that became kind of a difficult thing for us, because we talk about everything. After a while, honestly, of me reading articles, and coming home and saying, "Hey, I'm reading this. I'm reading that. You have to start telling me about the case. So that, you know, I would basically be comforted." So a lot of the things that I would read, I was like, there's just no way that you did this. And we talk about it. So through this, it's really… like I said, it's been heartbreaking, because it's just… he would never touch a female inmate, for sure. Or even be that disrespectful. So watching him go through this has been difficult. It's been difficult because especially in the Bureau of Prisons, it kind of becomes a joke when people do this kind of thing. And so for him to be the butt of the joke, after 30-something years of devoting his career to these people, that's been really disheartening for both of us to see.

**Kevin Little:** And I want to give you an opportunity to clarify your comments, because I understood them, but I want to make sure that whoever listens to this understands them well. When you say that the people who do this they kind of become a joke, you're not talking about, the guards joke about abusing inmates.

**Kathy Nicholls:** No.

**Kevin Little:** I know what you're saying. But please clarify.

**Kathy Nicholls:** Right. It's that when accusations become made, people automatically just want to… it's hard to clarify. Hard to say because I'm sure it's kind of a different way to think. But they just think like, oh, it's another person that an inmate has compromised basically.

**Kevin Little:** Right. You indicated that you worked at Victorville. I know Victorville has a female population in part. Did you work on the female side there?

**Kathy Nicholls:** Not on a regular basis. But on occasion, I did. Yes.

**Kevin Little:** Okay. All right. And so you have experience working, at least to some extent, in a Federal Correctional Facility with female inmates and know all of the things that can happen in those facilities.

**Kathy Nicholls:** Yeah, absolutely. Yeah.

**Kevin Little:** So tell me about the impact that it's going to have on your little family and just raise extended family if he has to serve a significant prison term.

**Kathy Nicholls:** Well, it's very scary. I know I personally have a lot of anxiety about that. Because he is such a caretaker. I was a single mom for many years. So I'm very well aware of how to take care of myself. But being with Ray, he has been that caretaker person and very much takes care of me and takes care of his son. So just the idea of not having him here is very scary and very heartbreaking to me. But even more so it's very heartbreaking when I think about his son. His son is on the spectrum of autism, and he's 15. So he's just starting to get into… you know, he's 15. But I would say he's more emotionally maybe a 10 to 12-year-old. So he's just starting to get into understanding a little bit more about the world and the idea of Ray not being around to guide him more, is really heartbreaking. Because through his whole life, I've always heard, that Ray is that solid person for him. His son listens to him. He respects him. The typical dad things he does for him. But even more so with his issues, Ray is just a very patient person with him. So it's so heartbreaking to think that he wouldn't be here to help him deal with his life situations. So it would be a huge effect on us. And even my little family with my two kids who are basically adults, but Ray is that person that they go to for the car advice? And, how do I fix this type thing? Again, he's always just been there for us. So it will be a huge change if he has to leave.

**Kevin Little:** So his absence is going to reverberate through and impact a lot of lives?

**Kathy Nicholls:** Absolutely. I mean, not even to get into his own family, his extended family with his mother and his father. Right now his father lives about an hour away from us. And Ray is basically the caretaker of his father. Because his sisters don't live as close. So I mean, he has daily communication with his dad. Calls his dad every day. If his dad doesn't answer, you know, it's a little disconcerting, because he is getting up there in age. So I mean, just a couple of weeks ago, we had to meet his dad at the hospital. Because he had a condition and, we were

concerned. And so that was kind of an eye opening thing to me that I will basically become that caretaker if Ray is not here. Because, you know, that's what he does. He takes care of people, and I'll have to be that person for his dad. So I mean, that's huge, too. And, again, he's got a bunch of sisters, and they all look to him for that advice. And, it will be very difficult for everyone.

**Kevin Little:** So, Kathy, finally, what I wanted to give you an opportunity to say is what would you want to tell the judge about what you think the appropriate sentence would be? And I cushion my remarks in that… or I couch my remarks in the context that I know that you are fervently supportive of Ray and believe 100% in his innocence. But given the possibility of his being sentenced, what would you say to the judge about what the appropriate sentence would be?

**Kathy Nicholls:** I guess, when I look at… and I've read a lot of articles of other people that have done things, or have been found guilty of, you know, what they say are possibly even raping inmates, and they're getting like, a year and a half. I mean, I don't even believe Ray deserves that. But I think, I guess if anything, I would hope he would get some type of home confinement. Because I just don't think there's any reason for him to be in the prison.

**Kevin Little:** Okay. Is there anything else you'd like to put on the record about Ray or this case or his sentence before we conclude?

**Kathy Nicholls:** I guess the only thing I would really like to say is, I can see where people would say, well, he had his opportunity. He had an attorney. We had that opportunity to put everything out there. And I think, you know, he didn't have that opportunity. He really didn't, because his attorney did not give him any reason to think he should be concerned because there was no true evidence. And when you're going through something like this, that you've never had to go through, you know, he's never needed an attorney for something like this. And you don't know, either way. I mean, we had conversations about, is this attorney doing enough but we didn't know. Because we've never had to have an attorney. So I hope that that will be considered in this that, you know, he truly hasn't had an opportunity to fight for himself.

**Kevin Little:** Thank you, Kathy. I appreciate your heartfelt comments, and we're going to make sure these get presented to the court.

**Kathy Nicholls:** Thanks very much.

**Kevin Little:** All righty. Thank you so much. Have a good rest of your day. Bye bye.

**Kathy Nicholls:** You too, bye, bye.

**Sabreen Atwal:** So it is 5:13 p.m. And this is criminal paralegal Sabreen Atwal, speaking with Mr. Robert Garcia. And do I have your permission to record?

**Robert Garcia:** Yes.

**Sabreen Atwal:** All righty. So I know… sorry. Sorry, I'm getting another call. So I know… well, first things first, where do you say you live again?

**Robert Garcia:** I live up on the hills, in Porterville going toward Yosemite National Park.

**Sabreen Atwal:** And I believe you're probably retired now. So what were your previous professions?

**Robert Garcia:** Well, I retired as electrician.

**Sabreen Atwal:** Okay. And we know that the family, didn't come from wealth, and it came from humble beginnings.

**Robert Garcia:** Yes.

**Sabreen Atwal:** Can you tell me a little bit about that?

**Robert Garcia:** Yeah, we had some hard times. See I never had a chance to finish high school. And so I started working at an age of 16 full time. And so without a high school diploma, and good education, I never could land a good high-paying job. So it was rough.

**Sabreen Atwal:** How was it raising your kids? Especially how was Ray Garcia in his childhood?

**Robert Garcia:** Well, you know, well, I tried to treat them all equally, and I tried my best when they were… to get them involved in a band or something to keep them occupied and off the streets. And, that helped keep them in place. And they all were capable of finishing high school and have good grades. Ray was good in school and had good grades and did really well in marching band and ROTC and all those things.

**Sabreen Atwal:** Okay. And what do you think the judge should know about Ray's character?

**Robert Garcia:** Well, he's always been really… people love him. In school, he had all kinds of friends. And he still has a lot of friends right now even as an adult, because he's comical. He, likes to keep people laughing. And he's very helpful. Anytime somebody calls him, that they need some help somewhere, he's right there on the spot to help out. So he's a very likeable young man.

**Sabreen Atwal:** And how often… well, do you remain in close contact with Mr. Garcia? And how often do you speak or see Mr. Garcia?

**Robert Garcia:** Well, when his boy… he only has one boy. And the boy, is sick with autism. And so when he was on grade school, my son was travelling quite a ways to get to work. And he had to leave very early in the morning. So I stayed at his place. He kept a room for me there. So I can get the boy up at a reasonable hour, get his breakfast ready and drive him to school. And then I would go back and pick him up in the evening. And by the

time I get him home, and we did get him doing his homework, Ray would be getting home from work, and he cooked dinner for us. And we spent about four years doing that while he was in grade school and through his early years in junior high, and then once he was old enough to really spend a little more time by himself and my son retired, I came to stay in my home

**Sabreen Atwal:** Okay. And…

**Robert Garcia:** And now we see each other at least once or twice a week.

**Sabreen Atwal:** Okay. How would it impact your family if Mr. Garcia was to be absent from the family for a long period of time?

**Robert Garcia:** Well, it would be devastating. Especially for his boy. His boy and him are like two hands together. That boy loves his dad. In fact, you know, I was telling my daughter, I was in the car with him one day and Ray was telling his son, "Well, you'll have to be with your mother this week."

"Do I have to be in my mother's house? Or can I stay at my house?"

You know, so he considered my son's house, his house. And he didn't really feel like he was at home with his mother, you know. So it would be really rough with him specially now, in his high school years where he needs a dad most of all, that would be really devastating. Now, I have three daughters and two sons, and one has already been incarcerated for drunk driving. And so if I could lose my second son, and he gets incarcerated, there won't be any of my boys around when I die. Because, you know, I'm up in age and who knows how long I'll be available.

**Sabreen Atwal:** Right, and… go ahead. Sorry.

**Robert Garcia:** No, I was just gonna say it would be devastating for the entire family.

**Sabreen Atwal:** So Mr. Garcia has been very driven through his life, and successful in his career as a prison official. Can you speak a little bit on that?

**Robert Garcia:** Well, yeah, he got that job. I first got him a job at a place that I worked at in Galena, California and as a guard. And, so he took a liking to that. And when the prison in Lompoc started hiring, he went and applied for that job, and qualified for it. And he started right from the very bottom, working real hard in the prisons and going to every classes he can take, you know, to better his career there. And he just worked himself up from a regular guard to a warden. And I was really proud of his achievements. And it just went wrong with him going to that female's prison.

**Sabreen Atwal:** And what are some things you believe the judge should keep in mind when she is sentencing Mr. Garcia?

**Robert Garcia:** Well, first of all, he ought to keep in mind that my son was real faithful to the prison for 32 years or more. He worked real hard and he was there any time he was called on. When they had the virus go on, he was called to go to DC, and work out a plan for not only the prison that he was working at, but all the federal prisons throughout the United States. He worked on a plan to keep people from getting the disease and spreading it throughout the prison. So he spent quite a time in DC, working on a plan for every one of those prison to be able to take care of that virus, so it wouldn't spread and cause a real bad pandemic in the prison system. And so, you

know, those are things that he worked really hard for, and he was available anytime they needed him. And anytime they… you know, he was involved with the SORT team. And they went and got a team to protect the White House at the time that the demonstrators were marching toward the White House. He was on the frontlines trying to protect the White House. And, these are things that he's always been there for when he was needed. And it is really rough that he's being treated the way he is because some woman made herself available or whatever from what I understand. I don't know what went on. But I used to do prison ministry. And when we go into the women's prisons, they've warned us against the possibilities of these women trying to get sexy with us or too friendly with us. And so I know that that goes on quite a bit. I just don't know what happened, where he was at. So I can't really know what went on or who's at fault or how it was. But I just think that he's being railroaded in this and being made an example.

**Sabreen Atwal:** And is there anything else you would like to say about your son?

**Robert Garcia:** Only that I love him and the whole family loves him because he's always been available to help out everybody whenever they were a need. And so he's going to be greatly missed.

**Sabreen Atwal:** All right, Mr. Garcia, thank you for taking the time to speak with me today.

**Robert Garcia:** Well, thank you

**Kevin Little:** Okay, it's Tuesday, February 14th, it's 4:08 p.m. This is Attorney Kevin Little, and I'm speaking with Elida Stewart. Ms. Stewart, do I have your permission to record our conversation?

**Elida Stewart:** Yes.

**Kevin Little:** All right. And I understand you are Mr. Ray Garcia's sister, correct?

**Elida Stewart:** Correct.

**Kevin Little:** Are you the eldest of the siblings? Or where do you rank amongst the siblings?

**Elida Stewart:** I'm number one.

**Kevin Little:** All right. And your brother Ray is the one next in order, correct?

**Elida Stewart:** No.

**Kevin Little:** Oh, is it Irene after you?

**Elida Stewart:** No.

**Kevin Little:** Okay. Well, who's next?

**Elida Stewart:** Robert Garcia.

**Kevin Little:** Okay. And then who's after Robert?

**Elida Stewart:** Ray.

**Kevin Little:** Okay. Got it. So I'd like to first talk about a little bit… I know that you and your family come from humble beginnings. If you could just talk with me for a couple minutes about the environment in which you grew up. I know you were originally in LA. You moved to Santa Barbara, just tell me a little bit about how life was growing up and how Ray was growing up?

**Elida Stewart:** Well, you're right, we started off in LA. We were all born there. But my dad was in a really bad car accident and we moved to Texas. So if I was six, he probably was about like four. We were there for a few years before I moved back to LA. And then after LA, we moved to Santa Barbara. But yeah, there was five of us. And by the time we moved back from Texas to LA, and my mom has like, maybe seventh grade education. My dad probably has like an 11th grade education. They both worked really hard. My dad sometimes two jobs. He even had like his own business that he tried to do. We all worked for my dad. My brothers used to go and help my dad like do things. When he was working his own business, we would all work at the schools and stuff like that. For example, if my dad had a cleaning that he needed to do, we would all go with them and take out the trash or wipe down the sinks inside of the schools, the bathrooms and stuff like that. We would always help my dad and my mom work. I know that's probably gonna slip to child labor laws, but that's what we did. Because, we needed

to help out at home. Yeah. We grew up in Santa Barbara for the most part. But we didn't grow up like… you think Santa Barbara, really rich right, no. We grew up on the poor side. We grew up on the east side. Everybody there was like, single moms. It was a little bit rough. So and again, there was a time period where my dad was like, he had fallen and had broke his back in a few places. So he was unemployed, which meant my mom who was a housekeeper at the hospital there. She was, like the only one working at nights. There was a time when we were homeless and we lived in a camper at like Lake Cachuma or Gaviota State Beach. As kids we just thought we were out camping, but it was really because my parents couldn't afford a place to live at that time.

**Kevin Little:** Yeah, I understand that you guys were at some point in time even lived out of a station wagon?

**Elida Stewart:** Yeah, I think that was when we were coming back from Texas. That same station wagon we almost died because the muffler or something had split a hole in it and we were all laying in the back. And they made us throw up and everything because we were like literally had gotten toxic fumes from the muffler. But luckily somebody fixed that but yeah, there was a time when we were struggling. That's when we were really young. But once we went to Santa Barbara, we're a little bit older, that's when we were like we stayed in the campsites. So, yeah.

**Kevin Little:** So I neglected to ask you this at the outset. But what is your trade or profession?

**Elida Stewart:** I am a associate registered marriage and family therapist. So [**voice lowered 00:05:21**] you'll see it. Marriage and family therapist. Yeah.

**Kevin Little:** How long have you been doing that?

**Elida Stewart:** Well, I graduated in '21.

**Kevin Little:** Okay. And you live in what part of the state?

**Elida Stewart:** Bakersfield, California.

**Kevin Little:** Okay, so not far from where I am. Now, tell me a little bit… Ray testified in this case, but he really didn't have an opportunity to talk about who he is as a person.  Why don't you tell me what you think the judge needs to know about your brother's character, and just in general, the type of person that he is?

**Elida Stewart:** Well, he's very giving, like very giving of his time. He will open his home up to his friends. He will move people. You know, like our family, my sister needs to be moved this weekend, he's going to go up there, drive the truck, drive the trailer, and move her from one place to another. Like he's always there to help out in any way. Physically he's the one that's there. He has a son who has autism, and he's, really strict with his son. But it's also because he believes in right and wrong. And he believes in his son needs to know those kinds of things. But his son adores my brother. I mean, my nephew just… and that's from his… his ex-wife will tell you that my nephew loves his dad.

**Kevin Little:** How old is your nephew now?

**Elida Stewart:** He's like, 14, 15. Do you know they grow. His birthday is coming up in April. So, you know, he's a teenager now. But he's still very attached to his dad.

**Kevin Little:** No, I mean, I just wanted to inquire. I know from my own family experience with autism. I mean, there are different degrees. Your nephew, where would he be to your understanding on the autism spectrum?

**Elida Stewart:** Very highly functioning.

**Kevin Little:** Okay. And he's extremely attached to Ray?

**Elida Stewart:** 100%. That was the thing that we were the most worried about. Was [Gatlin 00:07:59] because he's never been without dad. And I don't know what that would do to him especially considering his diagnosis. He doesn't understand everything that other people like, generally understand. It would be tough. It would be tough. Especially if he was someplace like not in California. Like, if Ray was in I don't know, Lexington or Bomont or something like that, what would happen? You know, it would be devastating for my nephew.

**Kevin Little:** Sure. Ray has obviously been very driven throughout his life and was very successful in his career as a prison official. Can you speak to that a little bit?

**Elida Stewart:** Yes, my brother has a high school education. But he turned that around and became all the way up the chain of command to a warden. That's not easy to do. Especially as a Hispanic male, that's just not easy to do at all. And he was a trainer and he was in SORT team. And then he was a trainer and SORT team. And they've called him up to Washington DC to be on the front lines when there was trouble in 2020 and things like that. He's always ready and willing to serve and he's always prepared and he's willing to just, "Where do you need me?" Again, it's the same thing. Helpful in the family, but at work as well. "You need me to go, I'm suiting up. Let's go."

**Kevin Little:** All right. Tell me what you would want to tell the judge about what would be a fair sentence in this case, in your estimation? And I'm not asking for a number. What I'm just saying is what are some of the things that you think she should keep in mind when sentencing Ray?

**Elida Stewart:** Well, what I didn't tell you is that I'm a marriage and family therapist at a county jail. So I am very familiar about how some individuals who have been incarcerated behave and act and manipulate staff and other personnel. So I would want her to know that even in my experience, I have walked by cells, and women are completely without any clothes on or things like that. And it's hard for the male staff, I've seen them. They just go, "Whoa," and then they turn around and look the other way. But they've already seen it, you know, but they turn but it's there. And I've seen it... I've been here already a year, and I've seen it more times than I can count. Women and men expose themselves. They expose themselves sometimes manipulative because they want to get something. Sometimes it's manipulative, because they want to tell the tattletale. It just, I would want her to know that that's part of what happens in those situations. When I was working for the BOP in 1995, through… '95 '97, '98 like that, when I was working for the Bureau of Prisons, we knew that if you worked at Dublin, you better be careful, because those girls will do stuff to trip you up. I want her to know that because I think that sometime, you know, everybody is innocent, right? I didn't do anything, and I'm here and I'm the victim. But that's not always the case.

**Kevin Little:** Right. Thank you for mentioning that. We've had some other witnesses talk about that also. Tell me what your brother's absence from your family for any extended period, how that would impact your family.

**Elida Stewart:** It would probably kill my dad. He's very, very… he depends on my brother so much. My brother is there every other weekend. My dad lives out in the boonies and he needs wood to be cut, my brother is there cutting wood. My dad is almost 78 years old. This is devastating because my other brother is already incarcerated. He only has one more son. So Ray's absence, because Ray is always there and always helping my dad would be greatly… in fact, last week, I think it was, my dad called my brother and said, "Hey, my nose is bleeding," And my brother right away, said, "Hey, check your blood pressure. Call the ambulance. I'll meet you at the hospital." Sure enough, my dad's blood pressure was through the roof. They rushed him to the hospital. And my brother was there to take him home. You know, and things like that, that as our parents get older, we need people around. I'm three hours away. By the time I got to my dad, it would be too late.

**Kevin Little:** And you've already obviously mentioned the impact that this is going to have on Ray's son. Gavlin, your nephew.

**Elida Stewart:** Yeah. And my mom. My mom she doesn't show emotions, but it's another thing that's gonna break her because those are her two boys.

**Kevin Little:** Elida, you've been very candid and helpful in this interview. Before we conclude it, is there anything else that you would like to say either about your brother or about his possible sentence that you think would be important?

**Elida Stewart:** I think that it's important if the judge could recognize that there's… well, okay, let me put it this way. The first trial, there was somebody there who saw people in the courtroom telling the witness what to say, and what not to say. So as soon as the witness would start to incriminate herself, the people in the courtroom that were, you know, in the audience part would shake their heads, "No, no, no. Don't go there. Don't say that." They were actually like, what do you call it, like cueing the witness. And it happened several times. Another time, one of the jurors fell asleep.

**Kevin Little:** Yeah, that's on the record, actually.

**Elida Stewart:** Yeah. So it's things like that, you know, the judge is busy. They're not looking at the audience and seeing you know, if they're doing [**voice cut 00:16:02**] to tell the witness basically what to say and what to stay away from. And I don't think that that was fair. They need to check the people who were there that were coaching the witness. Somebody needed to keep an eye on them. That's probably only thing.

**Kevin Little:** Okay, Elida thank you for your time. I really appreciate your comments and we're going to be talking to as many of your other family members as we can. But I really appreciate your speaking with us.

**Elida Stewart:** Well, I appreciate your working to help my brother. I do. I really appreciate it.

**Kevin Little:** You take care. Bye, bye.

**Kevin Little:** Okay, so it's Valentine's Day, February 14th 2023. It's 3:47pm. And this is attorney Kevin Little. And I am speaking with Amber Bryce, who is the sister of Mr. Ray J. Garcia; is that correct ma'am?

**Amber Bryce:** Correct.

**Kevin Little:** And I do have your permission to record this interview?

**Amber Bryce:** Yes.

**Kevin Little:** All right. Are you Ray's older or younger sibling?

**Amber Bryce:** Younger half-sibling.

**Kevin Little:** Half-sibling. Okay, and based on your phone number, although phone numbers are not really a good predictor these days, it seems like you live somewhere in the Ventura County area, is that right?

**Amber Bryce:** I live in Sacramento.

**Kevin Little:** Oh, see, there you are. What do you do for a living?

**Amber Bryce:** I work for Peace Officers Research Association of California. It's a nonprofit for police officers. And I'm an executive assistant.

**Kevin Little:** Okay, great. Do you yourself have a law enforcement background?

**Amber Bryce:** No, not myself.

**Kevin Little:** Okay. All right, tell me… and imagine that you're speaking to the judge. Just tell her some of the good traits and characteristics that your brother Ray has.

**Amber Bryce:** Well, that's very easy, because he's always been very active in my life in regards to when I needed somebody. So I have had a very up and down life in regards to moving a lot. And every time I needed anything, in regards to that he's been the one to be there. So I move almost every year, and he is always the first person to be there. Anything I've ever needed in regards to myself or my two daughters, he provides me with. So he's been a big support through my divorce and just kind of growing up. I am his younger sister by almost 20 years. And he's been my second dad. Absolutely, for sure. 100%. He's always been there to not only crack a good joke, but also to be a helping hand and very emotionally supportive, which I don't think not everybody gets to have from their big brother. But he has. He's always been there for me and made me feel, again, emotionally supported and loved when I've had some really hard times.

**Kevin Little:** Thank you. And I understand that even now, as adults, you and Ray remain in close contact, is that correct?

**Amber Bryce:** Absolutely.

**Kevin Little:** How often would you say you speak to or see your brother?

**Amber Bryce:**  I would say probably once a month. I would say we don't get to see each other a lot. But I also work and I'm a single mom. So that becomes a little hard and you know, with being a few hours away, that can be difficult too. But our family is really close. And for the most part we do get time for that. I mean, he's the one who taught me how to make chicken tortilla soup just recently. So yeah, we try to speak about once a month. I know the biggest thing though, is whenever I call he answers.

**Kevin Little:** Right. What are some of the things that you've seen your brother do that would show that he's a positive member of the community, whether it's charity work or helping out people, other people in need anything you can tell me in that regard.

**Amber Bryce:** I haven't seen everything in regards to what he's done in that side. I've just seeing what he's done for the people closest to us. In regards to how he treats people, he has been nothing but respectful. So in regards to how he interacts with people, how he's always spoken to people… I've known people I've introduced him to he's never been disrespectful or rude. And he's always been very open.

**Kevin Little:** These allegations or these charges that Ray has been convicted of are these in any way indicative of the person that you've known all your life?

**Amber Bryce:** No, not at all.

**Kevin Little:** Have you ever seen him act in a way towards a female that you felt was in any way inappropriate?

**Amber Bryce:** No, definitely not.

**Kevin Little:** Okay. Tell me a little bit about how much your brother loved his career.

**Amber Bryce:** I mean, he was his career. I mean, to say I've been proud is an understatement. Because I mean, I look up to him because of his career, as well as just who he is, as a person. He has always been very dedicated to his work. Which means missing out on some stuff every now and then. But we understood, he worked very hard to get to where he was at. Never have we ever heard of anything happening. Never has there been a situation… I mean, we've known people he's worked with, we've known people who were very close with him, who had seen him work and never, never was that anything that other than great things have I heard about my brother. So he really held his job to such a high standard. And from all accounts, he held himself to such a high standard, so yeah.

**Kevin Little:** And it's important also, for me to ask you, I mean, you guys don't come from wealth. You came from, humble beginnings, correct?

**Amber Bryce:** Yes.

**Kevin Little:** Care to explain, talk a little bit about that, if you can.

**Amber Bryce:** Well, I am seven years different from my brother, and in regards to all of that, but our family, in general has never had a lot of money. My mom was 15, or she was 14, she got married. And she's 15, and she was 15 when she found out she was pregnant. And she had my sister at 16. And my brother wasn't too far after that. So my mom was very young, and their father was very young. And, I mean, my mom couldn't work. She had four

kids, by the time she was 20. And she was a very dedicated mom. They didn't have anything growing up. You know, they've lived out of a station wagon for a period of time. All of us really didn't have much growing up. And even through all of that, even still, my siblings and even myself, we learned how to grow from there. Well, my mom took them away from a very bad situation in regards to growing up in LA, and being around violence. She took them away from that to have all of us grow up in a very safer neighborhood in Santa Barbara. And yeah from there, we got to grow from there. But we didn't have any money growing up or anything, really.

**Kevin Little:** And what were some of the hard labor jobs that you are aware of your brother doing before he became a prison official?

**Amber Bryce:** I remember that he worked at the Swapmeet in Santa Barbara. He worked there for a while. And then I don't know all about his past jobs. Like I said, I think he was already working in the prison when I was born.

**Kevin Little:** Is there anything else that you'd like the judge to know about your brother in connection with her decision to sentence him?

**Amber Bryce:** I just hope that by knowing or hopefully by hearing from everyone, my brother is not a threat to anybody. He's not going to harm anybody. He has a lot of love. And regardless of how life goes sometimes and whatever happens and not, I firmly and truly believe that he is a really great person and he has always been the best big brother and he's always shown his love and care for people. So I just hope that that means something.

**Kevin Little:** Amber, I really appreciate your time and your heartfelt comments. And unless there's something additional you'd like to add, I think I'm done with my questioning.

**Amber Bryce:** Okay. No…

**Kevin Little:** All right. Thank you, ma'am.

**Amber Bryce:** Thank you so much.

**Kevin Little:** Bye, bye.

**Amber Bryce:** Bye.

**Sabreen Atwal:** Is 6:05 p.m. February 14th 2023. This is criminal paralegal Sabreen Atwal speaking with Ms. Elida Bryce. Do I have your permission to record, ma'am?

**Elida Bryce:** Yes.

**Sabreen Atwal:** Okay. So I'm gonna start off with where do you currently reside, ma'am?

**Elida Bryce:** In Sacramento,

**Sabreen Atwal:** And are you still working or are you retired?

**Elida Bryce:** I'm retired,

**Sabreen Atwal:** And what was your prior profession?

**Elida Bryce:** I was a medical insurance agent.

**Sabreen Atwal:** And how long were you a medical insurance agent for?

**Elida Bryce:** Well, 14 years.

**Sabreen Atwal:** Okay. And we know that you and your family came from humble beginnings. How was it like raising your kids? And how was Mr. Garcia throughout his childhood?

**Elida Bryce:** I never had a problem with my son during his childhood. He was in a band in high school actually. And in band in high school he played the saxophone. He did a lot of band competitions. And he was also in jazz band in high school. He did cross country running in high school. In elementary school, he was in band. Again, never had issues or problems with him at all.

**Sabreen Atwal:** And can you talk a little bit about Mr. Garcia's more difficult jobs he did before he became a prison official?

**Elida Bryce:** The difficult job he might have done before he got into the prison system? Is that what you asked?

**Sabreen Atwal:** Never mind. Let me word it in a better way. Sorry. So we know that you guys didn't come from a lot of wealth. What are some hard jobs that Mr. Garcia did before he became a prison official?

**Elida Bryce:** Oh, the jobs he did. Wow. Let me see. God that was a long time ago because he's been in the prisons working as a… started off as a guard. God, 30 years ago, 30 something years. 30 years ago. It's been a long time he's been in the system. Before that, I remember when he was in high school, he worked at a Wendy's for a few years. He worked helping his dad in maintenance. His dad had a maintenance company. Tried going and then when he was in like I said high school he did Wendy's? Well, I'm try to think back that long ago. It's been a long time ago. What else did he do? Let me think. He also did… oh, he did security guard also at one of the companies in Santa Barbara. I think was it… no it wasn't Raytheon. It was one of the other companies. He did

some security guard for them. So yeah, I mean, it's been a long time. Like I said, he's been 30 years with the prison system. So it's been a long time.

**Sabreen Atwal:** Okay, so we know Mr. Garcia has been very driven throughout his life and successful in his career as a prison official. Can you speak a little bit about that?

**Elida Bryce:** Hard working, always being there for the job. Always prepared to do the job. He started off in Lompoc where we used to live at and, you know, worked his way up. They moved in from time to time and he did what needed to be done. He moved when they told him he had to move to a different area. He, did a lot of special stuff like the SORT team. He did a lot of teaching. I know that because he told me about all that. I have pictures that he took with some officials and really liked his job. I just can't even understand why we're even in the situation that we're in because he's not that kind of person. So…

**Sabreen Atwal:** And what are some… sorry, what do you think the judge should know about Mr. Garcia's character?

**Elida Bryce:** He's a giving individual. Whenever I need him for something, he never says no. He's there. I can call and say, "Son, I need you to come help move your sister out or in a place."

 "Okay, I'll be there when do you want me?" Always available for me. If I need him to do something or if I need to ask him for something never has he ever said, "I can't." Or, "I'm too busy." His sister is actually moving this weekend. I called them and said, "Your sister needs help moving."

 He said, "Okay, what time do I need to be there?" That's the kind of person he is. His other sisters will ask him for direction or help and he's always there for them. His sisters, his brother, myself, my husband. If my husband needs help we ask him to help us do a patio… I mean driveway. "Okay, what day do you want me and what time?" You know, so I mean, yeah, he's just always there for all of us, for family. He's very much who we call.

**Sabreen Atwal:** And can you comment on Mr. Garcia's involvement in the community or any other volunteer work that he's done?

**Elida Bryce:** You know, I don't know about the volunteer work. I know that he does a lot with my grandson. When my grandson was in football, he did coaching, assistant coaching. When my grandson was in baseball, he was always there. My grandson, his son, my grandson is involved in water sports right now. Every meet, every morning, at five, six o'clock in the morning, he takes them to those. He's there for him. Always, always. Now, because he's so involved with his son's sports, the different ones that he's been in, community wise, I don't know if he's done any other things like I don't know, different things in the community. Mostly, it's always been sports for the kids, helping the kids and teams that my grandson has been in. That's basically, you know, has been what he's always been involved in.

**Sabreen Atwal:** So how often would you say you see or speak to Mr. Garcia?

**Elida Bryce:** Do I see him?

**Sabreen Atwal:** How often do you see or speak with Mr. Garcia?

**Elida Bryce:** Oh, I usually speak with him once or twice every other week or so. Usually, I see him at least once a month. Usually he comes here to visit me because I don't like to really drive far. So I'll call him and he'll come over to visit and bring my grandson with him. So we see each other quite often.

**Sabreen Atwal:** So how would it impact your family if Mr. Garcia was to be absent from the family for a long period of time?

**Elida Bryce:** It would affect the family a lot. Because like I say, he is the person that we count on. He's the person we call for direction sometimes. When my mother was ill, we had to go to Texas, years ago, I said, "We have to go see your grandmother."

He said, "Okay, let me know when." He went with me. So it would affect our family a lot. Because, like I said, he's the one that we call. When we need something or if we have a question or we need help with something, it's Ray who we call.

**Sabreen Atwal:** How would it impact his son? Because I believe he is on the autistic spectrum, correct?

**Elida Bryce:** It would affect him quite a bit because like I said, he's still involved with his son, my grandson who's… what is he? He's 15 or 16 now, in high school now and he does have some health issues and so oh my God that would just break his heart and ours. Because he is kind of our backbone, you know. No matter who it is that needs something, no matter who it is that has a question no matter who it is, that needs help in the family, we call Ray. Every social event, we have Christmas Thanksgiving, a birthday, we call Ray.

**Sabreen Atwal:** Okay, and what do you believe would be a fair sentence for Mr. Garcia? And what are some things that the judge should keep in her mind when sentencing Mr. Garcia?

**Elida Bryce:** First thing is that he's never ever been in trouble. He's a citizen, a modern citizen. I mean, and he's worked hard. Whatever it is that they think he's done, or you know, and I don't know everything. So I'm sure that the judge needs to know that this person, hardworking individual, who's been in his child's life, has worked with him because of the child's medical illnesses, has always been the backbone of the family. That not just would it affect Ray, it would affect the whole family. It's just devastating. Because he's got so much good to give in society, that putting him in any kind of prison system, jail or anything like that would not be anything… I mean, it's just not good for anyone. Not even society, because he has so much yet to give society and the good.

**Sabreen Atwal:** All right, and is there anything else you would like to include or add?

**Elida Bryce:** That I don't know. It's really hard, I'm the mom. And so it just breaks my heart, of course. So, even just the thought that he would be put somewhere where he couldn't continue being the person that he really is.

**Sabreen Atwal:** All right. Thank you so much for your time, ma'am.

**Elida Bryce:** Okay, thank you for calling me.

**Sabreen Atwal:** Yeah, all right. Have a good rest of your day.

**Elida Bryce:** You too.

Elida Bryce

**Sabreen Atwal:** It is 5:43 p.m. February 14th 2023. And this is criminal paralegal Sabreen Atwal speaking with Mr. Gene Bryce.

**Gene Bryce:** Correct.

**Sabreen Atwal:** And do I have your permission to record?

**Gene Bryce:** You do.

**Sabreen Atwal:** Thank you. So, how long have you known Mr. Ray Garcia? Because I believe you're his stepfather.

**Gene Bryce:** Yes, I've known him as long as I've known his mother, which is, oh, my God, I don't know how long it's 37 years. I don't know. I'm guessing.

**Sabreen Atwal:** Okay. That's okay.

**Gene Bryce:** It's a long time.

**Sabreen Atwal:** I'm sorry, I should have started off with this. What is your profession?

**Gene Bryce:** I'm a Materials Manager.

**Sabreen Atwal:** And how long have you been doing that?

**Gene Bryce:** That would be going about 15 years.

**Sabreen Atwal:** All right. And what part of the state do you currently reside in?

**Gene Bryce:** I live in Northern California.

**Sabreen Atwal:** Okay.

**Gene Bryce:** Super tight.

**Sabreen Atwal:** What do you think the judge should know about Mr. Garcia's character?

**Gene Bryce:** Oh, it's was actually really strange to hear the charges. Because I never known him to be, you know, in that way. I mean, he's a good man. He's really good to his son. He's always been great with the family. So it was just so much of a surprise for all of us. You know, he's really a good man. He really is. I don't know what else to say.

**Sabreen Atwal:** And do you remain in close contact with Mr. Garcia? How often would you say you see or speak?

**Gene Bryce:** Well, I speak to him whenever he speaks to his mom. You know, I'm not really… I mean, I'm his stepdad purely by marriage and so forth like that. But he was a grown man when I met my wife when I met his

mother. So, I mean, he had his own dad, and so like that. So we're friends. But we're more friends than anything else. So…

**Sabreen Atwal:** Okay. And so, have you ever seen Mr. Garcia act in a way that is inappropriate with a female?

**Gene Bryce:** No, no, never. That's what was so surprising. He would have been the last person in the world, I would have thought that would do anything like that. I mean, at first, I was thinking somebody was setting him up or something like that, because it really surprised me. So yeah, it was shocking.

**Sabreen Atwal:** And Mr. Gracia has been very driven throughout his life, and successful in his career as a prison official. Can you speak a little bit on that?

**Gene Bryce:** Well, I've never seen him around work or anything like that. But when he was a younger man, and he was working at a Swapmeet. And he always became supervisor. He always put his 110% in everything that he does. So I imagined in the prison system it was no different. He seemed to have brought work home with him and so forth like that. Like I said, it was just a huge surprise because I've always considered him a professional.

**Sabreen Atwal:** And what would you believe a fair… sorry. What do you believe is a fair sentence for Mr. Garcia and what are some things the judge should keep in her mind when she's sentencing Mr. Garcia?

**Gene Bryce:** You know, that's a kind of a two sided question. To me, I think this whole ordeal is… he's kind of learned a lesson in this whole ordeal. I mean, maybe some counselling and something like that. But I don't believe throwing him in a prison cell with four walls is doing anybody any justice or anything like that. I've always considered rehabilitation and so forth like that. This wasn't… I don't know. I don't know what kind of crime it was. I haven't seen any of the transcripts or anything like that. I just know, from what my wife has told me what was going on. But I don't believe in these types of crimes, that it's necessary to throw someone in the cell. That's not helping anyone for that matter.

**Sabreen Atwal:** And how would it impact your family if Mr. Garcia was to be absent from the family for a long period of time?

**Gene Bryce:** Oh, he will be sorely missed. Of course, he would be. You know, I sit here and consoled his mother. And it's, gonna hurt her so very much. So of course, I don't like to see that. I don't think he deserves that kind of, you know, sentencing. You know, he will be missed. But I just hope, the judge can find it in her heart to, you know, ease up a little bit.

**Sabreen Atwal:** Okay. And is there anything else you would like to say about Mr. Ray Garcia?

**Gene Bryce:** I've always considered him an honorable man. He's a really good father. And his indiscretion, his… I don't know. I don't know what you would call any of this. I mean, I think that's repaired by counselling. Like I said, I don't think jail is any way to help that kind of an issue. So I just would like to see him out with his family.

**Sabreen Atwal:** All right. Well, thank you for your time, Mr. Bryce.

**Gene Bryce:** All right. Well, thank you very much. Our hopes and prayers are with him.

**Sabreen Atwal:** All righty, have a good rest of your day or have a good night.

**Gene Bryce:** All right. Bye. Thank you.

**Sabreen Atwal:** Bye, bye.

**Gene Bryce:** Bye, bye.

**Sabreen Atwal:** It is February 14th 2023 5:27 p.m. I am the criminal paralegal Sabreen Atwal speaking with Ms. Irene Stiles, correct?

**Irene Stiles:** Correct.

**Sabreen Atwal:** And do I have your permission to record?

**Irene Stiles:** Yes.

**Sabreen Atwal:** Okay. So we know that you and your family came from humble beginnings and not a lot of wealth. How was it like growing up? And how was Mr. Garcia like in your childhood?

**Irene Stiles:** Well, you know, for me growing up, I didn't feel like I was lacking anything. Because my family is very close. We're a very close-knit family. And as far as Mr. Garcia, my brother, he has always been very good to me. Always willing to help out when I needed it. And very good to my children and my grandchildren.

**Sabreen Atwal:** All right. And sorry, it's been a long day.

**Irene Stiles:** For me as well.

**Sabreen Atwal:** Sorry, I should have started off with what do you do for a living? What is your profession?

**Irene Stiles:** I'm an administrative assistant at Kohl's Department Store.

**Sabreen Atwal:** Okay. And where do you live?

**Irene Stiles:** Sacramento, California.

**Sabreen Atwal:** Okay. And how long have you been a… you said administrative assistant?

**Irene Stiles:** Yes, I've been that for a year and a half. I worked at Kohl's for six years now.

**Sabreen Atwal:** All right, and have you remained in close contact with Mr. Garcia?

**Irene Stiles:** Well, of course, he's my brother.

**Sabreen Atwal:** How often…

**Irene Stiles:** Like I said we're a close-knit family. So you know, we talk to each other a lot.

**Sabreen Atwal:** Okay, how often would you say that you see or speak with Mr. Garcia?

**Irene Stiles:** I try to get to see him every time that we have, like a holiday, invite him for thebirthdays. I was actually going to stop by his house during the day, in fact, because I was driving back from Fresno. But I was in a rush. So I didn't stop there. But I plan to go by there next week when I'm back down to Fresno again. So as far as seeing him a lot, well I mean, yeah, he's my brother. So I like to stop by whenever I can.

**Sabreen Atwal:** And what do you think the judge should know about Mr. Garcia's character?

**Irene Stiles:** Well, let's see. I know that he's loving, and he's caring. I know that anytime someone is in need, he's willing to help financially support, you know, just emotional support, things like that. Because if you need something he's willing to help out.

**Sabreen Atwal:** And what are some things that you have seen Mr. Garcia do for the community?

**Irene Stiles:** Well, as far as the community, I don't know, because he's in Merced and I'm in Sacramento. When he's in Lompoc, I mean, there was a lot that he did around Lompoc. I'm not exactly sure exactly what it was, you know.

**Sabreen Atwal:** Okay. And have you ever seen Mr. Garcia act in a way that was inappropriate with the female?

**Irene Stiles:** No, I have never seen that.

**Sabreen Atwal:** And Mr. Garcia has been very driven throughout his life and successful in his career as a prison official. Can you speak a little bit on that?

**Irene Stiles:** Well, you know, I know that he worked very hard. And he was very dedicated to working very hard and making a life for himself and his son. And I know that in that he always was diligent about working and trying to keep his personal life separate from the other world, I would put it. So I believe that he always worked hard to strive for the betterment of himself and his job.

**Sabreen Atwal:** And what do you believe would be a fair sentence for Mr. Garcia? And what are some things the judge should keep in her mind when she is sentencing Mr. Garcia?

**Irene Stiles:** You know, I don't know who the person is that made the claims or whatever. I don't know what they were in for, or whatever. But in my opinion, someone who's in that kind of position, probably didn't have that greatest character in the first place, and wants to probably slander somebody else. And I believe that's what's going on now.

**Sabreen Atwal:** Okay. And how would it impact your family if Mr. Garcia was to be absent from the family for a long period of time?

**Irene Stiles:** Pretty devastating. Pretty upsetting for a lot of people. My parents, mostly but I mean, even the kids, the grandkids, you know, everybody… we all… like I said, we do a lot together. We hang out together. We do parties together, birthday party here, birthday party there, there's a lot of us. So yeah, he'd be missed. Extremely.

**Sabreen Atwal:** And I believe Mr. Garcia's son is on the autistic spectrum. How would that impact his son?

**Irene Stiles:** I just don't even really want to think about that, because I think it's gonna be very, very hard. Very, very confusing, very, very… extremely, just, like I said, devastating, I think. I mean, the kid is smart. But you know, this is his parent, it's extremely hard.

**Sabreen Atwal:** And is there anything else you would like to say about your brother in the upcoming sentencing?

**Irene Stiles:** My brother is extremely awesome. He has always been there to help us, my family, especially whenever we were in need. There was times where, you know, I'd say, "Hey, I need a loan for something," and he would give it freely, willingly. And never begged for the money back or ask for a certain time or anything. Like I said, giving, loving, caring. She's always been like that, even with the kids always purchasing my son's cleats when he was in, football and baseball. He would even buy the uniform if I didn't have enough for it. So like I said, loving, giving and just respectful for all of us.

**Sabreen Atwal:** All right, ma'am. Is there anything else you would like to include?

**Irene Stiles:** Just that it would just extremely be a devastating thing for him to be away for any time.

**Sabreen Atwal:** Okay. All right. Thank you so much for your time, ma'am.

**Irene Stiles:** You're welcome.

**Sabreen Atwal:** Have a good rest of your day.

**Irene Stiles:** You too. Thank you.

**Sabreen Atwal:** It is 9:37 a.m. February 15th 2023. My name is Sabreen Atwall, and I'm the criminal paralegal. I am speaking to Ms.Kelly Silva. Do I have your permission record, ma'am?

**Kelly Silva:** Yeah.

**Sabreen Atwal:** Okay. So, Mr. Silva, what is your profession?

**Kelly Silva:** I am a retired law enforcement from USP Atwater. I was employed with the Federal Bureau of Prisons for almost 21 years.

**Sabreen Atwal:** Okay, and where do you currently reside?

**Kelly Silva:** I live in Atwater, California with my son Gatlin Garcia.

**Sabreen Atwal:** And how long were you married to Mr. Garcia?

**Kelly Silva:** So me and Mr. Garcia, we're not basically married. We were in a relationship for almost 14 years.

**Sabreen Atwal:** Okay, right. And what do you think the judge should know about Mr. Garcia's character?

**Kelly Silva:** About Mr. Garcia's character. I believe that the judge should know that Ray Garcia has worked for the Federal Bureau of Prisons for almost 32 years. And during that 32 years, he has been utilized for many talents and strengths that he has, in order to benefit the Bureau of Prisons over a period of his career. He has the ability to make people listen to him in order to get jobs done. He has the ability to get out of situations that are emerging or fluid that are transpiring that may be negative. I know that he's been involved in several situations at different institutions. Some of which he wasn't even working. That he has come in to assist with those situations. And they have had positive outcomes. I mean, I think that… I was there during the first day of the trial. And I think that Mr. Garcia did not have anybody in the courtroom, except for myself and one other person on his side. Everybody that was in the courtroom was actually for the prosecution. I did noticed that there was former inmates that were in there for the prosecution, listening to the cases. I guess for their benefit, maybe for a positive outcome for the trial on their side. I noticed that in not having someone there for Mr. Garcia in order to listen to all the evidence that was going on, there was no rebuttal. There was nobody keeping track of what the witnesses were saying in order to have a sense of what the policies and procedures were, whatever was stated, I don't think that there was a lot of knowledge in the responses that the witnesses were given. And I don't believe that his counsel was actually well-versed in Bureau policy or procedures. And I actually brought that up to Mr. Garcia after leaving the case, or leaving the trial on that first day that I was there. I do believe that the judge, in my opinion, you can tell that her demeanor towards Mr. Garcia was negative. She was very responsive to the prosecution and to the jury. But I think that somebody on the stand that is being attacked the way that he was, with all the evidence that came about that was being presented, I do feel like Ray felt like he was being attacked. And that his demeanor would go into a type of mode that would come across as being arrogant or pompous. And there are situations in which people could perceive it that way. But I do believe that he felt like his 32-year-career was being attacked.

**Sabreen Atwal:** Okay. And after stating all of that, what do you believe would be a fair sentence for Mr. Garcia? And what are some things the judge should keep in her mind when she sentencing Mr. Garcia?

**Kelly Silva:** I think that throughout his Bureau career, Ray has been involved in numerous situations of which the Bureau has called him in order to come in and clean up, damage control. Whether it's really into policies or procedures are situations that have taken place over the years, and he has been a person that has gone in and dealt with those situations based on the fact that he has the ability to do that. They've relied on him to work those situations and try to get a positive outcome based on perhaps the situation being negative. And that's what he's really good at doing. He's not afraid to go up against a group of people or a situation and not give it his all, in order to make the situation better, or to try to, you know, relieve the situation. I think that there have been many situations over the years that I am aware of, that people have… and I'm not saying that, you know, we're taught as law enforcement officers that if you have a relationship with an inmate, it's wrong. It's completely 100% wrong. That you're not supposed to have relationships with inmate, especially sexual relationships with inmates. However, I know, from experience, and I have knowledge, that over the years, they have walked people out, in lieu of termination, I can account for probably a dozen people at our institution that have been walked out with the same circumstances that Mr. Garcia is facing right now, that he's accused of. And that nothing has happened to those people. So I feel like there's this press, to make him a poster child for this situation. And to put their foot down firmly on somebody, in order to make a statement for what is happening at his institution. And at his institution, this stuff has been going on for years. And I know personally, that he was trying to find the dirty staff and get rid of them, you know, make his institution better. And I know that he was getting a lot of opposition from their union because he was going after these people. And I know that he was irritating a lot of people and pissing them off. But getting back to the point that I'm trying to make is that I think, this particular topic is not fair across the board when it comes to men and women, and how those situations are dealt with. The Bureau deals with them differently on a different spectrum, all the time. And I think that they're using him as an example in order to show that the bureau is doing something about, you know, this problem. And, you know, I also think that the judge has her hands in a numerous amount of cases that overlap this whole entire situation. I think that there's information from different court cases that may be giving her or having her kind of overwhelmed with the whole situation or utilizing other information in other people's situations. And I don't feel that that's right either. Her demeanor towards Ray and his attorney were completely different than her demeanor towards the prosecution and the jury. And it was really evident. I could see it inside the courtroom when I was there.

**Sabreen Atwal:** Okay. And how would it impact your family, especially your son, if Mr. Garcia was absent from the family for a long period of time?

**Kelly Silva:** My son and Ray have a very special bond. My son has a diagnosis that has caused him over the years to have problems growing up. I don't want to get into a lot of details about my son's diagnosis, but his perception of… his social skills and his perception of reality suffers immensely on a day to day basis. And Ray is able to understand him in certain areas that I'm not capable of doing, to see things that I'm not capable of seeing. And Ray has been his strong point in his life. They talk every single night, before Gatlin goes to bed. Ray deals with situations in an entirely different dynamic than I do. Situations that I'm not able to fix or to rectify. Ray has the ability to do that with my son. Even though we split up in 2019, I believe, and even after we split up, my son has spent every other week of his life with his dad, in his care. We split our custody equally, and my son who doesn't have a real sense of reality is going to be devastated if his dad has to do an extended period of time in prison for being found guilty of these charges. And it does concern me because I do believe it is going to negatively impact my son's life.

**Sabreen Atwal:** Is there anything else you would like to say about Mr. Garcia and would like to judge to know?

**Kelly Silva:** I have a lot of things about Mr. Garcia. I think that he has benefited the bureau far more than what this situation has done to tarnish his reputation. I do believe that in sending Mr. Garcia into these predicament situations in order to clean up the Bureau's mess, I'm sure he hasn't made a lot of friends along the way. I know that he has made a lot of friends along the way. I know he has a lot of people that support him. And I know he has a lot of opposition from people that don't support him. And when you go into these situations, with certain outcomes there's going to be times when you don't make friends in high places. But there are going to be times that you do have friends in high places. And I just feel like the Bureau has utilized him for years with many more benefits than what this outcome has been and I feel like he is at a sense of despair because he has done so much in his career. And that now, based on the perception of what has taken place or the accusations of what has taking place, he feels like those people based on Bureau standards are not allowed to speak on his behalf. You know, there's this wall that has been built up for people that can't speak on his behalf. And I do believe that he feels like he's done more good and nobody is there to support him in this situation based on the way that the Bureau has made people believe that they just need to discard individuals that are accused of having relationships. They want to separate themselves from that in order to not hurt their own reputation or tarnish, their own reputation, or even jeopardize their own job. So that's what I feel.

**Sabreen Atwal:** All right, Ms. Silva. Thank you so much.

**Kelly Silva:** Okay, thank you. Do you

**Sabreen Atwal:** It is February 15th 2023 2:07 p.m. My name is Sabreen Atwal, and I'm the criminal paralegal on this case, and I am speaking with Mr. Tristen Silva. And do I have your permission to record, sir?

**Tristen Silva:** Yes.

**Sabreen Atwal:** Okay. So I believe… well, how do you know Mr. Ray Garcia?

**Tristen Silva:** Ray was my stepfather for the better part of my life. Him and my mom never got married, but they were together and then it was just kind of… he was my dad, more or less. Because a lot of the time my dad wasn't there.

**Sabreen Atwal:** And sorry, I should have started off with this question. What is your current profession?

**Tristen Silva:** I'm a police officer in the City of Turlock.

**Sabreen Atwal:** And how long have you been a police officer for?

**Tristen Silva:** It's going on three years now.

**Sabreen Atwal:** All righty. And I where do you reside?

**Tristen Silva:** I live in Turlock as well.

**Sabreen Atwal:** Okay. All righty. Sorry, I should have started off with that. And what are some traits and characteristics Mr. Garcia has that you would like the judge… or that you would like to tell the judge about?

**Tristen Silva:** First and foremost, I think… sorry, it's going to be kind of hard for me to… Sure. Give me a second.

**Sabreen Atwal:** Sorry. Take your time, sir.

**Tristen Silva:** So like I said, Ray was the father figure in my life. He went to all my sports games. My dad wasn't around. I could always feel like I could go to Ray for guidance. If I didn't want to be judged, I knew he would be accepting and point me in the right direction. I think Ray is one of the most professional people I've ever met. He's extremely hardworking. And he's very smart. If there was a trait about him that I would like to bring up, it's his compassion and his love for his family. Ray is one of the best dads I think I've ever known. He treated me like a son, you know, when I wasn't his blood son. And his love for his son Gatlin is… I don't think there's another kid in the world that has more support from his dad than my brother Gatlin does. Ray is a phenomenal father and I know it's going to be really hard for both of them because they have a great relationship.

**Sabreen Atwal:** And what it sounds like is I believe you remained in close contact with Mr. Garcia.

**Tristen Silva:** I wouldn't say close. I mean, I don't talk to him regularly. But I mean, yeah. I still feel like I can go to him for anything. I still reach out to him occasionally and see how he's doing. So I've maintained in contact with him.

**Sabreen Atwal:** And have you ever seen Mr. Garcia act in a way that's inappropriate with a female?

**Tristen Silva:** I have not no.

**Sabreen Atwal:** And how do you think… well, first things. What do you think would be a fair sentence for Mr. Garcia? What are some things the judge should keep in mind when she is sentencing him?

**Tristen Silva:** I mean we all want to see Ray walk freely. I don't determine sentences. I am just a person. But I think all things considered after leaving such an honorable career and putting in the time that he's putting in, I don't believe that Ray would do something like that at all personally. It's hard for me to believe because I've never seen that side of him.

**Sabreen Atwal:** So do you believe Mr. Garcia should be… not favored. Should be provided with alternate sentencing programs like that doesn't include time in custody?

**Tristen Silva:** Absolutely. Absolutely. I don't know how my brother would go through life without a dad. Their relationship is like Ray is Gatlin's superhero. And in a way Gatlin is Ray's superhero. Their relationship is something I've not seen amongst parents and kids. They're completely alike. They're the same person. And honestly like, it breaks my heart knowing that there's the possibility that Gatlin is going to grow up without a dad now.

**Sabreen Atwal:** And is there anything else you would like to include before we end this interview? Anything else you would like the court to know about Mr. Garcia?

**Tristen Silva:** I don't think so, no. I could talk forever about Ray and the things he's done for me, and how he's been there for my family support and supporting me, and throughout my majority of my life, and I could talk forever about him. It's just hard, you know.

**Sabreen Atwal:** Well, thank you so much for your heartfelt comments, sir. I really appreciate you for taking the time to speak with me today.

**Tristen Silva:** Absolutely. Thank you.

**Anthony Silva:** Hello.

**Sabreen Atwal:** Hi, am I speaking to Mr. Silva?

**Anthony Silva:** That's correct.

**Sabreen Atwal:** Hi. Sorry about that I was driving earlier, so I couldn't multitask.

**Anthony Silva:** No worries. No worries.

**Sabreen Atwal:** So, as I said, on the voicemail, I'm calling you because Mr. Ray Garcia indicated that you were willing to provide a character witness statement. Are you still willing to do that, sir?

**Anthony Silva:** Absolutely.

**Sabreen Atwal:** Okay, perfect. So what we've been doing is, we've just been recording our phone conversations and using those as a witness statement. Are you okay with that?

**Anthony Silva:** Absolutely.

**Sabreen Atwal:** Okay. So my first question for you is, can you please provide us with your full name?

**Anthony Silva:** Anthony Daniel Silva.

**Sabreen Atwal:** And where do you live, sir?

**Anthony Silva:** I live in Newman, California.

**Sabreen Atwal:** Okay and I believe you used to work for BOP. Now you're retired?

**Anthony Silva:** No, no, I still do.

**Sabreen Atwal:** Oh, you still do. Okay. And how long…

**Anthony Silva:** Yes, ma'am.

**Sabreen Atwal:** …have you been working for the BOP?

**Anthony Silva:** Coming up to eight years.

**Sabreen Atwal:** Eight years. Okay. And how do you know Mr. Garcia?

**Anthony Silva:** I first met Mr. Garcia, when he was my captain in Atwater, at the prison in Atwater. And that's where I initially, you know, I worked under him as a just regular officer.

**Sabreen Atwal:** And how long have you known Mr. Garcia?

**Anthony Silva:** I would say, well, probably… well, less than eight years, because, he moved to… I think it was, well, other institutions. But I stayed at Atwater. So I would say, maybe five, six years, I think.

**Sabreen Atwal:** Okay. And, in your opinion, what do you believe are Mr. Garcia's best qualities or characteristics?

**Anthony Silva:** I would definitely say just, you know, a stand up guy. He was always very, very fair to me and to everyone that I was around and was working with. And just a very fair, honest, genuine, nice person. I really, really appreciate it. Well, to be honest, I felt lucky to have him as a supervisor, and as my captain. And I really felt like I can generally go to him with a concern. And I really feel like he cared and I just knew that he would take care of us, he would he would help me out.

**Sabreen Atwal:** Okay. And is there anything that you would like the judge to know about Mr. Garcia?

**Anthony Silva:** You know, I would just say that he's an excellent leader, an excellent man. And I would just say that I know that there's a ton of people still in Atwater, that would gladly work for him again. And I hope that all this gets cleared up soon. And I would like to say that, given the opportunity, I would definitely be a shield for him again. You know, just a standup guy. Great, man. And I really appreciate the time that I was able to be around him, especially in the bureau.

**Sabreen Atwal:** And what do you believe, in your opinion, is… sorry, let me rephrase that, in your opinion what kind of sentence do you believe would be appropriate and fair for Mr. Garcia?

**Anthony Silva:** Well, because I think he's such a stand up guy, I would say that it would be just… I mean, I don't know anything about anything. But I would say the least possible. Maybe a couple days you got to wear an ankle bracelet or something. I don't know what how it goes. But I tell you this, I really don't think that he really deserves anything harsh. That he's done such a service to not only like, I mean, I'm just one CO, and how many more just has he treated just so fair, good, and how much has he done for the Bureau of Prisons? I mean, to his whole career, which I can't even imagine, I'm sure it was maybe 20 years or more, who knows, but, I mean, he was just honestly a stand up guy. So I would say as far as sentence least as possible because he is just such a good man and people make mistakes.

**Sabreen Atwal:** Okay. And do you have anything else you would like to say before we conclude this interview?

**Anthony Silva:** No just, I think I would just like to say again that he was very, very generally just a great leader. And I really had this amount of respect and trust with him, I still do. And I really… if they were to tell me tomorrow in Atwater that he's going to come back and be our warden, I would completely be fine with that. And I would have just the upmost confidence in him. Still, to this day, I really would. He's just a great man and I will always have the utmost respect for him, that's for sure.

**Sabreen Atwal:** All right. Thank you so much, Mr. Silva.

**Anthony Silva:** Yeah, all right no problem.

Anthony Silva

**Sabreen Atwal:** Have a good rest of your day.

**Anthony Silva:** You too.

**Kevin Little:** Okay, great. All right. Mr. Flint, do you have a couple of minutes? The reason why I'm calling you back again, is Ray also indicated that you are someone who would be willing to submit a statement in support of him in terms of like vouching for his character. And I was wondering if you would have a few moments, a couple of minutes to answer some questions that we can then have transcribed so that we can submit that statement in support of Ray's sentencing.

**Daniel Flint:** Okay.

**Kevin Little:** Okay. Great. So I'm just going to start from now. Mr. Flint, what is your full name?

**Daniel Flint:** Daniel W or Wayne, whichever you want to do, and then Flint. That's the last name.

**Kevin Little:** Okay. And I understand that you worked for many years in the Bureau of Prisons, is that correct?

**Daniel Flint:** That's correct.

**Kevin Little:** Okay, can you give me a sense of the number of years that you worked in the Bureau of Prisons?

**Daniel Flint:** 27.

**Kevin Little:** Okay. And what was your final position in the bureau?

**Daniel Flint:** Associate warden.

**Kevin Little:** All right. Now, when you were in the Bureau of Prisons, did you have some interaction with Mr. Garcia?

**Daniel Flint:** Yeah. I've worked with him.

**Kevin Little:** You worked with him? Okay, and what…

**Daniel Flint:** I did.

**Kevin Little:** And what work did you guys do together and for how long?

**Daniel Flint:** We did instructing together for approximately 10 years. And we work together in the same office for approximately six months.

**Kevin Little:** Okay. So how long do you think you've known him? Like, when did you first start working with him before now?

**Daniel Flint:** Like, 2007.

**Kevin Little:** Okay. All right, and in your opinion, what are some of Mr. Garcia's good qualities or characteristics?

**Daniel Flint:** To me, he's been extremely trustworthy, and very loyal, and just a super intelligent guy. An expert in I guess, incident command and how to handle, riot type situations. That kind of thing.

**Kevin Little:** Okay. Did you know Mr. Garcia outside of the work setting?

**Daniel Flint:** Sure.

**Kevin Little:** Do you have an opinion of him as an individual?

**Daniel Flint:** Certainly a very devoted father. When we were out on the road instructing, he would always make time to call or video chat with his son every night. And we didn't go out and party all night. We didn't do any of that. We instructed, and went out to dinner and then went to the hotel room and then he would, you know, get a hold of his son. So he's a pretty devoted father.

**Kevin Little:** Okay. Is Ray Garcia you knew for all of those years is that in any way resembling of the person who has been depicted in this criminal case?

**Daniel Flint:** No.

**Kevin Little:** Right. Okay. Are you aware of any community or volunteer activities that Mr. Garcia has engaged in?

**Daniel Flint:** I know he was very active with those son's sporting leagues and all that. I don't know exactly to what capacity he served in but I know he was always at those sporting events when he was home. So I believe he helped with those types of situations.

**Kevin Little:** Okay. How would you assess Mr. Garcia's performance and his knowledge as a BOP employee?

**Daniel Flint:** Really next to none. He knows the Bureau of Prisons policy, better than anybody I've ever seen. Very hands on manager and not afraid to go in and get his hands dirty and work with the staff. And always had a good rapport with his staff and made sure they were doing their job and help them do their job.

**Kevin Little:** Okay. Is there anything else that you can say about Mr. Garcia that you think might be relevant for the court when it decides what the appropriate sentence in this case would be?

**Daniel Flint:** I guess I just say, I mean, the charges that Ray's been hit with, are certainly not incumbent on who, Ray Garcia is. I mean, that's a devoted father and all that. I mean, it's really always been about his son. And so, I mean, being away from his son is definitely going to be the hardest part for Ray.

**Kevin Little:** Got it. Do you believe that if Ray were offered an opportunity for alternative sentencing in some form or fashion, that that would be something that would be appropriate, given his background?

**Daniel Flint:** Absolutely. Him sitting there kind of wasting ways is… nobody wants to see that happened to almost anybody, but certainly, no… if there's anything else available for Ray, I think he'd be an excellent candidate for that. I don't think he would mess something like that up if he was given that type of opportunity.

**Kevin Little:** Okay. All right. Is there anything else that you'd like to add before we conclude the character interview that we're conducting?

**Daniel Flint:** No, it seems like pretty much everyone that Ray worked with and knew kind of abandoned him if you will. And I don't think you got a very fair shake, in the court systems and all that. So it's unfortunate that that obviously, has happened. You know, I don't know all of what went on, and what mistakes may or may not have been made. But, you know, I haven't seen the transcripts, and I wasn't in the courtroom. And I haven't discussed this with Ray a whole lot. But it's certainly seems uncharacteristic of the Ray Garcia that I know.

**Kevin Little:** All right. Mr. Flint, thank you, sir. I appreciate your time. And what we'll do is we're going to get this transcribed, but would you be willing to verify that the statement is accurate if it indeed is accurate once it's transcribed?

**Daniel Flint:** Sure. That's fine. My wife doesn't know Ray other than, you know, just seeing him from time to time and maybe, when I talk on the phone, she'd say hi to them or something, or when we'd meet up for dinner occasionally. But she said she was also willing to say something on his behalf too in a letter. So if that's something that you think would be useful, she's certainly willing to do that. Although, you know, she has had somewhat limited time with Ray.

**Kevin Little:** Well, good. Well, you know, we'd be happy to get a statement from her at some point. I don't know if she's available now.

**Daniel Flint:** I would think she can probably do that now. Hold on one second.

**Kevin Little:** Okay.

**Kevin Little:** Please tell me your full name.

**Charman Perry-Flint:** My full name is Charman, C-H-A-R-M-A-N. Last name is Perry, P-E-R-R-Y Flint, F-L-I-N-T.

**Kevin Little:** All right. Thank you. And how do you know Mr. Garcia?

**Charman Perry-Flint:** Well, I married my husband over about 17 years ago, and I met him through my husband probably well over a decade ago.

**Kevin Little:** Did you…

**Charman Perry-Flint:** He's been over to my house for dinner. We've talked. When my husband was in a hospital with heart problem, he was there for me. You know, he's been there anytime I needed him.

**Kevin Little:** And so you feel like, you know him well then?

**Charman Perry-Flint:** I mean, I know him as well as a wife of a friend. Yes. I think what's going on with him right now is implausible. You know, just the little I know about the Federal Bureau, I think it's implausible and I think it's political.

**Kevin Little:** Do you have any work experience at the Bureau of Prisons?

**Charman Perry-Flint:** I do not.

**Kevin Little:** Okay, great. No, I just…

**Charman Perry-Flint:** Just my husband. And then the tours I've seen… I've taken multiple tours in prison. So I mean, I've seen the inside of prisons many times.

**Kevin Little:** Tell me some of the good qualities that you have observed in Mr. Garcia during the 10-years or so that you've really known him?

**Charman Perry-Flint:** Well, he's incredibly loyal. He's a fabulous father. I had dinner with him many years ago with his then girlfriend, and they seemed like a great couple. They would do family things. He's straightforward. He's honest. What when my husband was in the hospital, he called me up twice, to make sure he was okay. Ask me if I needed anything. He said he'd come within a New York minute. I only received two phone calls from people at Dan's work that week, and one was Ray and one was another man, two. Nobody else called me but Ray. And he was in a different city at the time. And I believe… no same state different city. So I think, for him, just to call out of the blue like that was pretty damn great.

**Kevin Little:** Have the charges that he's facing and the charges that he was convicted on, have those changed your opinion of him?

**Charman Perry-Flint:** Nope.

**Kevin Little:** What do you think the judge should know about Mr. Garcia, in connection with sentencing him?

**Charman Perry-Flint:** Well, first of all, if I was talking to the judge, I would say as a woman, Ray could have never committed… I don't understand exactly how this Ray charge was constructed. But I don't believe that he could ever do anything like that. You're never going to convince me he did it. He's not that kind of person. I've sat at tables with him. I've had him at my house. I've watched him. I don't let people in my house I don't believe in. And he is… It's just not plausible. And if you knew how the prison works, it's not possible. They follow around associate wardens like they're on fire. There's just no way this happened. What I do believe personally, as a woman, and as a taxpayer was happening to him, is political. It could happen to anybody, any one of us. And that's scary. I just feel very strongly that he's innocent. I don't know all the specific charges. I will be honest with you. I don't know. But what I do know, no, it's not possible. Did he make some mistakes? He probably did. But does he deserve to go to prison for them? Absolutely not.

**Kevin Little:** Do you think that if there were forms of alternative sentencing available to Ray, where he could essentially pay his debt to society without being in the conventional prison setting, do you think that that would be something that he'd be able to benefit from?

**Charman Perry-Flint:** Oh, absolutely. I think so. Absolutely. I don't think it's a… I think it's a miscarriage of justice that put him in a federal pen for his own safety as well as… mostly for his own safety. He knows that prison system inside and out. It's just not a safe place for him.

**Kevin Little:** Right. Well, ma'am, I think… I'm sorry. Go on.

**Charman Perry-Flint:** He's recited policy and different things that he knows so much about that prison system. To put him in a federal prison is just ridiculous.

**Kevin Little:** I appreciate that.

**Charman Perry-Flint:** I frankly, would like to see him vindicated myself. But, that's not my call.

**Kevin Little:** Is there any… and we're working towards that as well. But we also have to prepare for the sentencing in the event that he is being sentenced. Is there anything else that you'd like to tell the judge related to Ray and what would be an appropriate sentence for him?

**Charman Perry-Flint:** I would like her to consider all the facts. The facts that this is possibly politically motivated. I would like her to consider that he did not receive a fair trial. And how can you sentence somebody after not receiving a fair trial? We could not believe what happened with his previous attorney. And we expected my husband to be called and we never got a phone call until the day before. We were next to impossible to get him up there. I just don't think he received good representation, and how can you sentence this man to put him in prison when he did not have a fair trial? And I think alternatives are [**inaudible 00:07:01**] during the appeal process.

**Kevin Little:** Oh, ma'am, I appreciate that. Thank you so much. And what we'll do is we're…

**Charman Perry-Flint:** I'm willing to put a letter in my own writing, if you can give me a little bit of time, you know, however you want to do this. But I will go on 100% record, and back right up, I will never turn my back on him. Never.

**Kevin Little:** And I appreciate that. I think you know, this way will work out fine, because these are your very own words being sent to the court. So this will work out really well. Because this will be we're preparing a verbatim transcript.

**Charman Perry-Flint:** So, okay, well, I just wouldn't… I don't believe what happened. I don't believe he did it. And I also would like to see him vindicated obviously.

**Kevin Little:** Sure. I appreciate it, man. Thank you so much.

**Charman Perry-Flint:** Oh, you're welcome.

**Kevin Little:** Already. Bye, bye. Tell your husband I said bye as well.

**Charman Perry-Flint:** Okay, bye, bye now.

**Kevin Little:** Take care.

**Charman Perry-Flint:** Okay. I will. Thank you. Bye bye.

**Dee Pemberton:** Hello.

**Sabreen Atwal:** Hi, am I speaking to Ms. Dee Pemberton?

**Dee Pemberton:** May I ask who's calling?

**Sabreen Atwal:** This is Sabreen calling from the law offices of Kevin G. Little. Mr. Ray Garcia indicated that you could be a potential character witness.

**Dee Pemberton:** Okay, yeah.

**Sabreen Atwal:** And we were just calling to see if you had a couple of minutes to speak with me.

**Dee Pemberton:** Hold on a second. Let me turn the TV down. Hold on. I'm holding a dog but I'm trying to get her to jump up. Okay, go ahead.

**Sabreen Atwal:** Okay. So what we've been doing with the other witness calls, we've just been recording them and then getting them transcribed. Are you okay with that?

**Dee Pemberton:** Sure.

**Sabreen Atwal:** Okay. Those are going to be what we use as your witness statement.

**Dee Pemberton:** Okay. I thought you guys were doing letters.

**Sabreen Atwal:** Yeah, we weren't going to do character letters, but what is better than transcribing your own words?

**Dee Pemberton:** I've never heard listening to transcribed [crosstalk 00:01:15]…

**Sabreen Atwal:** Oh, yeah.

**Dee Pemberton:** …it sounds terrible. Sorry, I do investigations, and yeah it sounds terrible when we have to record stuff.

**Sabreen Atwal:** I'm like, am I even speaking proper English? Okay, could you please provide your full name?

**Dee Pemberton:** It's Dee, D-E-E, Anne, A-N-N-E, Pemberton, P-E-M-B-E-R-T-O-N.

**Sabreen Atwal:** And where do you currently live?

**Dee Pemberton:** Say that again, I apologize.

**Sabreen Atwal:** Where do you currently live?

**Dee Pemberton:** In Merced. Do you want the street address?

**Sabreen Atwal:** No, that's okay. And you worked at BOP, correct?

**Dee Pemberton:** I did work for the Bureau of Prisons. Yes. I am now retired.

**Sabreen Atwal:** Okay. And how long did you work for the BOP?

**Dee Pemberton:** 21 years and three months.

**Sabreen Atwal:** Okay. And are you retired now?

**Dee Pemberton:** Yes. I work part time though.

**Sabreen Atwal:** All right. And how do you know Mr. Garcia?

**Dee Pemberton:** Previously as a coworker and as a friend.

**Sabreen Atwal:** Okay and how long have you known Mr. Garcia?

**Dee Pemberton:** For 22 years, probably March… yeah, as of next month, 22 years.

**Sabreen Atwal:** Okay. And did you know him through your professional relationship? Or do you also have a personal relationship with him?

M1; Yes, I worked with him previously in the Bureau of Prisons and then me and my other half are good friends with him.

**Sabreen Atwal:** Okay. And sorry…

**Dee Pemberton:** That's okay.

**Sabreen Atwal:** In your opinion, what are Mr. Garcia's best qualities and characteristics?

**Dee Pemberton:** Now, you're putting me on the spot to try to think.

**Sabreen Atwal:** Take your time. What do you think his… maybe we can talk about his work, profession, what do you think his best qualities were in his professional life?

**Dee Pemberton:** Well, and I was just trying to think how I want to word it, so I would say trustworthy. Always willing to help somebody. I have injured dog so I'm trying to hold on to an injured dog too. I'm sorry. Can I put you on hold one second?

**Sabreen Atwal:** Yeah, that's okay.

**Dee Pemberton:** Still there?

**Sabreen Atwal:** Yes.

**Dee Pemberton:** Sorry, I wanted to put on my earpiece, so I could have better handle… so trustworthy, hardworking. What else would I say? I mean, I would trust him with my kids. I mean, I trust him with my life. I think he's honest. Let's see what else. I mean, there's lots of things. I'm just trying to think about it, but you put me on the spot.

**Sabreen Atwal:** I'm sorry.

**Dee Pemberton:** That's okay. What else did I give you?

**Sabreen Atwal:** Well, we can move on to the next question.

**Dee Pemberton:** Sure.

**Sabreen Atwal:** Okay. What are some things that you would like the judge to know?

**Dee Pemberton:** In what terms I guess

**Sabreen Atwal:** Anything else about his character and his ethics. Anything she should consider.

**Dee Pemberton:** Well, I'm like really, you want me to go into that? Well, first of all, I mean, especially coming from a professional standpoint, I mean, criminals are criminals. So for the fact that a criminal can lie in order to get a staff member in trouble, I mean, that's a big deal. So without any hard evidence, I find that very disturbing, coming from criminal background in working for the Bureau of Prisons. And now as an investigator, I find that very disturbing that somebody can just say something, and there are no proven evidence that somebody can be found guilty of something. Sorry. And so I have an issue with that, I think. Now it's like I have to have time to think about this. So and you caught me off guard calling me. So I mean, in Garcia's case, I think his 30 plus years in law enforcement, with his record of being a leader, an honest individual that has provided the agency with so many things in his career that they have used him to do in emergency situations. And, even when it comes to doing things for the agency, or the country, in the riots in DC, things like that. And I could name various issues that we went through professionally together in a prison setting that most individuals wouldn't have any ability or knowledge or even integrity to do the job he did. So I think all those things speak for themselves showing his record. And yet we're in this situation that he's in. Because I do think… like I said, I would trust him with my children. I have trusted him with my children. He's loyal. You know, he's honest. He's very intelligent in the fact that, especially with the bureau with his knowledge. So I think all those things should be taken into consideration. Integrity, things like that, does that make sense?

**Sabreen Atwal:** Yeah, that makes sense. And, in your opinion, what kind of sentence do you believe would be appropriate and fair for Mr. Garcia?

**Dee Pemberton:** None. I know that's not realistic in the fact that considering what he's been found guilty of, but found guilty of a jury that has no idea about what happens in a prison setting, without any evidence of wrongdoing to me, I mean, I realized that's not realistic. But at the same time, based on what I've seen, there's no evidence. So yeah, I don't think he deserves to have a sentence but that's my personal opinion.

**Sabreen Atwal:** Okay, and if there were alternative sentencing programs available for Mr. Garcia, do you believe he should be offered this?

**Dee Pemberton:** Yes, I do.

**Sabreen Atwal:** Okay. All right. Is there anything else you would like the court to know about Mr. Garcia?

**Dee Pemberton:** Just knowing him personally, I think that if other individuals knew him in a professional setting and in a personal setting, I don't think that they necessarily would. And given the evidence that I know it has not been presented but he wasn't… these were not actions that actually happened. So I don't know. I think those things should be considered.

**Sabreen Atwal:** All right. Thank you so much for your time, ma'am.

**Dee Pemberton:** You're welcome. Let me know if you need any additional information.

**Sabreen Atwal:** All righty. Thank you have a good rest of your day.

**Dee Pemberton:** Thank you. You too.

**Sabreen Atwal:** It is February 15ᵗʰ 2023, 2:46 p.m. My name is Sabreen Atwal, and I am the criminal paralegal on this matter. And I am speaking with Mr. Earl Stokes. And do I have your permission to record, sir?

**Earl Stokes:** Yes, ma'am.

**Sabreen Atwal:** So I believe you still work for the Bureau of Prisons or are you retired?

**Earl Stokes:** No, I still do.

**Sabreen Atwal:** Okay. And how long have you worked for the Bureau of Prisons?

**Earl Stokes:** Since 2006.

**Sabreen Atwal:** Okay. And where do you currently reside, sir?

**Earl Stokes:** I reside in Merced.

**Sabreen Atwal:** Okay. And which BOP facilities have you worked up?

**Earl Stokes:** I'm primarily assigned to USP Atwater.

**Sabreen Atwal:** Okay. And, how do you know Mr. Ray Garcia?

**Earl Stokes:** Mr. Ray Garcia was our captain, our SORT leader as the captain, and then he became an AW. And then had transferred out. So I knew him pretty much… well actually he was an EPO. I'm sorry. I might have said it wrong. He was an EPO, and then had transferred out then I believe he got to work elsewhere.

**Sabreen Atwal:** And how long have you known Mr. Garcia, for?

**Earl Stokes:** I've known him pretty much his whole stay at USP Atwater. So I've been there almost 15 years. I think he's been gone for the last… I don't know exactly how many years. But pretty much his whole stay at USP Atwater during my time of service from 2006 till whenever would have been about when I knew him from what I recall.

**Sabreen Atwal:** Okay, and, in your opinion, what do you believe are Mr. Garcia's best qualities or characteristics?

**Earl Stokes:** From what I recall, he was very professional. Very… he knew policy, in and out. Took care of his people. Was very fair with even the inmate population as well, staff. Like I said, he was my… like, when we were on those, it's like a SWAT team for the prisons. It's called SORT of Special Operations Response Team. My whole 13 years, I was on there while he was stationed at USP Atwater, he was our go-to for pretty much everything. Because he knew the ins and outs of everything and our point of contact so he knows his job very well. He's fair.

**Sabreen Atwal:** And what are some things that you would want the judge to know about Mr. Garcia?

**Earl Stokes:** Well, I mean, I don't know exactly what you're asking. I mean I…

**Sabreen Atwal:** I will rephrase it.

**Earl Stokes:** I trusted him with like… so I was involved in a hostage negotiation where we actually went in. The bureau policy, usually states that we go in with weapons, but his confidence in leadership, and everything else deescalated the situation. And we ended up going in with a full team with no weapons. And that's what we do on this team and was able to get the hostage out and the inmates were restrained, without any injury. The staff member came out without any injury. But if we would have gone with guns, like we were supposed to do, it could have get escalated pretty quick. So I think he took the totality of everything. And he's very quick thinking, with situations to know if it's a good thing or a bad thing. And ever since I've been with him, I've been involved in a lot of use of force. I was there… he was he was brought in because of his expertise. When we had an inmate escape. He knows the in and out of the institution. He knows all the points of contacts locally. He's well known. I mean, the guy has been professional, as long as I've known him. So when I heard something was going on, I know there's a bigger picture. I still have a hard time even believing any of it just because the character that I recall.

**Sabreen Atwal:** And what do you believe… well, in your opinion, what kind of sentence do you believe would be appropriate and fair for Mr. Garcia?

**Earl Stokes:** For what they're implying?

**Sabreen Atwal:** Yes.

**Earl Stokes:** I myself, I'm involved in something right now so I know how the media and social media and the news can take something that's smaller, and escalate it to a point where it's the next big talk of the city or town or whatever. And it actually makes it worse than it needs to be. I don't even know if I should be saying it. But I got caught up in something where I thought I was doing the right thing by protecting because that's what I've known since the military and as well as being in corrections. And, hopefully mine will be relinquished real soon. But anyways, with his situation, like I said, I know from being an IT specialist, I understand the camera systems. That's my job at the prisons. I know, regardless of who requests access, I control all of that. It's not the lieutenant's don't control it, it's not Control doesn't control it, it's not to AWs, it's not the warden. They can request all day long. But at the end of the day, if there's ever any changes that need to be done with camera systems, it needs to be cleared way higher than the warden to make those changes. And I do know from being an IT specialist since the military in the '90s, up until still to this day, that any actions that you do on any server-based equipment, backup servers, or standalone servers, that every movement has an event and that event will associate it to a user and a time and a date. So I had overheard, someone was saying that there was cameras in certain areas, and that he could have changed them. I didn't even get into the argument because I know that's a false statement. That's the media. And that's hearsay and gossip, trying to make something bigger than what it is. I've had wardens here, tell me, "I want this and that."

 And I'm like, "No, sir, I cannot do that. You're not an investigator. So if you want that you need to get through SIS." They're the only ones that can pull certain files. And even then it's got to all be logged. And so that's my part on the camera system, because I heard something about that. The other thing is I heard something about what was it with the phones. I know from experience, because I deal with the phones as well at the prison. I was assigned to

the cell phone sides, which I'm not in that circle no more. But I do know how cell phones work. If you leave it down, they have the capabilities to take pictures, and everything else. So when I started hearing these other accusations, unless I physically seen it, or know it, then I still claim them to be false. Because I know that we do it on the regular… or around your house. How quick, a kid picks up a phone and can take a picture on it and they don't have to log on to it. So I don't know the ins and outs of that. So I don't know how you would punish anybody for something that lets you know for a true fact, that's how it took place. So I don't know what… you'd have to like kind of tell me what you're asking asking. Those only two things that I've heard basically. Because I didn't watch the case. Because like I said, I know this guy. I see him in town, here and there. when I got caught up in my thing that I'm still fighting. He's a genuine person. He truthfully is there to help people. He's been there to protect people. And I still believe that's how I see him as. I don't see him as this person that they're trying to… this perception of do wrongdoings. Unless I was physically there I cannot say that he would do that. I just have a hard time still to this day.

**Sabreen Atwal:** Okay, so if there were alternate sentencing programs where Mr. Garcia wouldn't have to spend time in custody, do you believe he should be made available to those?

**Earl Stokes:** Yeah, I mean, here's a guy who has devoted his whole life to the Federal Bureau of Prisons to protect the community. And you have people stating that he's done wrongdoings without knowing that is 100% fact. Let's just say that there was a hiccup and he did do something stupid. I'm not saying he did. I don't think anybody should have to do time behind bars for something like that when we're letting people on the streets on the daily for way worse accusations and actually be penalized in that fashion. I believe he should get his retirements. I believe that if he did some stupid give back maybe use his abilities to give back so someone else can learn from him. The guy has a plethora of knowledge. I just don't see him being penalized. I just don't understand how that's even a possibility without knowing for sure that's what he's done.

**Sabreen Atwal:** And is there anything else you would like the court to know about Mr. Garcia before we conclude this interview?

**Earl Stokes:** The guy has always been professional and cared about the staff members and inmates as well. I know it because I've seen it for so many years with a guy.

**Sabreen Atwal:** All right, thank you so much for your time, Mr. Stokes.

**Earl Stokes:** Thank you.

**Sabreen Atwal:** Have a good rest of your day.

**Earl Stokes:** You too. Thank you. Bye, bye.

**Sabreen Atwal:** It is February 15th 2023 1:50 p.m. and my name is Sabreen Atwal the criminal paralegal in this case, and I am speaking with… can you…

**Effrain Covarrubias:** Effrain Covarrubias.

**Sabreen Atwal:** And do I have your permission to record, sir?

**Effrain Covarrubias:** Yes, you do.

**Sabreen Atwal:** Okay. All right, and first things first, where do you currently reside?

**Effrain Covarrubias:** I live with my girlfriend but do you need my mailing address?

**Sabreen Atwal:** Just like what part of California what city?

**Effrain Covarrubias:** Oh, Atwater, California.

**Sabreen Atwal:** Okay. And you still currently work for the Bureau of Prisons, correct?

**Effrain Covarrubias:** Correct.

**Sabreen Atwal:** And how long have you been working for them?

**Effrain Covarrubias:** It'll be 19 years February 22nd.

**Sabreen Atwal:** And which facilities have you worked at?

**Effrain Covarrubias:** I've been at the same one. USP Atwater.

**Sabreen Atwal:** Okay. And how do you know Mr. Garcia?

**Effrain Covarrubias:** When I first started at the jail, he was our… I think he was a deputy captain. I don't think that position exists anymore. And then he became the EPO, Emergency Preparedness Officer. And then he was our captain. I think he left and came back and he was our actual captain. Yeah. And then he went on to other jails.

**Sabreen Atwal:** And how long have you known Mr. Garcia for?

**Effrain Covarrubias:** Since 2004.

**Sabreen Atwal:** And in your opinion, what do you believe are Mr. Garcia's best qualities or characteristics?

**Effrain Covarrubias:** Like the best I describe him is that he was always fair. He was always… really, he was always fair and punctual and he always knew what he was talking about, so yeah.

**Sabreen Atwal:** And what are some things that you would like the judge to know when she's considering her sentencing?

**Effrain Covarrubias:** I mean, I think a lot more people would speak up on his behalf, if they weren't afraid of the repercussions or possible repercussions of looking out for him. Because we still work there, you know what I mean? So it's like, kind of frowned upon but I mean, I don't know. He took care of a lot of people at that jail so…

**Sabreen Atwal:** And is there anything else you could say about Mr. Garcia's character and ethics?

**Effrain Covarrubias:** I mean, he was never… as far as from what I know, like I mean we weren't "friends", per se but I mean, I don't know he always treated me with respect and he was always cool with me and he was cool with a lot of people. I mean, he was good at educating people and if something needed correcting, he was never like, a prick about it. He would just like talk to you like a human being. He didn't humiliate people. He didn't… I mean, from the rookies all the way to executive staff like he just talked to you normal. I think a lot of people took to that pretty big headed people at that jail.

**Sabreen Atwal:** And, in your opinion, what kind of sentence do you believe would be appropriate and fair for Mr. Garcia?

**Effrain Covarrubias:** Appropriate and fair. I mean, that's tough because I sat through some of the court hearing and listening to the accuser talk or I guess, "victim" talk and it was just… it was all wrong. Like, there was so many holes and I don't know. I guess, I was just disappointed being there. Like, no. Like, his attorney didn't know enough about the jail to correct what the jury was hearing. So I guess, I didn't agree with a lot of it. But a fair… I mean, you can go off for what everybody else has been getting lately, you know what I mean, with their little 17 month sentences. And, I don't know. That's a very open question, because we've had so many females in our jail, get caught, you know what I mean? And they just get a chance to resign and then they get another job somewhere else. So, the system is flawed, you know what I mean? So it just kind of angers people.

**Sabreen Atwal:** And is there anything else you would like the court to know about Mr. Garcia?

**Effrain Covarrubias:** He's a great father. I know that for a fact, because I see his kid and I'm around his son the whole time. His dad is his hero. He doesn't miss anything. He's at all the swim meets. He's at all the water polo stuff. Like he's involved with everything.

**Sabreen Atwal:** And how do you believe it would impact his son if Mr. Garcia was to be absent from his life for a while?

**Effrain Covarrubias:** Oh, that kid would be devastated. 100% devastated. That's all he talks about half time. His dad and his dad. I did this with my dad. I did that with my dad.

**Sabreen Atwal:** Well, is there anything else you would like to include before I conclude this interview?

**Effrain Covarrubias:** I just have a question. So I have another friend of mine that was willing to talk. I don't know. If you would want his number, or?

**Sabreen Atwal:** I going to put all of this stuff off the record.

**Effrain Covarrubias:** Okay.

**Sabreen Atwal:** It is 10:24 a.m. February 15th 2023. My name is Sabreen. I am the criminal paralegal working on this case. And I am speaking to Mr. Frank Alvarez. Do I have your permission to record, sir?

**Frank Alvarez:** Yes.

**Sabreen Atwal:** And can you please state your full name?

**Frank Alvarez:** Frank Alvarez.

**Sabreen Atwal:** And I believe you work for the BOP still?

**Frank Alvarez:** Yes.

**Sabreen Atwal:** And how long have you been working for them?

**Frank Alvarez:** 21 years.

**Sabreen Atwal:** And how do you know Mr. Garcia?

**Frank Alvarez:** Yes.

**Sabreen Atwal:** How do you know Mr. Ray Garcia?

**Frank Alvarez:** Through work, and he was my supervisor on and off.

**Sabreen Atwal:** And how long have you known Mr. Garcia for?

**Frank Alvarez:** 21 years?

**Sabreen Atwal:** Okay. And how long was Mr. Ray Garcia, your supervisor for?

**Frank Alvarez:** I would say probably five years the first time and then I transferred to another department. And he was no longer my supervisor. I was under somebody else.

**Sabreen Atwal:** And in your opinion, what do you believe, are Mr. Garcia's best qualities or characteristics?

**Frank Alvarez:** Very good supervisor. He led well and easy to talk to, easy to approach and really, really knows his job and understands it.

**Sabreen Atwal:** And what, if anything, do you want the judge to know about Mr. Garcia?

**Frank Alvarez:** For me, he's always been very straightforward. And he just handles business. And he's a friend of mine. You know, I don't really hang out with them. But I'm still friends with him.

**Sabreen Atwal:** And is there anything else you could say about his character and his ethics?

**Frank Alvarez:** He's got very strong ethics, as far as work goes. And, you know, I can't really think of anything negatives at all about him.

**Sabreen Atwal:** And what do you believe would be a fair and appropriate sentence for Mr. Garcia?

**Frank Alvarez:** I have no idea. I wouldn't even know how to answer that.

**Sabreen Atwal:** Okay. So if there were like alternate sentencing programs where he won't have to spend time in custody, do you believe he should be… those should be available to him?

**Frank Alvarez:** Yes.

**Sabreen Atwal:** Okay. And is there anything else you would like to add that you would like to court to about Mr. Garcia?

**Frank Alvarez:** Other than what I said, no. Like I said, we were friends. After all this ordeal, we kind of backed off from each other. But, that's not the Ray Garcia I know what they're portraying out on the media and stuff.

**Sabreen Atwal:** All right. Well, thank you so much for your time, sir.

**Frank Alvarez:** Okay.

**Sabreen Atwal:** Have a good rest of your day.

**Frank Alvarez:** Thank you. You too.

**Sabreen Atwal:** Good afternoon, Mr. Webster. My name is Sabreen. And I'm calling from the law office of Kevin G. Little. And I'm calling you because Mr. Ray Garcia indicated that you would be willing to provide a character witness statement. Would you still be willing to do that, sir?

**Jason Webster:** Sure.

**Sabreen Atwal:** Okay. And are you willing to go on the record for this?

**Jason Webster:** Yes.

**Sabreen Atwal:** Okay. Perfect. So can you please provide your full name?

**Jason Webster:** Jason Judson Webster.

**Sabreen Atwal:** All right, and where do you live?

**Jason Webster:** I live… you want the state or the actual street address?

**Sabreen Atwal:** State is fine.

**Jason Webster:** California.

**Sabreen Atwal:** Okay. And I believe you worked for the BOP, correct?

**Jason Webster:** Correct.

**Sabreen Atwal:** And how long did you work for the BOP?

**Jason Webster:** Let's see. I started in '93. I ended in 2019, right around 26 years.

**Sabreen Atwal:** And are you retired?

**Jason Webster:** Am I what?

**Sabreen Atwal:** Retired?

**Jason Webster:** Yes.

**Sabreen Atwal:** All right. And how do you know Mr. Garcia? And how long have you known him?

**Jason Webster:** Well, I've known him ever since I started. He was lieutenant back in '93 and I knew him the entire time, he was at Lompoc. And then once he went to a different institution, I never really kept in touch with people once they went to different institutions. But I knew him well at Lompoc.

**Sabreen Atwal:** Okay. And based off of working with him for so many years, in your opinion, what do you believe are Mr. Garcia's best characteristics and qualities?

**Jason Webster:** Wow, when I knew him… I came from a military background when I first started the bureau and when I first met him, he had a lot of leadership qualities. He knew exactly what he was doing. Everybody looked up to him that knew him. Because he had so much experience in doing what he was doing. And he handled all emergency situations very well. He was able to get personnel everywhere they needed a go. Because when I started… you know, I was there from '93 to '96, actually at the penitentiary, and it was horribly violent. We were fighting many times per shift. And when I was on with Ray he ran it just you know, pretty much flawlessly that whatever went down, he was always able to handle it.

**Sabreen Atwal:** Okay. And what are some things or anything that you would like the judge to know about Mr. Ray Garcia?

**Jason Webster:** Wow, I mean, aside from… he was very personable but he was also very business. So he kept business with business and everything was business at the penitentiary. He didn't let you know personal… anything take place there. So you know, if somebody needed to do something just because maybe you are closer friends, then, you were… then the other person, he didn't care. He was like, "Hey, if I need something done, you know, you're going to do it and you're going to do it." Like there was no favorites across the board. He treated everybody equally. And everybody followed everything that he told us to do because he knew what he was doing. Everything he went by the book. He was pretty much a… very much a book person. He knew policy inside and out.

**Sabreen Atwal:** Okay. And is there anything else you can say about his character?

**Jason Webster:** I mean, we didn't hang out after work together because, you know, he was a lieutenant. We were just officers. But from what I knew of him, you know, if you needed anything, if you needed to talk to him on a personal level, if you had any problems, any issues, he was always willing to talk to you, bring in, you know, in private. He was concerned about, you know, everybody on the shift. And, you know, he always made sure that he didn't treat anybody unfairly. So everybody was treated very fairly on his shift. He was a good guy. I mean, all around. I always liked him. Ever since I had known him. I liked him. And believe me working in a prison, there's a lot of people you don't like, and he was very personable. That's what I liked about him.

**Sabreen Atwal:** Okay. And, in your opinion, what do you believe is an appropriate sentence for Mr. Garcia?

**Jason Webster:** Well, I mean, in light of what I've heard and whether or not I know what is right or wrong, because I not sitting in on the jury. I haven't seen all of the evidence or anything before me. Appropriate I… wow.

**Sabreen Atwal:** If Mr. Garcia was… do you believe, if… sorry, can we just reorder this. If there were alternate sentencing programs available, do you believe Mr. Garcia should be offered one of them or be made available to one of them?

**Jason Webster:** Oh, yeah, for sure. I am more than positive. If he was found guilty, he knows he messed up and, I personally don't want to see him going through any kind of hardship over something stupid that was done definitely stupid. But, you know, like I said, I don't know all the ins and outs of the case. But I will say that he is one of the people I am sure would learn from any mistake and be like, if you put them in a lighter sense, or in a better situation, he would not go back to doing anything dumb. I am sure he would toe the line.

**Sabreen Atwal:** All righty. Is there anything else you would like to include before we conclude this interview?

**Jason Webster:** No, not unless you need anything else.

**Sabreen Atwal:** I think that was all. Thank you so much for your time, sir.

**Jason Webster:**  All right. You have a good night.

**Sabreen Atwal:** Yeah, you too.

**Jason Webster:** Bye, bye.

**Sabreen Atwal:** Bye.

Jeff Eastburn

**Kevin Little:** Sir, could you please tell me your full name?

**Jeff Eastburn:** Jeffrey Wayne Eastburn.

**Kevin Little:** And I understand that you used to work in the Federal Bureau of Prisons, is that correct?

**Jeff Eastburn:** That's correct.

**Kevin Little:** For how many years were you a federal BOP employee?

**Jeff Eastburn:** 23 and a half.

**Kevin Little:** All right. Where do you live currently?

**Jeff Eastburn:** I'm in Coquille Oregon.

**Kevin Little:** Okay. When did you retire from the Bureau of Prisons?

**Jeff Eastburn:** Last June.

**Kevin Little:** All right.

**Jeff Eastburn:** June '22.

**Kevin Little:** What was the extent of your work experience with Mr. Garcia?

**Jeff Eastburn:** He was my deputy captain at USP Atwater. He was a mentor of mine and he also conducted several of my trainings throughout my career at other institutions.

**Kevin Little:** How many years were you under Mr. Garcia's supervision at USP Atwater?

**Jeff Eastburn:** Direct supervision, there was three years.

**Kevin Little:** Okay. And then you said, even after you guys stopped working with each other directly, you still would see him and would interact with him at various trainings?

**Jeff Eastburn:** Yes.

**Kevin Little:** Okay. What's your opinion of Mr. Garcia's character and ethics as a prison official?

**Jeff Eastburn:** I have never seen anything that would put a blemish on his character throughout my time working with him. I'm not sure how to put it into words, but he's one of the few people that I completely trust in any way whether work life, home life, anything. He's outstanding human being.

**Kevin Little:** Did you also become personal friends with Mr. Garcia?

**Jeff Eastburn:** Yes, yes.

**Kevin Little:** Describe for me the extent of your friendship with him.

**Jeff Eastburn:** I never lived near him after I left Atwater. But we'd go on vacations together. I would go back to California to visit friends and would always hook up with him.

**Kevin Little:** How many times would you say the two of you vacationed together?

**Jeff Eastburn:** Maybe five.

**Kevin Little:** Okay. Did you ever get any sense from Mr. Garcia that he was this Jekyll, Hyde type of person? Somebody who…

**Jeff Eastburn:** No. No. Like I said, I've never lived near him. But he's a close enough person that I feel like know his character fairly well. It blew my mind…

**Kevin Little:** Are these allegations that you've learned about Mr. Garcia from the case? Is that… the person who's allegedly committed that conduct is that in any way resembling to the person that you knew?

**Jeff Eastburn:** No. 100% the opposite.

**Kevin Little:** What do you think that you can say from your experience with Mr. Garcia that the judge might want to know when she sentences him?

**Jeff Eastburn:** He is amazing father. Ever since he's had his son, every decision he makes has been what's best for him. I really don't know what else to say that would make the judge lean either way, besides of the family man that he is.

**Kevin Little:** If there were some forms of alternative sentencing available to Mr. Garcia, do you think he would be a good candidate for those programs?

**Jeff Eastburn:** Yes.

**Kevin Little:** Why do you say that?

**Jeff Eastburn:** Just because he is a trustworthy human being. I'm not sure what exactly you're talking about whether it's home confinement or what, but he is not a danger to anyone. So…

**Kevin Little:** Okay. Is there anything else you'd like to add before we complete our interview?

**Jeff Eastburn:** Unless there's something else you need for me, no.

**Kevin Little:** No, I appreciate your sentiments and your comments. I think those are important. But I don't have any further questions of you sir. I appreciate your time.

**Jeff Eastburn:** No problem. Have a good day.

**Kevin Little:** You too. Bye bye.

Jeff Eastburn

**Sabreen Atwal:** It is February 15th 2023 2:20 p.m. My name is Sabreen Atwal, and I am the criminal paralegal for this case, and I am speaking with Mr. Mike Mendez. And do I have your permission to record, sir?

**Mike Mendez:** Yes.

**Sabreen Atwal:** All right. And may you please provide us with your full name?

**Mike Mendez:** Michael, James Mendez.

**Sabreen Atwal:** And where do you currently reside, sir?

**Mike Mendez:** My address is 1875 Palm Canyon Drive, Las Cruces, New Mexico 88011.

**Sabreen Atwal:** And I believe you have retired from the Bureau of Prisons?

**Mike Mendez:** Yes. Retired.

**Sabreen Atwal:** Yes. And how long did you work for the BOP?

**Mike Mendez:** Just shy of 21 years, about three months shy of 21 years, so like 19 year… or 20 years and like nine months.

**Sabreen Atwal:** And what facilities did you work at?

**Mike Mendez:** I worked at United States Penitentiary, Lompoc, California. Federal Correctional Institution Sheridan Oregon, United States Penitentiary, Atwater, California and the Federal Correctional Complex at Victorville California.

**Sabreen Atwal:** And how long have you been retired, sir?

**Mike Mendez:** I retired January 31st 2014.

**Sabreen Atwal:** All right. And how do you know Mr. Garcia?

**Mike Mendez:** Ray Garcia was a lieutenant when I first started with the Bureau and then we… so I knew him for the three… let me see, for approximately four years and I worked at USP Lompoc. Again, he was one of the lieutenants there. And then we ran into each other again, to work together again in Atwater, the United States Penitentiary, Atwater, in 2000… no, I'm sorry.

**Sabreen Atwal:** That's okay.

**Mike Mendez:** Yeah, about 2000 and we worked there until I left in 2004. And still maintained contact and would occasionally see each other at training or other bureau events or training.

**Sabreen Atwal:** So how long have you known Mr. Ray Garcia?

**Mike Mendez:** Okay, so I've known race since May of 1993.

**Sabreen Atwal:** Okay. And in your opinion, what do you believe are Mr. Garcia's best characteristics and qualities?

**Mike Mendez:** His ability in talking with people, dealing with people. I mean, being able to calm down inmates that are upset and angry and possibly getting ready to do harm to another inmate or to a staff member. I've seen him be able to talk those individuals down and he's been able to do the same thing with staff. So his ability to communicate with people of every walk of life, every kind of social background as such.

**Sabreen Atwal:** And what are some things that you would like to judge to know about Mr. Garcia?

**Mike Mendez:** Again, from the first time I met Ray Garcia, he always seemed like he went out of his way to make people feel comfortable working in that type of setting that we were at, the penitentiary. And again, his ability to get people, to put their best foot forward to showing them training people on how to work in that environment and how to deal with adversity. He was again, one of lieutenants there that, you know, with a big level of responsibility. And again, his understanding of how the institution worked, the dynamics of it really helped him work with people and make them comfortable in being able to work there.

**Sabreen Atwal:** And, in your opinion, what kind of sentence do you believe would be appropriate and fair for Mr. Garcia?

**Mike Mendez:** Oh, okay. Sentencing, wow. Okay.

**Sabreen Atwal:** And I'll add on to the question.

**Mike Mendez:** He got found guilty on the charges, or I guess on some charges, anyway?

**Sabreen Atwal:** Yes.

**Mike Mendez:** Okay. Wow.

**Sabreen Atwal:** And I'll add on to the question. And if there were alternate sentencing programs available, do you believe Mr. Garcia should be made available to them?

**Mike Mendez:** I'd like to answer the last one first.

**Sabreen Atwal:** Okay.

**Mike Mendez:** Yes, I do believe if there are alternative measures available in sentencing, I think it would be good for Mr. Garcia and his family to include his son. By family, I mean, I do mean his son. And, then his brothers and sisters. I'm not even sure if his mom is still around. I think she is. I know, his dad is. But I think that would… I think that would help them also. But as far as the sentencing, I believe the minimum amount of years possible and definitely at a federal prison camp, I think would be the best thing. Again, Ray has been in this business for a very, very long time. And yeah… I mean, just because of the kind of work and the kind of different positions that he's held, I know that he's, made some enemies among the inmates just because of disciplinary measures that he's had to impose on them as such. But I would feel that the minimum amount of years or months and at the lowest level that they could find for him.

**Sabreen Atwal:** All right. Well, thank you so much for your time, sir. Is there anything else you would like to add before we end this interview?

**Mike Mendez:** Again on the dealing with people, again I spent a lot of years working with Ray, and then we socialized. When we were at Atwater together, we were both supervisors. And we socialized and just his interaction as far as dealing with staff particularly young staff, he helped train them, myself and Ray Garcia and a couple of other people were the main instructors when they first came in. And Ray was very, very good. Very into making sure that they all understood what needed to be done if they were going to work in that environment. And actually, if we needed to weed some of them out, you know, if they just weren't going to make it again, Ray had a good feel for that. And, he could tell them without embarrassing them, take them off to the side and just, "You know, you might need to go work some other place." But he was good at working with people and getting them to push their limits a little bit on interacting with inmates and doing things that they may not have been ready to take on yet.

**Sabreen Atwal:** All righty. Well, thank you so much for your time, sir. I really appreciate it.

**Mike Mendez:** Okay, thank you very much. Sorry, it took so long to get back to you.

**Sabreen Atwal:** Oh, it's totally okay. Have a good rest of your day.

**Mike Mendez:** Thank you, too.

**Sabreen Atwal:** And I was calling you because Mr. Ray Garcia indicated that you were willing to provide a character witness statement. Would you be willing to do that, sir?

**Mike Randall:** Yes.

**Sabreen Atwal:** Okay. And what we've been doing is that we've been just recording the phone calls and providing the transcripts as witness statements. Are you okay with that?

**Mike Randall:** I am.

**Sabreen Atwal:** Okay, so what is your full name?

**Mike Randall:** Hold on second.

**Sabreen Atwal:** Okay.

**Mike Randall:** I'm sorry. Okay. Can you hear me?

**Sabreen Atwal:** Yes, I can.

**Mike Randall:** Okay. My full name is Michael Louis L-O-U-I-S. Randall R-A-N-D-A-L-L.

**Sabreen Atwal:** And where do you live?

**Mike Randall:** I live in Fort Worth, Texas.

**Sabreen Atwal:** Okay. And I believe you worked for the BOP, correct?

**Mike Randall:** Yes, I'm a retired lieutenant.

**Sabreen Atwal:** Okay. And how long did you work for the BOP?

**Mike Randall:** 25 plus years.

**Sabreen Atwal:** Okay. And how long have you been retired?

**Mike Randall:** Approximately four years.

**Sabreen Atwal:** Okay. And how do you know Mr. Ray Garcia?

**Mike Randall:** Ray was one of my first lieutenants when I first entered the bureau back in 1993.

**Sabreen Atwal:** Okay, and how long have you known Mr. Garcia?

**Mike Randall:** 29 years.

**Sabreen Atwal:** And what is your opinion on Ray Garcia's character and ethics?

**Mike Randall:** Ray's character and ethic, Ray is hard working. He's always been… as far as I've known, always above reproach. He demands a lot of his people and a lot of himself.

**Sabreen Atwal:** Okay. And what would your personal opinion be of Ray?

**Mike Randall:** My personal opinion of Ray is he took a lot of chances with me and my career. He helped me in my career. He's always been a mentor. And he's also been a friend of mine. So I've always looked up to him professionally and personally.

**Sabreen Atwal:** Okay. Is there anything that you would like the judge to know?

**Mike Randall:** Ray has dedicated himself to public service. He's always put the interest of public safety above everything else. He's dedicated a large… most of his life to public service. He was my SORT lieutenant. He's taught me a lot on what it means to sacrifice for the greater good.

**Sabreen Atwal:** How long was Mr. Garcia, your lieutenant?

**Mike Randall:** He was my lieutenant the first time for approximately six years six seven. Actually hold on a second. First time I think about what was four or five years, then we worked together again, as lieutenants in a different institution FCC Victorville for approximately four additional years. And then up in USP Atwater, as EPO and I was Lieutenant up there.

**Sabreen Atwal:** Okay. Go ahead

**Mike Randall:** Hold on, I'd say probably close to 10 years.

**Sabreen Atwal:** Okay. And, in your opinion, what kind of sentence do you believe would be appropriate and fair for Mr. Garcia? And if there were alternate sentencing programs available, should Mr. Garcia be available to them?

**Mike Randall:** You are Mr. Garcia's lawyer, correct.

**Sabreen Atwal:** I am the criminal paralegal correct. So I work for Mr. Ray Garcia's attorney.

**Mike Randall:** Okay, got you. He hasn't gone to trial yet, correct?

**Sabreen Atwal:** No, he has.

**Mike Randall:** Oh, he's been…

**Sabreen Atwal:** We are getting these witness statements for his sentencing hearing.

**Mike Randall:** As far as the sentencing, I would say minimum security such as a camp, and I'd probably say no more than several years.

**Sabreen Atwal:** Okay. All right. And is there anything else you would like the court to know about Mr. Garcia?

**Mike Randall:** I trust Ray with my life. I trust Ray with the life of my family, my children. Ray has taught me a lot about what it means to serve one's country, community and teammate.

**Sabreen Atwal:** All right. Thank you so much for your time, sir.

**Mike Randall:** You're welcome.

**Sabreen Atwal:** All right.

**Mike Randall:** Have a good day.

**Sabreen Atwal:** You too.

**Mike Randall:** Bye. Bye.

**Sabreen Atwal:** Bye.

**Norma McCarthy:** E-A-N, and last name McCarty M-C-C-A-R-T-Y.

**Sabreen Atwal:** Okay. And what we have been doing is that we've been recording these phone calls and transcribing the phone calls and using those as a witness statement. Are you okay with that?

**Norma McCarthy:** Yes, I am.

**Sabreen Atwal:** Okay, perfect. And so I believe you still work for the BOP?

**Norma McCarthy:** I do. Yes.

**Sabreen Atwal:** Okay. And how long have you worked for the BOP?

**Norma McCarthy:** It will be 17 years in July.

**Sabreen Atwal:** Okay. And how do you know Mr. Ray Garcia?

**Norma McCarthy:** Well, I can't recall what exact year I met him. But it was through being on the planning section team.

**Sabreen Atwal:** Okay, so you guys were coworkers?

**Norma McCarthy:** Oh, yes.

**Sabreen Atwal:** Okay. And how long were you guys coworkers for?

**Norma McCarthy:** A few years. I'd say three maybe.

**Sabreen Atwal:** Okay. And so how long have you known Mr. Ray Garcia in total? How many years? Hello. Hello.

**Norma McCarthy:** Hello.

**Sabreen Atwal:** Hi for some reason couldn't hear your voice anymore.

**Norma McCarthy:** I know I was like trying to answer.

**Sabreen Atwal:** Okay, we left off with how many years have you known Mr. Ray Garcia?

**Norma McCarthy:** I guess about 11 or 12.

**Sabreen Atwal:** 11 or 12. Okay.

**Norma McCarthy:** Yeah.

**Sabreen Atwal:** In your opinion, what do you believe Mr. Garcia's best characteristics or qualities are?

**Norma McCarthy:** I feel like he is very much to the point, no frills, not waste a lot of time. Let's just get stuff done.

**Sabreen Atwal:** Okay. And in your personal opinion what do you believe his best qualities are?

**Norma McCarthy:** I would say he is a great leader. I do know that a lot of staff considered him a mentor and basically enjoyed working for him. Because he was a great leader. He's known to follow policy and procedures to a tee. It was basically knowing that if you worked with him or for him that you were just going be ready to work. You just had to get stuff done. And because he was a great leader, we just enjoyed working for him.

**Sabreen Atwal:** And is there anything you would like the judge to know about Mr. Grey Garcia?

**Norma McCarthy:** Let me see anything that I could think of. Just that he honestly is just a great person. I mean, despite the things that you hear out in the media, which aren't always accurate, obviously, they're going to take bits and pieces, and put it out there. I myself as a female knows what it's like working in a female camp. And it is a difficult environment to work in. I know being a female myself, I know that it's just a difficult environment to work in.

**Sabreen Atwal:** Okay. And what do you believe would be a fair and appropriate sentence for Mr. Garcia?

**Norma McCarthy:** I think what has happened thus far is appropriate. I think having his name and his integrity and his whole career basically… I mean, excuse my French, but to be shitted on, I think that everyone that pretty much knows him and knows the type of individual this man is, knows that what is happening to him within the media and within the legal system is completely uncalled for. Just the Bureau of Prisons is an environment unlike any other. It's not like working in a law office where you have your coworkers that you see on a daily basis, you have a typical day of walking in, and you're dealing with cases and things like that. Here, the inmates are manipulative. It doesn't matter whether it's female inmates or male inmates, regardless, they are extremely manipulative. To be able to maneuver and work in that environment and still get your job done as a professional it takes a great person that can lead through that. And he has done that.

**Sabreen Atwal:** All right, and if there were alternate sentencing programs provided or available to Mr. Ray Garcia, do you believe he should be offered them?

**Norma McCarthy:** Yes, I do think so. I think that I feel like he is being used as a… what's the correct term here? As to put out on a pedestal for somebody that has potentially broken policy. Not the law, but policy. And to use this as a person to make an example out of. And I think they're doing that so incorrectly and so wrong. He's already basically lost everything. His name has been dragged through the mud. His family name as well. I mean, it's kind of to be in that position, you've essentially broken this man. He has no friends. He has… even the future is… I mean, he's losing everything. He isn't a young man anymore. I mean, granted, everything that they see, to include the judge sees this person that's so stoic and sitting there, and I'm sure he comes across as you know… I don't know what's the right term here? A know-it-all or full of himself. But I guarantee you he isn't. He is not.

**Sabreen Atwal:** And is there anything else you would like to include before we conclude this character witness interview?

**Norma McCarthy:** No, I just feel like I really wish that… or hope that the judge takes everything into consideration and not just… these take all of his character witness statements into consideration and not just all the negative input that the judge or that the jurors are getting from the outside. And all the negativity because I mean, it's not always what you see. I mean, it's not always the things that you are reading and seeing and getting from these inmate statements. I don't know if I believe them 100% to be honest.

**Sabreen Atwal:** Okay. All right. Thank you so much for your time, ma'am.

**Norma McCarthy:** Okay.

**Sabreen Atwal:** All righty. Have a good rest of your day.

**Norma McCarthy:** Okay. You too. Bye, bye.

**Sabreen Atwal:** It is 9:33 a.m. February 15th 2023. My name is Sabreen, and I am the criminal paralegal on this case, and I am speaking to Ms. Patricia Lawler?

**Patricia Lawler:** Yes.

**Sabreen Atwal:** And do I have your permission to record ma'am?

**Patricia Lawler:** Yes.

**Sabreen Atwal:** Okay. All right. So what do for a living?

**Patricia Lawler:** I'm a veterinarian.

**Sabreen Atwal:** And how long have you been a vet for?

**Patricia Lawler:** Almost 14 years.

**Sabreen Atwal:** Okay. And where do you currently reside, ma'am?

**Patricia Lawler:** Roseville, California.

**Sabreen Atwal:** Okay. What are some good traits Mr. Garcia has you would like the judge to know about?

**Patricia Lawler:** He's caring, and kind, especially with family and friends. He's the kind of guy that's always there to help out if you need anything. I know I can call him and if I need my fence worked on or something like that, he's the first one to drop everything and come to help or offer support.

**Sabreen Atwal:** And we know that you and your family come from humble beginnings. How was it growing up? And how was Mr. Garcia growing up?

**Patricia Lawler:** As far as growing up, I mean, we have a loving family and typical brothers and sisters. I spent most of my time with my brother Ray and my sister Irene. Because they were closest in age, and so they took care of me when my parents were at work. And I know especially early on a lot of our gifts and Christmas presents and stuff like that came from Salvation Army or hand-me-downs, or that type of thing. But my parents did the best they could to get us special things. You know, now and then when they could make it happen.

**Sabreen Atwal:** And do you remain in close contact with Mr. Garcia?

**Patricia Lawler:** Yes.

**Sabreen Atwal:** How often would you say you see or speak with Mr. Garcia?

**Patricia Lawler:** Probably every couple of months.

**Sabreen Atwal:** And have you seen Mr. Garcia do things for the community?

**Patricia Lawler:** I don't know specifically for the community because we don't live in the same community. So I don't know what he's done within his own area.

**Sabreen Atwal:** And have you ever seen him act in a way that is inappropriate with a female?

**Patricia Lawler:** Not that I've seen.

**Sabreen Atwal:** Okay. And Mr. Garcia has been very driven throughout his life and successful in this career as a prison official. Can you speak a little bit about that?

**Patricia Lawler:** Well, he's definitely been driven and motivated as far as working diligently to promote and kind of be the example, as far as a leader and manager, that type of thing. And putting his career where he could make the most of it and do the most good.

**Sabreen Atwal:** And how would it impact your family if Mr. Garcia was to be absent from the family for a long period of time?

**Patricia Lawler:** Well, I think that it would be really difficult for my parents especially. He helps my dad move a lot of stuff. Probably, at least a couple of times a week, he's going up to my dad's house and property and helping him do stuff on his property, or taking his son up there to do work on the land, build the deck and all the stuff that my dad has been able to do, since he moved to where he lives now because my brother has been there to help him. And my brother also has my dad, come down and help him with projects and stuff around the house. So he keeps my dad busy and having something to do because he's the kind of guy that if he's left home alone for too long, he gets bored and antsy. So Ray tends to be the one that is closest to him and keeps him busy with projects and keeping his mind going and keeping him working on stuff he enjoys doing.

**Sabreen Atwal:** And how would it impact Mr. Ray Garcia's son?

**Patricia Lawler:** Well, I definitely think that Gatlin needs to have his dad around, especially given his emotional and challenges. And when he's with Ray, he's able to keep his stress and stuff under control. And Ray can keep him on track with his medications, and kind of get him to focus on the stuff that he does well. So he's less likely to get overwhelmed and have a episode. So and especially at his age, where he's coming into, you know, manhood and needs his dad, especially to show him kind of going into that stage of his life, is I just don't think that there's anybody else that can do that for him besides his dad.

**Sabreen Atwal:** So what do you believe, would be a fair sentence for Mr. Ray Garcia? And what are some things that the judge to keep in her mind when she is sentencing Mr. Garcia?

**Patricia Lawler:** Well, honestly, I can't speak to what would be a fair sentence because I was not at the trial. So I'm not privy to what was presented there. And, you know, whether or not the accusations are to be believed. And what specifically there's evidence for versus hearsay, you know, versus opinion. So, as far as sentencing is concerned, I can't really say what would be fair in that instance. But I do think that my brother has a lot of other things besides his job, that make him who he is. And he definitely has a loving family and family responsibilities that would go unfulfilled if he were incarcerated.

**Sabreen Atwal:** Okay, and is there anything else you'd like to say about your brother?

**Patricia Lawler:** No, just that I love him. And I hope that we get to see him as much as we possibly can.

**Sabreen Atwal:** All right, thank you so much for your time, ma'am.

**Patricia Lawler:** Okay. Thank you.

**Sabreen Atwal:** Thank you. Have a good rest of your day.

**Patricia Lawler:** Thanks. Bye bye.

**Sabreen Atwal:** It is February 15th 2023 1:39 p.m. Criminal paralegal Sabreen Atwal is speaking with Mr. Randy McCarty, correct?

**Randy McCarty:** McCarty, M-C-C-A-R-T-Y.

**Sabreen Atwal:** And do I have your permission to record sir.

**Randy McCarty:** Yes.

**Sabreen Atwal:** Okay. Perfect. And sorry, can you please provide your full name one more time?

**Randy McCarty:** Randy McCarty, M-C-C-A-R-T-Y.

**Sabreen Atwal:** And I believe you are retired from the BOP.

**Randy McCarty:** Yes.

**Sabreen Atwal:** And how long did you work for the Bureau of Prisons?

**Randy McCarty:** Just shy of 25 years.

**Sabreen Atwal:** 25 years. And how long have you been retired for?

**Randy McCarty:** I retired in 2019, I believe.

**Sabreen Atwal:** Okay. And which facilities did you work at?

**Randy McCarty:** I worked at USP Lompoc, USP Atwater, FCI Mendota, SMC [Gethings 00:01:25] and FCI Inglewood.

**Sabreen Atwal:** And how… sorry, go ahead.

**Randy McCarty:** Some of them more than once.

**Sabreen Atwal:** Okay. And how do you know Mr. Ray Garcia? And how long have you known him for?

**Randy McCarty:** I've known Ray 1995. He was a lieutenant at USP Atwater when I first started in the bureau.

**Sabreen Atwal:** And how do you know Mr. Ray Garcia.

**Randy McCarty:** It started out he was my lieutenant at work when I first started the Bureau as an officer. When was on SORT a year later in '96, he was a SORT leader for a while. And then he was transferred to Inglewood. And I lost contact with him for a couple of years. And then when we ended up at USP Atwater we're back together at that point. I moved over to facilities, and I mean, his wife and myself and my wife actually became close friends and spent a lot of time together. We would go over to their house often and they came over to our

house. We knew their daughter, Lauren was Ray's stepdaughter at the time and she was best friends was our daughter. So interacted with them a lot of the time during that time. At Atwater, that was probably like, five years. Then we transferred to another institution, but kept in touch, off and on over the years, and then came back kind of thing. I know when I came back to Lompoc and '13 or '14, he came there later as an AW and was actually my supervisor for a while.

**Sabreen Atwal:** And in your opinion, what do you…

**Randy McCarty:** Yeah, we've been on vacation together before. We did a cruise.

**Sabreen Atwal:** Okay. So in your opinion, what do you believe, are Mr. Garcia's best qualities or characteristics?

**Randy McCarty:** He's a really good friend. I mean, if you need help, he's always there for you. Always known him to be honest and helpful. He knows policy really well. So if you had a policy question about something going on, he could help you out with that. If he didn't know the answer, he could definitely get you pointed in the right direction to find it. Good father. Whenever his kids need him, he is always there for them. I had got cancer in 2001 and then we moved from our house out in the country to one closer to the city. And he was there. He brought the whole SORT team up to help me move. So he's a solid person. He'd drop anything… I know, a lot of times we'd have friends that would get drunk at night, and they would call Ray and he'd come pick them up so they didn't have to drive to get into trouble.

**Sabreen Atwal:** And is there anything that you would like the judge to know about Mr. Ray Garcia?

**Randy McCarty:** He's a good father, a good friend. I mean, I personally love you guys. So I mean, I would do whatever and anything for him.

**Sabreen Atwal:** And in your opinion, what kind of sentence do you believe would be appropriate and fair for Mr. Garcia?

**Randy McCarty:** I'm not necessarily sure that he's guilty. So I don't know whether he deserves to even be in prison. But if they truly believe that he's guilty, I mean, you know just something on the lighter side. Because I mean, he's spent his entire life giving to the service and the country. Protecting staff and inmates alike at that the institution. And he has trained thousands and thousands of Bureau employees. If what they say is, he did it's true, which I'm not sure, it's something that I'm sure he regrets deeply.

**Sabreen Atwal:** And is there anything else you would like to include or let the court know?

**Randy McCarty:** No, not that I can think of. Other than, he was an extremely good boss, a good supervisor. If you did something wrong, he would correct you. But not in a way that made you feel like you wanted it quit or get down on yourself. But he would help you make the improvements that you need and move on.

**Sabreen Atwal:** All right, Mr. McCarty, thank you so much for your time.

**Randy McCarty:** You're welcome. I hope it helps.

**Sabreen Atwal:** Hi, this is my name is Sabreen, and I'm calling from the law office of Kevin G. Little. We are representing Mr. Garcia. And I'm calling you today because Mr. Garcia has indicated that you're willing to provide a character witness statement. Are you still willing to do that, sir?

**Ricci Holeman:** Mr. Garcia?

**Sabreen Atwal:** Mr. Ray Garcia, yes.

**Ricci Holeman:** Oh, okay. I suppose I did. What would you need?

**Sabreen Atwal:** I would just ask you a couple questions right now. It wouldn't take that long. And what would happen is we would record this phone conversation and transcribe it and that would be used as your statement. Are you okay with that?

**Ricci Holeman:** Yes.

**Sabreen Atwal:** Okay. Perfect. So can you please provide me with your full name, please?

**Ricci Holeman:** Ricci S. Holeman.

**Sabreen Atwal:** And where do you live, Mr. Holeman?

**Ricci Holeman:** In Merced, California.

**Sabreen Atwal:** And I believe you still work for the BOP, correct?

**Ricci Holeman:** Yes.

**Sabreen Atwal:** And how long have you been working for them?

**Ricci Holeman:** 21 years, next month.

**Sabreen Atwal:** Okay. And how do you know Mr. Ray Garcia? And how long have you known Mr. Ray Garcia?

**Ricci Holeman:** He was working at Atwater when I started in March of '02. Gave me a lot of my training. He's gone in different institutions. But I have been around him pretty much almost my whole career on and off.

**Sabreen Atwal:** And in your opinion, what do you believe are Mr. Garcia's best qualities or characteristics?

**Ricci Holeman:** Firm, fair, always looking out to make you better at what you do. I mean, he's always been solid in my eyes.

**Sabreen Atwal:** And is there anything that you would like the judge to know about Mr. Garcia?

**Ricci Holeman:** He's always been one to… if you needed something to make sure you got what you needed to get you where you needed to be. He's always a mentor of sorts to get you where you needed to go in promotions and making sure you were doing the right thing.

**Sabreen Atwal:** And is there anything else you can say about his character?

**Ricci Holeman:** I mean, I would… if he called me for anything, I'd be there to help them out. I mean, he went from helping install hardwood floors at my mom's. We've been on trips. I mean, he's just a… he's a good guy that I would consider a friend even outside of work.

**Sabreen Atwal:** Okay. And what do you believe would be a fair and appropriate sentence for Mr. Garcia?

**Ricci Holeman:** That's a hard one to answer being that I've seen women get walked out for getting caught having, sexual relations with an inmate and they're still out today. It seemed like a double standard of everything when I'm hearing it. And so that's a hard one to answer, when I know there's other people that have done or gotten nothing. And it seems like, as it's going up the chain, why is it… and it's black and white for this and this, what is the difference? And why is it changing for this person? If you take titles out of it, and it says if you did this and this why are all these other ones still out and about?

**Sabreen Atwal:** All right, let me ask you this. If there was like, alternate sentencing programs, do you believe Mr. Garcia should be like be available to those programs.

**Ricci Holeman:** I would say if it has to go down to having something, I would say that would be the way to go about it.

**Sabreen Atwal:** All right… go ahead. Sorry.

**Ricci Holeman:** I mean, if they're having to do something, then alternate would be the way to go. I'd say.

**Sabreen Atwal:** Okay. And is there anything else you would like to include before we conclude this character interview?

**Ricci Holeman:** Like I said, he's always been a solid person that's helped me get through my career. So, I mean, I have no ill will towards the guy.

**Sabreen Atwal:** Okay. Thank you so much for your time, sir.

**Ricci Holeman:** Thank you.

**Sabreen Atwal:** Yeah, have a good rest of your day.

**Ricci Holeman:** You too.

**Roger Moles:** Hello.

**Sabreen Atwal:** Hi, good morning Mr. Morales. This is Sabreen calling from the law office of Kevin G. Little. And I am calling you today because Mr. Ray Garcia has indicated that you're willing to provide a character witness statement. Are you still willing to do that, sir?

**Roger Moles:** My name is not Morales. It's Moles.

**Sabreen Atwal:** Oh, Moles. Mr. Roger moles.

**Roger Moles:** Okay. Yeah, I'd kind of like to speak with him first and make sure that since I don't know actually who you are.

**Sabreen Atwal:** We are representing Mr. Ray Garcia.

**Roger Moles:** Okay. Can I call you back at this number?

**Sabreen Atwal:** Yes, that's totally okay.

**Roger Moles:** Actually, you know what…

**Sabreen Atwal:** I can give you the office number too.

**Roger Moles:** No, you know what, it's fine. Actually, I think I know where this came from. Yeah, so what would you require of me?

**Sabreen Atwal:** What we would be doing is I will be asking you a couple questions. This will probably only take like, five minutes. And what we would be doing is just recording this conversation and using the transcripts as a statement if you're okay with that.

**Roger Moles:** Yes.

**Sabreen Atwal:** Okay. So you're available right now to speak with me?

**Roger Moles:** Yeah, I got a few minutes.

**Sabreen Atwal:** Okay. All right, so could you please provide me your full name, please?

**Roger Moles:** Roger Moles.

**Sabreen Atwal:** And I believe you still work for the BOP?

**Roger Moles:** That's correct.

**Sabreen Atwal:** And how long have you been working for the BOP?

**Roger Moles:** A little over 15 years.

**Sabreen Atwal:** And how long have you known Mr. Garcia for?

**Roger Moles:** About that time. About 15 years.

**Sabreen Atwal:** And how do you know Mr. Garcia?

**Roger Moles:** From work, he was the EPO when I started working here, and then he left and came back as our captain where he was my captain.

**Sabreen Atwal:** And how long was he a captain for?

**Roger Moles:** I don't know exactly.

**Sabreen Atwal:** Okay.

**Roger Moles:** I would guess just shooting from the hip, I'd say three to four years. However long, he was the captain here at USP, Atwater.

**Sabreen Atwal:** Okay. And in your opinion, what are Mr. Garcia's best qualities or characteristics?

**Roger Moles:** Well, from what I've seen, he's extremely loyal to his staff members and his friends. He's definitely looked out for us the whole entire time he was here. And, just the all-around kind of guy that you want to work for.

**Sabreen Atwal:** Okay, and what are some things that you would like… if anything, that you would like the judge to know about Mr. Garcia?

**Roger Moles:** Yeah, you put me on the spot. Well, I just… I really appreciate, the kind of person that he was, and you know, as I stated, he really took care of his staff and had an interest in our wellbeing in work and out of work. Always made it clear that he was supportive of us, putting our families first and always wanted that for us. And there was a situation as a matter of fact, when I was dealing with some home situations, where he supported me and told me to make sure and take care of my family, and checked up on me, you know, numerous times to see how the situation was going.

**Sabreen Atwal:** And what do you believe, is a fair and appropriate sentence for Mr. Garcia?

**Roger Moles:** I believe he's extremely loyal. And how would I say… loyal and caring. I'm trying to think of a better way to word that but he cares about people. He cares about his friends and his staff members.

**Sabreen Atwal:** Okay. And do you believe Mr. Garcia if… sorry, let me reword that. Do you believe Mr. Garcia should be made available to alternate sentencing programs?

**Roger Moles:** Well, I don't know what the current sentencing program is. I guess, I don't fully understand your question. And I guess I really, probably couldn't even speak to that, because I'm not sure if that's my place.

**Sabreen Atwal:** All right. Yeah. Okay, that's totally okay. Is there anything else you would like to include before we conclude this interview?

**Roger Moles:** Well, just, I guess that would probably be it. I mean, just being on the spot like this.  I didn't have much time to think about how I would word it. But you know, I truly appreciate the things that he taught me being my superior. And, you know, he taught everybody here. I haven't heard anybody say anything negative about that guy, ever. He's just been really good for everybody here. And I guess that's about all I could say in the moment.

**Sabreen Atwal:** All righty, thank you so much.

**Roger Moles:** All right. Thank you.

**Sabreen Atwal:** Have a good rest of your day.

Victor Gonzales.

**Sabreen Atwal:** Good morning, Mr. Gonzales. This is Sabreen calling back from the law office of Kevin G. Little.

**Victor Gonzales:** Okay.

**Sabreen Atwal:** And I was calling you because Mr. Ray Garcia indicated that you were willing to provide a character witness. Would you still be willing to do that, sir?

**Victor Gonzales:** Sure.

**Sabreen Atwal:** Okay. So what we've been doing is that we've been recording the phone conversations and using the transcript of the conversation as a statement. Are you okay with that?

**Victor Gonzales:** Sure. No problem.

**Sabreen Atwal:** Okay. So what is your full name, sir?

**Victor Gonzales:** Victor Gonzales.

**Sabreen Atwal:** And I believe you worked for the BOP?

**Victor Gonzales:** Yes, for 29 years.

**Sabreen Atwal:** And how did you know Mr. Ray Garcia? And how long did you know him for?

**Victor Gonzales:** I met Ray Garcia in roughly about 2001 at USP, Atwater.

**Sabreen Atwal:** Okay, and how long did you know Mr. Ray Garcia for?

**Victor Gonzales:** Since 2001.

**Sabreen Atwal:** Okay. And, in your opinion, what do you believe Mr. Garcia's best qualities or characteristics are?

**Victor Gonzales:** To my knowledge it's always been his honesty. He's willing to do the job correctly, his professionalism.

**Sabreen Atwal:** Okay, and is there anything that you would like the judge to know about Mr. Ray Garcia?

**Victor Gonzales:** Well, like I said he was always very professional towards me, always ensuring that I follow the procedures and rules. You know, always teaching everybody to make sure that you follow the procedures that were set up by the BOP. He's always training people. Always willing to give people a helping hand.

**Sabreen Atwal:** Okay. And in your opinion, what kind of sentence do you believe would be appropriate for Mr. Ray Garcia?

**Victor Gonzales:** I'm sorry I didn't hear the question.

**Sabreen Atwal:** In your opinion, what kind of sentence do you believe would be fair and appropriate for Mr. Garcia?

**Victor Gonzales:** In the positions I've held in the BOP, I've never been put in position to make decisions like that. I can't say what's fair and what's not.

**Sabreen Atwal:** Okay. If there were alternate sentencing programs available, do you believe Mr. Ray Garcia should be available to them offered?

**Victor Gonzales:** I feel the laws are set in place for sentencing. I think they are there. There alternate procedures are available, they should be utilized.

**Sabreen Atwal:** Okay. And is there anything else you would like the court to know about Mr. Garcia?

**Victor Gonzales:** Well, like I said, he was very professional towards me. He always ensured that I was following procedures that were set out. You know, he was my deputy captain at Atwater. He was my associate warden in SCC Lompoc. Always very professional.

**Sabreen Atwal:** Okay. Thank you so much for your time. Mr. Gonzales. Have a good rest of your day.

**Victor Gonzales:** You too. Thank you. Bye now.

**Sabreen Atwal:** I am calling you because Mr. Ray Garcia has indicated that you're going to provide a character witness statement. And how we will be doing that is that we will be recording this phone interview and using what's been transcribed as the statement and are you okay with that?

**Will VanHorn:** Yes.

**Sabreen Atwal:** Okay. So could you please provide your full name please?

**Will VanHorn:** William Van Horn.

**Sabreen Atwal:** And where do you currently live?

**Will VanHorn:** I live in the state of Utah in Bluffdale.

**Sabreen Atwal:** And you previously worked at the BOP, correct?

**Will VanHorn:** Yes.

**Sabreen Atwal:** And how long did you work?

**Will VanHorn:** I started in July of 2001.

**Sabreen Atwal:** Okay, and how long have you known Mr. Garcia?

**Will VanHorn:** I'm pretty sure that he was there until 2001 or thereabouts. So, I don't know. 22 years, 21 years, 20 years probably.

**Sabreen Atwal:** And, you know, Mr. Ray Garcia through work?

**Will VanHorn:** Yes. I met him through work. However, we coached football together at the local high school for the youth for quite a few seasons together. So I guess I knew him in work and out of work.

**Sabreen Atwal:** Okay. That leads me to my next question. In your opinion, what do you believe are Mr. Garcia's best characteristics or qualities?

**Will VanHorn:** You know, I have to say that on a professional note, I really enjoyed working with him. He was good at what he did. At the time that I worked with him, he was the emergency prepared officer and he did contingency plans and just kind of real savvy in those areas. And generally, just a nice guy, and fun to work with. Outside of that, he coached youth along with me. He coached my son. I coached his and I think he has a lot of passion and compassion, you know, in work and out of work.

**Sabreen Atwal:** And is there anything you would like the judge to know?

**Will VanHorn:** Well, I don't know. Obviously, I wasn't present during whatever the indicated place and time that this was going on or alleged. But from my experience, Ray was a good father or is a good father. I think the whole circumstance is tragic. And, I feel like his son whom I've coached, would grow up without a father figure in the

home. And I can't excuse or condone inappropriate actions nor was I present during any of that allegation. But I do know that with my experience with him, it was just overall good. And, you know, he cared about the youth and he cared about the programs. And I just think the whole thing is tragic, no matter how I look at it. I hope for Ray and his family that just some compassion is shown on his side.

**Sabreen Atwal:** Okay. And what do you believe would be a fair and appropriate sentence for Mr. Garcia?

**Will VanHorn:** I don't have a comment on that. I don't know what that would be. I don't even know… I mean, I don't even live in the same state. So I don't know the particulars of what the court proceedings went on. I just know him from our time together on the football field and in the work

**Sabreen Atwal:** All right. Do you have any other comments you would like to add before we conclude this interview?

**Will VanHorn:** Just that, you know, I'm my heart goes out to not just Ray but everybody involved. I hope that whatever the best outcome is happens for him and his family and I wish him the best.

**Sabreen Atwal:** All right. Thank you so much for your time sir. My name is Sabreen once again. And if you have any questions or anything you would like to ask, you can always give me a call back at 559 or at this number?

**Will VanHorn:** Okay.

**Sabreen Atwal:** All righty.

**Will VanHorn:** Will do. Thank you.

**Sabreen Atwal:** Yeah. Have a good rest of your day.

**Will VanHorn:** Okay. Bye.

B

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY | | | 08/16/2020 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code<br>849 | 5 B. Nature of Action<br>INDIV CASH AWARD NRB | 6-A. Code | 6-B. Nature of Action |
| 5 C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | CORRECTNL INST ADMR<br>DUBM1001 SPA003 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 2,500.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF PRISONS<br>WESTERN REGION<br>FCI, DUBLIN, CA<br>WARDEN'S OFFICE<br><br>DJ FP3007412801000000   PP 18 2020 |

## EMPLOYEE DATA

| 23. Veterans Preference<br>1 = None       3 = 10-Point/Disability      5 = 10-Point/Other<br>2 = 5-Point    4 = 10-Point/Compensable   6 = 10-Point/Compensable/30%<br>1 | 24. Tenure<br>0 = None        2 = Conditional<br>1 = Permanent   3 = Indefinite<br>1 | 25. Agency Use | 26. Veterans Preference for RIF<br>YES   X   NO |
|---|---|---|---|
| 27. FEGLI<br>W0   BASIC-5X ADDITIONAL | 28. Annuitant Indicator<br>9   NOT APPLICABLE | | 29. Pay Rate Determinant<br>0   NOT APPLICABLE |
| 30. Retirement Plan<br>M   FERS AND FICA SPECIAL | 31. Service Comp. Date (Leave)<br>12/03/1989 | 32. Work Schedule<br>F   FULL TIME | 33. Part-Time Hours Per<br>Biweekly<br>Pay Period |

## POSITION DATA

| 34. Position Occupied<br>1 = Competitive Service   3 = SES General<br>2 = Excepted Service   4 = SES Career Reserved<br>1 | 35. FLSA Category<br>E = Exempt<br>N = Nonexempt<br>N | 36. Appropriation Code | 37. Bargaining Unit Status<br>8888 |
|---|---|---|---|
| 38. Duty Station Code<br>06-1054-001 | 39. Duty Station (City – County – State or Overseas Location)<br>DUBLIN ALAMEDA CA | | |

| 40. Agency Data | 41.<br>SEX: M | 42.<br>CITZ: 1 | 43.<br>VET STAT: X | 44.<br>ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

44. Remarks
INDIVIDUAL SPECIAL ACT OR SERVICE AWARD
SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

| 46. Employing Department or Agency<br>U.S. DEPARTMENT OF JUSTICE/FPS | 50. Signature/Authentication and Title of Approving Official<br>ELECTRONICALLY SIGNED BY:<br>BETTY PICENO<br>CHIEF, CONSOLIDATED PROCESSING UNIT |
|---|---|
| 47. Agency Code<br>DJ03 | 48. Personnel Office ID<br>4128 | 49. Approval Date<br>08/16/2020 |

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY J | | | 09/15/19 |

## FIRST ACTION

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 849 | INDIV CASH AWARD NRB |

| 5-C. Code | 5-D. Legal Authority |
|---|---|
| | |

| 5-E. Code | 5-F. Legal Authority |
|---|---|
| | |

## SECOND ACTION

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |

| 6-C. Code | 6-D. Legal Authority |
|---|---|
| | |

| 6-E. Code | 6-F. Legal Authority |
|---|---|
| | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | CORRECTNL INST ADMR DUBM1001  SPA803 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 1,000.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF PRISONS<br>WESTERN REGION<br>FCI, DUBLIN, CA<br>WARDEN'S OFFICE<br><br>DJ FP3007412801000000   PP 20 2019 |

## EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 - None    3 - 10-Point/Disability    5 - 10-Point/Other<br>2 - 5-Point    4 - 10-Point/Compensable    6 - 10-Point/Compensable/30%<br>1 | 0 - None    2 - Conditional<br>1 - Permanent    3 - Indefinite<br>1 | | YES     X     NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0    BASIC-5X ADDITIONAL | 9    NOT APPLICABLE | 0    NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| M    FERS AND FICA SPECIAL | 12/03/89 | F    FULL TIME | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 - Competitive Service    3 - SES General<br>2 - Excepted Service    4 - SES Career Reserved<br>1 | E    E - Exempt<br>N - Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 06-1054-001 | DUBLIN  ALAMEDA  CA |

| 40. Agency Data | 41. SEX: M | 42. CITZ: 1 | 43. VET STAT: X | 44. ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

45. Remarks
INDIVIDUAL SPECIAL ACT OR SERVICE AWARD
SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | ELECTRONICALLY SIGNED BY: LESLEY ABSHIER<br>CHIEF, CONSOLIDATED PROCESSING UNIT |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | |
|---|---|---|---|
| DJ FP | 4128 | 09/30/19 | |

5-Part 50-316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY J | | | 09/15/19 |

## FIRST ACTION

## SECOND ACTION

| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 849 | INDIV CASH AWARD NRB | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | CORRECTNL INST ADMR  DUBM1001 SPA003 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 1,000.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF PRISONS  WESTERN REGION  FCI, DUBLIN, CA  WARDEN'S OFFICE    DJ FP3007412801000000   PP 21 2019 |

## EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1  1 – None  3 – 10-Point/Disability  5 – 10-Point/Other  2 – 5-Point  4 – 10-Point/Compensable  4 – 10-Point/Compensable/30% | 1  0 – None  2 – Conditional  1 – Permanent  3 – Indefinite | | YES  X  NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0  BASIC-5X ADDITIONAL | 9  NOT APPLICABLE | 0  NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| M  FERS AND FICA SPECIAL | 12/03/89 | F  FULL TIME | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1  1 – Competitive Service  3 – SES General  2 – Excepted Service  4 – SES Career Reserved | E  E – Exempt  N – Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 06-1054-001 | DUBLIN  ALAMEDA  CA |

| 40. Agency Data | 41. SEX: M | 42. CITZ: 1 | 43. VET STAT: X | 44. ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

45. Remarks
INDIVIDUAL SPECIAL ACT OR SERVICE AWARD
SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | ELECTRONICALLY SIGNED BY: LESLEY ABSHIER  CHIEF, CONSOLIDATED PROCESSING UNIT |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| DJ FP | 4128 | 09/15/19 |

5-Part 50-316

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY J | | | 08/04/19 |

| FIRST ACTION | | | | SECOND ACTION | | | |
|---|---|---|---|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | | | 6-A. Code | 6-B. Nature of Action | | |
| 849 | INDIV CASH AWARD NRB | | | | | | |
| 5-C. Code | 5-D. Legal Authority | | | 6-C. Code | 6-D. Legal Authority | | |
| 5-E. Code | 5-F. Legal Authority | | | 6-E. Code | 6-F. Legal Authority | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | CORRECTNL INST ADMR |
| | DUBM1001 SPA003 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 1,000.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF PRISONS |
| | WESTERN REGION |
| | FCI, DUBLIN, CA |
| | WARDEN'S OFFICE |
| | |
| | DJ FP3007412801000000   PP 16 2019 |

## EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 — None   3 — 10-Point/Disability   5 — 10-Point/Other | 0 — None   1 — Conditional | | |
| 2 — 5-Point   4 — 10-Point/Compensable   6 — 10-Point/Compensable/30% | 1 — Permanent   3 — Indefinite | | YES   X   NO |
| 1 | 1 | | |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0   BASIC-5X ADDITIONAL | 9   NOT APPLICABLE | 0   NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per |
|---|---|---|---|
| M   FERS AND FICA SPECIAL | 12/03/89 | F   FULL TIME | Biweekly Pay Period |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 — Competitive Service   3 — SES General | E — Exempt | | |
| 2 — Excepted Service   4 — SES Career Reserved | N — Nonexempt | | 8888 |
| 1 | E | | |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 06-1054-001 | DUBLIN  ALAMEDA  CA |

| 40. Agency Data | 41. SEX: M | 42. CITZ: 1 | 43. VET STAT: X | 44. ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

### 45. Remarks

INDIVIDUAL SPECIAL ACT CR SERVICE AWARD
SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | ELECTRONICALLY SIGNED BY: LESLEY ABSHIER |
| | CHIEF, CONSOLIDATED PROCESSING UNIT |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | |
|---|---|---|---|
| DJ FP | 4128 | 08/04/19 | |

5-Part 50-316

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY J | | | 08/04/19 |

### FIRST ACTION

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 840 | INDIVIDUAL CASH AWARD RB |

| 5-C. Code | 5-D. Legal Authority |
|---|---|
| | |

| 5-E. Code | 5-F. Legal Authority |
|---|---|
| | |

### SECOND ACTION

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |

| 6-C. Code | 6-D. Legal Authority |
|---|---|
| | |

| 6-E. Code | 6-F. Legal Authority |
|---|---|
| | |

7. FROM: Position Title and Number

15. TO: Position Title and Number
CORRECTNL INST ADMR
DUBM1001 SPA003

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| .00 | | | .00 |

| 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| | | | | 1,500.00 | |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| .00 | | | .00 |

14. Name and Location of Position's Organization

22. Name and Location of Position's Organization
BUREAU OF PRISONS
WESTERN REGION
FCI, DUBLIN, CA
WARDEN'S OFFICE

DJ FP3007412801000000   PP 16 2019

### EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 — 1 - None  3 - 10-Point/Disability  5 - 10-Point/Other  2 - 5-Point  4 - 10-Point/Compensable  6 - 10-Point/Compensable/30% | 1 — 0 - None  2 - Conditional  1 - Permanent  3 - Indefinite | | YES □  X NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0   BASIC-5X ADDITIONAL | 9   NOT APPLICABLE | 0   NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| M   FERS AND FICA SPECIAL | 12/03/89 | F   FULL TIME | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 — 1 - Competitive Service  3 - SES General  2 - Excepted Service  4 - SES Career Reserved | E — E - Exempt  N - Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 06-1054-001 | DUBLIN  ALAMEDA  CA |

| 40. Agency Data | 41. SEX: M | 42. CITZ: 1 | 43. VET STAT: X | 44. ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

45. Remarks
CASH AWARD - PERFORMANCE BASED
SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | ELECTRONICALLY SIGNED BY: LESLEY ABSHIER |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | CHIEF, CONSOLIDATED PROCESSING UNIT |
|---|---|---|---|
| DJ FP | 4128 | 08/08/19 | |

5-Part 50-316       2 - OPF Copy - Long-Term Record - DO NOT DESTROY       Editions Prior to 7/91 Are Not Usable After 6/30/93   NSN 7540-01-333-6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY J | | | 09/16/18 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 846 | INDIVIDUAL TIME-OFF AWARD | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | CORRECTNL INST ADMR |
| | LOXM1004 SPA003 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 16.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF PRISONS |
| | WESTERN REGION |
| | FCC, LOMPOC, CA |
| | WARDEN'S OFFICE |
| | |
| | DJ FP3007182201000000   PP 21 2018 |

## EMPLOYEE DATA

| 23. Veterans Preference | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|
| 1 - None          3 - 10-Point/Disability          5 - 10-Point/Other | | 0 - None          2 - Conditional | | | |
| 1 | 2 - 5-Point   4 - 10-Point/Compensable   6 - 10-Point/Compensable-30% | 1 | 1 - Permanent   3 - Indefinite | | YES  |  X  | NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0   BASIC-5X ADDITIONAL | 9   NOT APPLICABLE | 0   NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| M   FERS AND FICA SPECIAL | 12/03/89 | F   FULL TIME | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 - Competitive Service   3 - SES-General | E - Exempt | | 8888 |
| 1 | 2 - Excepted Service   4 - SES Career Reserved | E | N - Nonexempt | | |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 06-1950-083 | LOMPOC  SANTA BARBARA  CA |

| 40. Agency Data | 41. SEX: M | 42. CITZ: 1 | 43. VET STAT: N | 44. ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

45. Remarks:
TIME-OFF AWARD HOURS SHOWN IN BLOCK 20
AWARD HOURS MUST BE USED WITHIN 1 YEAR

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | ELECTRONICALLY SIGNED BY: LESLEY ABSHIER |
| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | CHIEF, CONSOLIDATED PROCESSING UNIT |
| DJ FP | 1822 | 09/17/18 | |

5-Part 50-316                    2 - OPF Copy - Long-Term Record - DO NOT DESTROY                    Editions Prior to 7/91 Are Not Usable After 6/30/93
                                                                                                       NSN 7540-01-333-6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296–33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY J | | | 07/22/18 |

### FIRST ACTION

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 846 | INDIVIDUAL TIME-OFF AWARD |

| 5-C. Code | 5-D. Legal Authority |
|---|---|
| | |

| 5-E. Code | 5-F. Legal Authority |
|---|---|
| | |

### SECOND ACTION

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |

| 6-C. Code | 6-D. Legal Authority |
|---|---|
| | |

| 6-E. Code | 6-F. Legal Authority |
|---|---|
| | |

7. FROM: Position Title and Number

15. TO: Position Title and Number
CORRECTNL INST ADMR
LOXM1004 SPA003

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|

| 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| | | | | 40.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| | .00 | | .00 |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| | .00 | | .00 |

14. Name and Location of Position's Organization

22. Name and Location of Position's Organization
BUREAU OF PRISONS
WESTERN REGION
FCC, LOMPOC, CA
WARDEN'S OFFICE

DJ FP3007182201000000   PP 15 2018

### EMPLOYEE DATA

| 23. Veterans Preference | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF | | |
|---|---|---|---|---|---|---|---|
| 1 | 1 – None  3 – 10–Point/Disability  5 – 10–Point/Other<br>2 – 5 Point  4 – 10–Point/Compensable  6 – 10–Point/Compensable/30% | 1 | 0 – None  2 – Conditional<br>1 – Permanent  3 – Indefinite | | YES | X | NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0   BASIC-5X ADDITIONAL | 9   NOT APPLICABLE | 0   NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part–Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| M   FERS AND FICA SPECIAL | 12/03/89 | F   FULL TIME | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1   1 – Competitive Service  3 – SES General<br>2 – Excepted Service  4 – SES Career Reserved | E   E – Exempt<br>N – Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 06-1950-083 | LOMPOC  SANTA BARBARA  CA |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | SEX: M | CITZ: 1 | VET STAT: N | ED LV:07 YR:00 INST PRG:000000 |

45. Remarks

AWARD HOURS MUST BE USED WITHIN 1 YEAR

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | ELECTRONICALLY SIGNED BY: LESLEY ABSHIER |
| | CHIEF, CONSOLIDATED PROCESSING UNIT |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| DJ FP | 1822 | 07/22/18 |

5–Part 50–316

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540–01–333–6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296–33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY J | ████████ | | 07/08/18 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5 A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 846 | INDIVIDUAL TIME-OFF AWARD | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | CORRECTNL INST ADMR |
| | LOXM1004 SPA003 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19.Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 16.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF PRISONS |
| | WESTERN REGION |
| | FCC, LOMPOC, CA |
| | WARDEN'S OFFICE |
| | |
| | DJ FP3007182201000000   PP 14 2018 |

## EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 — None    3 — 10-Point/Disability    5 — 10-Point/Other | 0 — None    2 — Conditional | | YES  X   NO |
| 1   2 — 5-Point    4 — 10-Point/Compensable    6 — 10-Point/Compensable/30% | 1   1 — Permanent    3 — Indefinite | | |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0   BASIC-5X ADDITIONAL | 9   NOT APPLICABLE | 0   NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| M   FERS AND FICA SPECIAL | 12/03/89 | F   FULL TIME | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1   1 — Competitive Service   3 — SES General | E   E – Exempt   N – Nonexempt | | 8888 |
| 2 — Excepted Service   4 — SES Career Reserved | | | |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 06-1950-083 | LOMPOC  SANTA BARBARA  CA |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | SEX: M | CITZ: 1 | VET STAT: N | ED LV:07 YR:00 INST PRG:000000 |

45. Remarks
TIME-OFF AWARD HOURS SHOWN IN BLOCK 20
AWARD HOURS MUST BE USED WITHIN 1 YEAR

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | ELECTRONICALLY SIGNED BY: LESLEY ABSHIER |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | CHIEF, CONSOLIDATED PROCESSING UNIT |
|---|---|---|---|
| DJ FP | 1822 | 07/08/18 | |

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY J | | | 06/24/18 |

### FIRST ACTION

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 846 | INDIVIDUAL TIME-OFF AWARD |

| 5-C. Code | 5-D. Legal Authority |
|---|---|

| 5-E. Code | 5-F. Legal Authority |
|---|---|

### SECOND ACTION

| 6-A. Code | 6-B. Nature of Action |
|---|---|

| 6-C. Code | 6-D. Legal Authority |
|---|---|

| 6-E. Code | 6-F. Legal Authority |
|---|---|

7. FROM: Position Title and Number

15. TO: Position Title and Number
CORRECTNL INST ADMR
LOXM1004 SPA003

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|

| 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| | | | | 16.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| | .00 | | .00 |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| | .00 | | .00 |

14. Name and Location of Position's Organization

22. Name and Location of Position's Organization
BUREAU OF PRISONS
WESTERN REGION
FCC, LOMPOC, CA
WARDEN'S OFFICE

DJ FP3007182201000000   PP 13 2018

### EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 — 1 = None  3 = 10-Point/Disabilty  5 = 10-Point/Other  2 = 5-Point  4 = 10-Point/Compensable  6 = 10-Point/Compensable/30% | 1 — 0 = None  2 = Conditional  1 = Permanent  3 = Indefinite | | YES  X  NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0   BASIC-5X ADDITIONAL | 9   NOT APPLICABLE | 0   NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| M   FERS AND FICA SPECIAL | 12/03/89 | F   FULL TIME | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 — 1 = Competitive Service  3 = SES General  2 = Excepted Service  4 = SES Career Reserved | E — E = Exempt  N = Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 06-1950-083 | LOMPOC  SANTA BARBARA  CA |

| 40. Agency Data | 41. SEX: M | 42. CITZ: 1 | 43. VET STAT: N | 44. ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

45. Remarks:
TIME-OFF AWARD HOURS SHOWN IN BLOCK 20
AWARD HOURS MUST BE USED WITHIN 1 YEAR

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | ELECTRONICALLY SIGNED BY: LESLEY ABSHIER  CHIEF, CONSOLIDATED PROCESSING UNIT |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| DJ FP | 1822 | 06/25/18 |

5-Part 50-316

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY J | | | 10/01/17 |

### FIRST ACTION

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 846 | INDIVIDUAL TIME-OFF AWARD |

| 5-C. Code | 5-D. Legal Authority |
|---|---|
| | |

| 5-E. Code | 5-F. Legal Authority |
|---|---|
| | |

### SECOND ACTION

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |

| 6-C. Code | 6-D. Legal Authority |
|---|---|
| | |

| 6-E. Code | 6-F. Legal Authority |
|---|---|
| | |

**7. FROM: Position Title and Number**

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| | .00 | | .00 |

**14. Name and Location of Position's Organization**

**15. TO: Position Title and Number**
CORRECTNL INST ADMR
LOXM1004 SPA003

| 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| | | | | 8.00 | |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| | .00 | | .00 |

**22. Name and Location of Position's Organization**
BUREAU OF PRISONS
WESTERN REGION
FCC, LOMPOC, CA
WARDEN'S OFFICE

DJ FP3007182201000000   PP 20 2017

### EMPLOYEE DATA

| 23. Veterans Preference | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|
| 1 | 1 – None   3 – 10-Point/Disability   5 – 10-Point/Other<br>2 – 5-Point   4 – 10-Point/Compensable   6 – 10-Point/Compensable/30% | 1 | 0 – None   2 – Conditional<br>1 – Permanent   3 – Indefinite | | YES   X  NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0   BASIC-5X ADDITIONAL | 9   NOT APPLICABLE | 0   NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| M   FERS AND FICA SPECIAL | 12/03/89 | F   FULL TIME | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1   1 – Competitive Service   3 – SES General<br>2 – Excepted Service   4 – SES Career Reserved | E   E – Exempt<br>N – Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 06-1950-083 | LOMPOC  SANTA BARBARA  CA |

| 40. Agency Data | 41.<br>SEX: M | 42.<br>CITZ: 1 | 43.<br>VET STAT: N | 44.<br>ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

**45. Remarks**
TIME-OFF AWARD HOURS SHOWN IN BLOCK 20
AWARD HOURS MUST BE USED WITHIN 1 YEAR

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | ELECTRONICALLY SIGNED BY: JAMIE BRINKMAN |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | SUPVY HUMAN RESOURCES SPECLST |
|---|---|---|---|
| DJ FP | 1822 | 10/01/17 | |

5-Part 50- 316

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296–33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY J | | | 09/17/17 |

### FIRST ACTION

| 5–A. Code | 5–B. Nature of Action |
|---|---|
| 846 | INDIVIDUAL TIME-OFF AWARD |
| 5–C. Code | 5–D. Legal Authority |
| 5–E. Code | 5–F. Legal Authority |

### SECOND ACTION

| 6–A. Code | 6–B. Nature of Action |
|---|---|
| 6–C. Code | 6–D. Legal Authority |
| 6–E. Code | 6–F. Legal Authority |

7. FROM: Position Title and Number

15. TO: Position Title and Number
CORRECTNL INST ADMR
LOXM1004 SPA003

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| | .00 | | .00 |

| 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| | | | | 16.00 | |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| | .00 | | .00 |

14. Name and Location of Position's Organization

22. Name and Location of Position's Organization
BUREAU OF PRISONS
WESTERN REGION
FCC, LOMPOC, CA
WARDEN'S OFFICE

DJ FP3007182201000000   PP 19 2017

### EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 — 1 - None  3 - 10-Point/Disabilty  5 - 10-Point/Other  2 - 5-Point  4 - 10-Point/Compensable  6 - 10-Point/Compensable/30% | 1 — 0 - None  2 - Conditional  1 - Permanent  3 - Indefinite | | YES X   NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0   BASIC-5X ADDITIONAL | 9   NOT APPLICABLE | 0   NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| M   FERS AND FICA SPECIAL | 12/03/89 | F   FULL TIME | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 — 1 = Competitive Service  3 - SES General  2 = Excepted Service  4 - SES Career Reserved | E — E - Exempt  N - Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 06-1950-083 | LOMPOC  SANTA BARBARA  CA |

| 40. Agency Data | 41. SEX: M | 42. CITZ: 1 | 43. VET STAT: N | 44. ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

45. Remarks
TIME-OFF AWARD HOURS SHOWN IN BLOCK 20
AWARD HOURS MUST BE USED WITHIN 1 YEAR

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | ELECTRONICALLY SIGNED BY: JAMIE BRINKMAN |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | SUPVY HUMAN RESOURCES SPECLST |
|---|---|---|---|
| DJ FP | 1822 | 09/18/17 | |

5–Part 50–316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|
| GARCIA, RAY J | | | | 07/23/17 |

### FIRST ACTION

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 849 | INDIV CASH AWARD NRB |

| 5-C. Code | 5-D. Legal Authority |
|---|---|
| | |

| 5-E. Code | 5-F. Legal Authority |
|---|---|
| | |

### SECOND ACTION

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |

| 6-C. Code | 6-D. Legal Authority |
| 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number |
|---|
| |

| 15. TO: Position Title and Number |
|---|
| CORRECTNL INST ADMR<br>LOXM1004 SPA003 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| | .00 | | .00 |

| 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| | | | | 1,000.00 | |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| | .00 | | .00 |

| 14. Name and Location of Position's Organization |
|---|
| |

| 22. Name and Location of Position's Organization |
|---|
| BUREAU OF PRISONS<br>WESTERN REGION<br>FCC, LOMPOC, CA<br>WARDEN'S OFFICE<br><br>DJ FP3007182201000000   PP 15 2017 |

### EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 - None   3 - 10-Point/Disability   5 - 10-Point/Other<br>2 - 5-Point   4 - 10-Point/Compensable   6 - 10-Point/Compensable/30% | 0 - None   2 - Conditional<br>1 - Permanent   3 - Indefinite | | YES [X] NO |
| 1 | 1 | | |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0 BASIC-5X ADDITIONAL | 9   NOT APPLICABLE | 0   NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| M   FERS AND FICA SPECIAL | 12/03/89 | F   FULL TIME | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 - Competitive Service   3 - SES General<br>2 - Excepted Service   4 - SES Career Reserved | E - Exempt<br>N - Nonexempt | | 8888 |
| 1 | E | | |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 06-1950-083 | LOMPOC  SANTA BARBARA  CA |

| 40. Agency Data | 41. SEX: M | 42. CITZ: 1 | 43. VET STAT: N | 44. ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

45. Remarks
INDIVIDUAL SPECIAL ACT OR SERVICE AWARD
SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | ELECTRONICALLY SIGNED BY: JAMIE BRINKMAN<br>SUPVY HUMAN RESOURCES SPECLST |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| DJ FP | 1822 | 07/23/17 |

5-Part 50-316

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY J | | | 07/09/17 |

| FIRST ACTION | SECOND ACTION |
|---|---|

| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 840 | INDIVIDUAL CASH AWARD RB | | |

| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
|---|---|---|---|
| | | | |

| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
|---|---|---|---|
| | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | CORRECTNL INST ADMR<br>1.OXM1004 SPA003 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 1,500.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | .00 | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF PRISONS<br>WESTERN REGION<br>FCC, LOMPOC, CA<br>WARDEN'S OFFICE<br><br>DJ FP3007182201000000   PP 14 2017 |

### EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1   1 – None   3 – 10-Point/Disability   5 – 10-Point/Other<br>2 – 5-Point   4 – 10 Point/Compensable   6 – 10-Point/Compensable/30% | 1   0 – None   2 – Conditional<br>1 – Permanent   3 – Indefinite | | YES   X   NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0   BASIC-5X ADDITIONAL | 9   NOT APPLICABLE | 0   NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| M   FERS AND FICA SPECIAL | 12/03/89 | F   FULL TIME | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1   1 – Competitive Service   3 – SES General<br>2 – Excepted Service   4 – SES Career Reserved | E   E – Exempt<br>N – Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 06-1950-083 | LOMPOC  SANTA BARBARA  CA |

| 40. Agency Data | 41. SEX: M | 42. CITZ: 1 | 43. VET STAT: N | 44. ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

**45. Remarks**
CASH AWARD - PERFORMANCE BASED
SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | ELECTRONICALLY SIGNED BY: JAMIE BRINKMAN<br>SUPVY HUMAN RESOURCES SPECLST |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| DJ FP | 1822 | 07/10/17 |

5-Part 50-316

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296–33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY J | | | 07/10/16 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5–A. Code 849 | 5–B. Nature of Action INDIV CASH AWARD NRB | 6–A. Code | 6–B. Nature of Action |
| 5–C. Code | 5–D. Legal Authority | 6–C. Code | 6–D. Legal Authority |
| 5–E. Code | 5–F. Legal Authority | 6–E. Code | 6–F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number SUPVY CORRECTNL OFFCR ATWE1001 SPA013 |
|---|---|

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 1,500.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization BUREAU OF PRISONS WESTERN REGION USP, ATWATER, CA CORRECTIONAL SERVICES |
|---|---|
| | DJ FP3007168202000000   PP 14 2016 |

### EMPLOYEE DATA

| 23. Veterans Preference | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|
| 1 | 1 – None   3 – 10-Point/Disability   5 – 10-Point/Other 2 – 5-Point   4 – 10-Point/Compensable   6 – 10-Point/Compensable/30% | 1 | 0 – None   2 – Conditional 1 – Permanent   3 – Indefinite | | YES    X   NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0   BASIC-5X ADDITIONAL | 9   NOT APPLICABLE | 0   NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| M   FERS AND FICA SPECIAL | 12/03/89 | F   FULL TIME | |

### POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1   1 – Competitive Service   3 – SES General 2 – Excepted Service   4 – SES Career Reserved | E   E – Exempt N – Nonexempt | | 8888 |

| 38. Duty Station Code 06-0190-047 | 39. Duty Station (City – County – State or Overseas Location) ATWATER   MERCED  CA |
|---|---|

| 40. Agency Data | 41. SEX: M | 42. CITZ: 1 | 43. VET STAT: N | 44. ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

45. Remarks
INDIVIDUAL SPECIAL ACT OR SERVICE AWARD
SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

| 46. Employing Department or Agency U.S. DEPARTMENT OF JUSTICE/FPS | 50. Signature/Authentication and Title of Approving Official ELECTRONICALLY SIGNED BY: JAMIE BRINKMAN SUPVY HUMAN RESOURCES SPECLST |
|---|---|

| 47. Agency Code DJ FP | 48. Personnel Office ID 1082 | 49. Approval Date 07/10/16 | |
|---|---|---|---|

5–Part 50–316

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296–33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY J | | | 05/15/16 |

## FIRST ACTION

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 846 | INDIVIDUAL TIME-OFF AWARD |

| 5-C. Code | 5-D. Legal Authority |
|---|---|
| | |

| 5-E. Code | 5-F. Legal Authority |
|---|---|
| | |

## SECOND ACTION

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |

| 6-C. Code | 6-D. Legal Authority |
|---|---|
| | |

| 6-E. Code | 6-F. Legal Authority |
|---|---|
| | |

**7. FROM: Position Title and Number**

**15. TO: Position Title and Number**
SUPVY CORRECTNL OFFCR
ATWE1001 SPA013

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| | | | | | |

| 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| | | | | 4.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| | .00 | | .00 |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| | .00 | | .00 |

**14. Name and Location of Position's Organization**

**22. Name and Location of Position's Organization**
BUREAU OF PRISONS
WESTERN REGION
USP, ATWATER, CA
CORRECTIONAL SERVICES

DJ FP3007108202000000  PP 10 2016

## EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 | 1 | | YES  NO X |
| 1 – None   3 – 10-Point/Disability   5 – 10-Point/Other | 0 – None   2 – Conditional | | |
| 2 – 5-Point   4 – 10-Point/Compensable   6 – 10-Point/Compensable/30% | 1 – Permanent   3 – Indefinite | | |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0  BASIC-5X ADDITIONAL | 9  NOT APPLICABLE | 0  NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| M  FERS AND FICA SPECIAL | 12/03/89 | F  FULL TIME | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 | E | | 8888 |
| 1 – Competitive Service   3 – SES General | E – Exempt | | |
| 2 – Excepted Service   4 – SES Career Reserved | N – Nonexempt | | |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 06-0190-047 | ATWATER  MERCED  CA |

| 40. Agency Data | 41. SEX: M | 42. CITZ: 1 | 43. VET STAT: N | 44. ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

**45. Remarks**
TIME-OFF AWARD HOURS SHOWN IN BLOCK 20
AWARD HOURS MUST BE USED WITHIN 1 YEAR

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | ELECTRONICALLY SIGNED BY: JAMIE BRINKMAN |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | SUPVY HUMAN RESOURCES SPECLST |
|---|---|---|---|
| DJ FP | 1082 | 05/16/16 | |

5-Part 50–316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296–33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|
| GARCIA, RAY J | | | | 05/01/16 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5–A. Code<br>846 | 5 B. Nature of Action<br>INDIVIDUAL TIME-OFF AWARD | 6–A. Code | 6–B. Nature of Action |
| 5–C. Code | 5 D. Legal Authority | 6–C. Code | 6–D. Legal Authority |
| 5–E. Code | 5–F. Legal Authority | 6–E. Code | 6–F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number<br>SUPVY CORRECTNL OFFCR<br>ATWE1001 SPA013 |
|---|---|

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 8.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization<br>BUREAU OF PRISONS<br>WESTERN REGION<br>USP, ATWATER, CA<br>CORRECTIONAL SERVICES |
|---|---|
| | DJ FP3007108202000000   PP 09 2016 |

## EMPLOYEE DATA

| 23. Veterans Preference<br>1 | 1 – None   3 – 10-Point/Disability   5 – 10-Point/Other<br>2 – 5-Point   4 – 10-Point/Compensable   6 – 10-Point/Compensable/30% | 24. Tenure<br>1 | 0 – None   2 – Conditional<br>1 – Permanent   3 – Indefinite | 25. Agency Use | 26. Veterans Preference for RIF<br>YES  X  NO |
|---|---|---|---|---|---|
| 27. FEGLI<br>W0  BASIC-5X ADDITIONAL | | 28. Annuitant Indicator<br>9  NOT APPLICABLE | | | 29. Pay Rate Determinant<br>0  NOT APPLICABLE |
| 30. Retirement Plan<br>M  FERS AND FICA SPECIAL | | 31. Service Comp. Date (Leave)<br>12/03/89 | 32. Work Schedule<br>F  FULL TIME | | 33. Part–Time Hours Per<br>Biweekly<br>Pay Period |

## POSITION DATA

| 34. Position Occupied<br>1 | 1 – Competitive Service   3 – SES General<br>2 – Excepted Service   4 – SES Career Reserved | 35. FLSA Category<br>E  E – Exempt<br>N – Nonexempt | 36. Appropriation Code | 37. Bargaining Unit Status<br>8888 |
|---|---|---|---|---|
| 38. Duty Station Code<br>06-0190-047 | | 39. Duty Station (City – County – State or Overseas Location)<br>ATWATER MERCED  CA | | |

| 40. Agency Data | 41.<br>SEX: M | 42.<br>CITZ: 1 | 43.<br>VET STAT: N | 44.<br>ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

| 45. Remarks |
|---|
| TIME-OFF AWARD HOURS SHOWN IN BLOCK 20<br>AWARD HOURS MUST BE USED WITHIN 1 YEAR |

| 46. Employing Department or Agency<br>U.S. DEPARTMENT OF JUSTICE/FPS | 50. Signature/Authentication and Title of Approving Official<br>ELECTRONICALLY SIGNED BY: JAMIE BRINKMAN<br>SUPVY HUMAN RESOURCES SPECLST |
|---|---|
| 47. Agency Code<br>DJ FP | 48. Personnel Office ID<br>1082 | 49. Approval Date<br>05/02/16 | |

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|
| GARCIA, RAY J | | | | 05/01/16 |

| **FIRST ACTION** | | **SECOND ACTION** | |
|---|---|---|---|
| 5-A. Code **849** | 5-B. Nature of Action **INDIV CASH AWARD NRB** | 6-A. Code | 6-B. Nature of Action |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | SUPVY CORRECTNL OFFCR<br>ATWE1001 SPA013 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 1,000.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF PRISONS<br>WESTERN REGION<br>USP, ATWATER, CA<br>CORRECTIONAL SERVICES<br><br>DJ FP3007108202000000   PP 09 2016 |

## EMPLOYEE DATA

| 23. Veterans Preference | | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|---|
| **1** | 1 - None<br>2 - 5-Point | 3 - 10-Point/Disability<br>4 - 10-Point/Compensable | 5 - 10-Point/Other<br>6 - 10-Point/Compensable/30% | **1** | 0 - None<br>1 - Permanent | 2 - Conditional<br>3 - Indefinite | | YES | X | NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| **W0**   BASIC-5X ADDITIONAL | **9**   NOT APPLICABLE | **0**   NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| **M**   FERS AND FICA SPECIAL | 12/03/89 | **F**   FULL TIME | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| **1**   1 - Competitive Service   3 - SES General<br>2 - Excepted Service   4 - SES Career Reserved | **E**   E - Exempt<br>N - Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 06-0190-047 | ATWATER  MERCED  CA |

| 40. Agency Data | 41. SEX: M | 42. CITZ: 1 | 43. VET STAT: N | 44. ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

**45. Remarks**
INDIVIDUAL SPECIAL ACT OR SERVICE AWARD
SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | ELECTRONICALLY SIGNED BY: JAMIE BRINKMAN<br>SUPVY HUMAN RESOURCES SPECLST |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | |
|---|---|---|---|
| DJ FP | 1082 | 05/04/16 | |

5-Part 50-316

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

## NOMINATION FOR INCENTIVE AWARD

**DEPARTMENT OF JUSTICE**                                   **FEDERAL BUREAU OF PRISONS**

| It is the policy of the Department to ensure that consideration for awards is made without regard to race, color, national origin, religion, sex, age, marital or parental status, disability or other non-merit factors. NOTE: For group awards, attach a list of members. Show data in items 2-8, and award amount for each payee. | CASE NO. (Personnel Use Only) 16WkRo25 |
|---|---|
| 1. NAME OF EMPLOYEE *(Last, first, middle initial)*<br><br>Garcia, Ray | 2. SOCIAL SECURITY NUMBER |

| 3. POSITION TITLE<br>Captain | 4. PAY PLAN-SERIES/GRADE/STEP<br>GS- 13 /07 | 5. DEPARTMENT<br>Correctional Services |
|---|---|---|

| 6. PERIOD COVERED FOR AWARD | From: Jul 1, 2015 | To: Sep 30, 2015 |
|---|---|---|

7. CITATION: Be specific and concise.   Use the space provided below.  However, if additional space is needed, please attach justification to the nomination form.
Ray Garcia is being presented with a Letter Of Commendation as a result of your outstanding performance while providing Tactical Training at Camp San Luis Obispo during the Western Regional Crisis Management Training during the week of August 31 through September 4, 2015.

### COMPLETE THE APPROPRIATE AWARDS SECTION

**8.  EXTRA EFFORT AWARDS -  TYPE OF RECOGNITION RECOMMENDED** *(Check one)*

◌ Special Act          ◌ Time Off Award          ◌ Suggestion Award          ◉ Other(Specify)
                                                                                              LOC

$ |                   Hrs. |                   $ |                   $ |

**9.  PERFORMANCE AWARDS -  TYPE OF RECOGNITION RECOMMENDED** *(Check one)*

◌ Sustained Superior Performance          ◌ Qualitiy Step Increase

$ |

### RECOMMENDATION AND CONCURRENCE

| 10. RECOMMENDING INDIVIDUAL *(Signature)* | DATE<br>10/21/15 |
|---|---|
| 11. SUPERVISOR *(Signature)* | DATE<br>10/21/15 |

### HUMAN RESOURCE DEPARTMENT USE ONLY

12. LIST AWARDS OR QSI'S IN THE PAST 52 WEEKS *(Specify type of award, amount received, and effective date.):*
TOA  16 hrs  9/20/15  TOA  16 hrs  5/17/15  SA  $200 5/17/15

| DATE OF LAST PROMOTION<br>12/02/12 | DATE OF LAST REGULAR PAY INCREASE<br>11/30/14 |
|---|---|
| 13. HRS(Signature) | 14. EFFECTIVE DATE<br>11/1/15 | PAY PERIOD 22 |

| I certify that the proposed action is in compliance with statutory and regulatory requirements. | Human Resource Manager(Signature) | DATE<br>11/6/15 |
|---|---|---|

### APPROVING OFFICIAL USE ONLY

| 15. Dep. Reg. Dir  *(Signature)* | APPROVAL      ◌<br>DISAPPROVAL ◌ | DATE<br>Amount: $ |
|---|---|---|
| 16. REGIONAL DIRECTOR  *(Signature)*<br>*(Director if over $3,000.00)* | APPROVAL      ◉<br>DISAPPROVAL ◌ | DATE 11/9/15<br>Amount: $ COC |



**U. S. Department of Justice**

Federal Bureau of Prisons

*Western Regional Office*

---

*Office of the Regional Director*                    *Stockton, California 95219*

October 9, 2015

Ray Garcia
Captain
USP Atwater
P.O. Box 019001
Atwater, CA 95301

Dear Ray,

   This Letter of Commendation is being presented to you as a result of your outstanding performance while providing Tactical Training at Camp San Luis Obispo during the Western Regional Crisis Management Training during the week of August 31 through September 4, 2015.

   You were instrumental in providing Tactical Training to the Special Operation Response and Disturbance Control Teams in the Western Region.  Your efforts resulted in teams receiving advanced training in the latest tactics the Bureau offers.  Due to your dedication, teams in the Western Region remain some of the best in the tactical arena.  Your expertise, thoroughness and teamwork attitude in training Special Teams is greatly appreciated and worthy of recognition.

   Thank you for your Leadership, Integrity, and Innovation. Many wishes for continued success throughout your career with the Federal Bureau of Prisons.

                              Sincerely,

                              Juan D. Castillo
                              Regional Director

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|
| GARCIA, RAY J | | | | 09/20/15 |

| **FIRST ACTION** | | **SECOND ACTION** | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 846 | INDIVIDUAL TIME-OFF AWARD | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | SUPVY CORRECTNL OFFCR |
| | ATWE1001 SPA013 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 16.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF PRISONS |
| | WESTERN REGION |
| | USP, ATWATER, CA |
| | CORRECTIONAL SERVICES |
| | |
| | DJ FP3007108202000000   PP 19 2015 |

## EMPLOYEE DATA

| 23. Veterans Preference | | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|
| 1 | 1 - None    3 - 10-Point/Disability    5 - 10-Point/Other<br>2 - 5-Point    4 - 10-Point/Compensable    6 - 10-Point/Compensable/30% | 1 | 0 - None    2 - Conditional<br>1 - Permanent    3 - Indefinite | YES | X | NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0    BASIC-5X ADDITIONAL | 9    NOT APPLICABLE | 0    NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| M    FERS AND FICA SPECIAL | 12/03/89 | F    FULL TIME | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1    1 - Competitive Service    3 - SES General<br>2 - Excepted Service    4 - SES Career Reserved | E    E - Exempt<br>N - Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 06-0190-047 | ATWATER  MERCED  CA |

| 40. Agency Data | 41.<br>SEX: M | 42.<br>CITZ: 1 | 43.<br>VET STAT: N | 44.<br>ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

45. Remarks
TIME-OFF AWARD HOURS SHOWN IN BLOCK 20
AWARD HOURS MUST BE USED WITHIN 1 YEAR

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | E/S BY: JAMIE BRINKMAN |
| | SUPVY HUMAN RESOURCES SPECLST |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | |
|---|---|---|---|
| DJ FP | 1082 | 09/21/15 | |

5-Part 50-316

2 - OPF Copy - Long-Term Record - DO NOT DESTROY

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY J | | | 05/17/15 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code  846 | 5-B. Nature of Action  INDIVIDUAL TIME-OFF AWARD | 6-A. Code | 6-B. Nature of Action |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number  SUPVY CORRECTNL OFFCR  ATWE1001 SPA013 |
|---|---|

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 16.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization  BUREAU OF PRISONS  WESTERN REGION  USP, ATWATER, CA  CORRECTIONAL SERVICES  DJ FP3007108202000000   PP 10 2015 |
|---|---|

## EMPLOYEE DATA

| 23. Veterans Preference  1 - None  3 - 10-Point/Disability  5 - 10-Point/Other  2 - 5-Point  4 - 10-Point/Compensable  6 - 10-Point/Compensable/30%  1 | 24. Tenure  0 - None  1 - Conditional  2 - Permanent  3 - Indefinite  1 | 25. Agency Use | 26. Veterans Preference for RIF  YES  X  NO |
|---|---|---|---|

| 27. FEGLI  W0  BASIC-5X ADDITIONAL | 28. Annuitant Indicator  9  NOT APPLICABLE | 29. Pay Rate Determinant  0  NOT APPLICABLE |
|---|---|---|

| 30. Retirement Plan  M  FERS AND FICA SPECIAL | 31. Service Comp. Date (Leave)  12/03/89 | 32. Work Schedule  F  FULL TIME | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|

## POSITION DATA

| 34. Position Occupied  1 - Competitive Service  3 - SES General  2 - Excepted Service  4 - SES Career Reserved  1 | 35. FLSA Category  E  E - Exempt  N - Nonexempt | 36. Appropriation Code | 37. Bargaining Unit Status  8888 |
|---|---|---|---|

| 38. Duty Station Code  06-0190-047 | 39. Duty Station (City - County - State or Overseas Location)  ATWATER  MERCED  CA |
|---|---|

| 40. Agency Data | 41.  SEX: M | 42.  CITZ: 1 | 43.  VET STAT: N | 44.  ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

45. Remarks:
TIME-OFF AWARD HOURS SHOWN IN BLOCK 20
AWARD HOURS MUST BE USED WITHIN 1 YEAR

| 46. Employing Department or Agency  U.S. DEPARTMENT OF JUSTICE/FPS | 50. Signature/Authentication and Title of Approving Official  E/S BY: JAMIE BRINKMAN  SUPVY HUMAN RESOURCES SPECLST |
|---|---|
| 47. Agency Code  DJ FP | 48. Personnel Office ID  1082 | 49. Approval Date  05/18/15 | |

| 5-Part 50-316 | 2 - OPF Copy - Long-Term Record - DO NOT DESTROY | Editions Prior to 7/91 Are Not Usable After 6/30/93  NSN 7540-01-333-6238 |
|---|---|---|

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY J | | | 05/17/15 |

| **FIRST ACTION** | | | **SECOND ACTION** | | |
|---|---|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | | 6-A. Code | 6-B. Nature of Action | |
| 849 | INDIV CASH AWARD NRB | | | | |
| 5-C. Code | 5-D. Legal Authority | | 6-C. Code | 6-D. Legal Authority | |
| 5-E. Code | 5-F. Legal Authority | | 6-E. Code | 6-F. Legal Authority | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | SUPVY CORRECTNL OFFCR |
| | ATWE1001 SPA013 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 300.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF PRISONS |
| | WESTERN REGION |
| | USP, ATWATER, CA |
| | CORRECTIONAL SERVICES |
| | |
| | DJ FP3007108202000000   PP 10 2015 |

## EMPLOYEE DATA

| 23. Veterans Preference | | | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|
| 1 | 1 - None    3 - 10-Point/Disability    5 - 10-Point/Other<br>2 - 5-Point    4 - 10-Point/Compensable    6 - 10-Point/Compensable/30% | | 1 | 0 - None     1 - Conditional<br>1 - Permanent    3 - Indefinite | | YES   X   NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0   BASIC-5X ADDITIONAL | 9   NOT APPLICABLE | 0   NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per |
|---|---|---|---|
| M   FERS AND FICA SPECIAL | 12/03/89 | F   FULL TIME | Biweekly<br>Pay Period |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1   1 - Competitive Service   3 - SES General<br>2 - Excepted Service   4 - SES Career Reserved | E   E - Exempt<br>N - Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 06-0190-047 | ATWATER  MERCED  CA |

| 40. Agency Data | 41. SEX: M | 42. CITZ: 1 | 43. VET STAT: N | 44. ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

**45. Remarks**
INDIVIDUAL SPECIAL ACT OR SERVICE AWARD
SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | E/S BY: JAMIE BRINKMAN |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | SUPVY HUMAN RESOURCES SPECLST |
|---|---|---|---|
| DJ FP | 1082 | 06/03/15 | |

5-Part 50-316

**2 - OPF Copy - Long-Term Record - DO NOT DESTROY**

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY J | | | 05/18/14 |

## FIRST ACTION

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 849 | INDIV CASH AWARD NRB |

| 5-C. Code | 5-D. Legal Authority |
|---|---|
| | |

| 5-E. Code | 5-F. Legal Authority |
|---|---|
| | |

## SECOND ACTION

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |

| 6-C. Code | 6-D. Legal Authority |
|---|---|
| | |

| 6-E. Code | 6-F. Legal Authority |
|---|---|
| | |

**7. FROM: Position Title and Number**

**15. TO: Position Title and Number**
SUPVY CORRECTNL OFFCR
ATWE1001 SPA013

| 8. Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 750.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

**14. Name and Location of Position's Organization**

**22. Name and Location of Position's Organization**
BUREAU OF PRISONS
WESTERN REGION
USP. ATWATER, CA
CORRECTIONAL SERVICES

DJ FP3007108202000000   PP 10 2014

## EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1  1 – None  3 – 10-Point/Disability  5 – 10-Point/Other  2 – 5-Point  4 – 10-Point/Compensable  6 – 10-Point/Compensable/30% | 1  0 – None  1 – Conditional  1 – Permanent  3 – Indefinite | | YES  X  NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0  BASIC-5X ADDITIONAL | 9  NOT APPLICABLE | 0  NOT APPLICABLE |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| M  FERS AND FICA SPECIAL | 12/03/89 | F  FULL TIME | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1  1 – Competitive Service  3 – SES General  2 – Excepted Service  4 – SES Career Reserved | E  E – Exempt  N – Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 06-0190-047 | ATWATER  MERCED  CA |

| 40. Agency Data | 41. SEX: M | 42. CITZ: 1 | 43. VET STAT: N | 44. ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

**45. Remarks**
INDIVIDUAL SPECIAL ACT OR SERVICE AWARD
SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | E/S BY: JAMIE BRINKMAN  SUPVY HUMAN RESOURCES SPECLST |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| DJ FP | 1082 | 05/19/14 |

5-Part 50-316

**2 - OPF Copy - Long-Term Record - DO NOT DESTROY**

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238



U.S. Department of Justice
Federal Bureau of Prisons

*United States Penitentiary*
*Atwater, California 95301*

May 7, 2014

Ray Garcia
Captain
United States Penitentiary
Atwater, California 95301

Dear Mr. Garcia,

I want to take this opportunity to congratulate and present you with the Supervisor of the Quarter Award for January through March.  Your hard work and dedication have not gone unnoticed.  You continue to display dependability and loyalty to USP Atwater.  You are a valuable asset to the institution and the Bureau of Prisons.

Again, I congratulate and wish you continuing success throughout your career with the Bureau of Prisons.

Sincerely,

Paul Copenhaver
Warden

1082

# NOMINATION FOR INCENTIVE AWARD

**DEPARTMENT OF JUSTICE**                                 **FEDERAL BUREAU OF PRISONS**

It is the policy of the Department to ensure that consideration for awards is made without regard to race, color, national origin, religion, sex, age, marital or parental status, disability or other non-merit factors.
NOTE: For group awards, attach a list of members   Show data in Items 2-8, and award amount for each payee.

CASE NO.   (Personnel Use Only)
14 - ATW - 078

| 1. NAME OF EMPLOYEE (Last, first, middle initial) | | 2. SOCIAL SECURITY NUMBER |
|---|---|---|
| Garcia, Ray | | |

| 3. POSITION TITLE | 4. PAY PLAN-SERIES/GRADE/STEP | 5. DEPARTMENT |
|---|---|---|
| Captain | GS-0007 - 13/06 | Custody |

| 6. PERIOD COVERED FOR AWARD | From: 1/1/2013 | To: 03/31/2014 |
|---|---|---|

7. CITATION: Be specific and concise.   Use the space provided below.  However, if additional space is needed, please attach justification to the nomination form.
Captain Garcia has shown this dedication to this institution time and time again.  He works tirelessly to insure the safety of over 200 custody staff and over 1,000 inmates by being involved in all facets of this institution.  He regularly volunteers to teach classes on institution procedures and and has received numerous accolades for his teaching abilities.  Captain Garcia maintains a high standard of conduct as it pertains to training, performing mock exercises which are not only informative but have proven to be the foundation of phenomenal response teams.  Captain Ray Garcia has proven to be an asset to USP Atwater and the Bureau of Prisons as a whole.

## COMPLETE THE APPROPRIATE AWARDS SECTION

8. EXTRA EFFORT AWARDS - TYPE OF RECOGNITION RECOMMENDED (Check one)

○ Special Act       ○ Time Off Award       ○ Suggestion Award       ⦿ Other(Specify)

$ [ ]          Hrs. [ ]          $ [ ]          Suprvsr of the Qtr

$ [ ]

9. PERFORMANCE AWARDS - TYPE OF RECOGNITION RECOMMENDED (Check one)

○ Sustained Superior Performance       ○ Qualitiy Step Increase

$ [ ]

## RECOMMENDATION AND CONCURRENCE

| 10. RECOMMENDING INDIVIDUAL (Signature) | DATE 5-2-14 |
|---|---|
| 11. SUPERVISOR   (Signature) | DATE 5-2-14 |

### HUMAN RESOURCE DEPARTMENT USE ONLY

12. LIST AWARDS OR QSI'S IN THE PAST 52 WEEKS (Specify type of award, amount received, and effective date.)

| DATE OF LAST PROMOTION | | DATE OF LAST REGULAR PAY INCREASE | |
|---|---|---|---|
| 13. HRS(Signature) | | 14. EFFECTIVE DATE 5/8/14 | PAY PERIOD 10 |
| I certify that the proposed action is in compliance with statutory and regulatory requirements. | Human Resource manager(Signature) | | DATE 5/5/14 |

### APPROVING OFFICIAL USE ONLY

| 15. ASSOCIATE WARDEN(Signature) | APPROVAL     X | DATE 5-2-14 |
|---|---|---|
| | DISAPPROVAL   ○ | Amount $ 750.00 |
| 16. WARDEN(Signature) | APPROVAL     ○ | DATE 5-2-14 |
| | DISAPPROVAL   ○ | Amount $ 750.00 |

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| GARCIA, RAY J | | | 03/25/12 |

| FIRST ACTION | SECOND ACTION |
|---|---|

| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 849 | INDIV CASH AWARD NRB | | |
| **5-C. Code** | **5 D. Legal Authority** | **6-C. Code** | **6-D. Legal Authority** |
| | | | |
| **5-E. Code** | **5-F. Legal Authority** | **6-E. Code** | **6-F. Legal Authority** |
| | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | CORRECTNL PROG SPECLST |
| | R2009001  UA0874 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19.Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 250.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF PRISONS |
| | WESTERN REGION |
| | WESTERN REGIONAL OFFICE |
| | CORRECTIONAL SERVICES |
| | DJ FP3007414802000000   PP 07 2012 |

## EMPLOYEE DATA

| 23. Veterans Preference | | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|---|
| 1 | 1 – None  3 – 10-Point/Disability  5 – 10-Point/Other | 1 | 0 – None  2 – Conditional | | YES | |
| | 2 – 5-Point  4 – 10-Point/Compensable  6 – 10-Point/Compensable/30% | | 1 – Permanent  3 – Indefinite | | | X | NO |

| 27. FEGLI | | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|---|
| W0 | BASIC-5X ADDITIONAL | 9      NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part–Time Hours Per |
|---|---|---|---|
| M | FERS AND FICA SPECIAL | 12/03/89 | F | FULL TIME | Biweekly Pay Period |

## POSITION DATA

| 34. Position Occupied | | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|---|
| 1 | 1 – Competitive Service  3 – SES General | E | E – Exempt | | 8888 |
| | 2 – Excepted Service  4 – SES Career Reserved | | N – Nonexempt | | |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 06-3770-077 | STOCKTON  SAN JOAQUIN  CA |

| 40. Agency Data | 41. SEX: M | 42. CITZ: 1 | 43. VET STAT: N | 44. ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

45. Remarks
INDIVIDUAL SPECIAL ACT OR SERVICE AWARD
SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | E/S BY: JAMIE BRINKMAN |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | SUPVY HUMAN RESOURCES SPECLST |
|---|---|---|---|
| DJ FP | 4148 | 03/26/12 | |

5-Part 50-316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

1292859   WXR   4148

## NOMINATION FOR INCENTIVE AWARD

**DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| It is the policy of the Department to ensure that consideration for awards is made without regard to race, color, national origin, religion, sex, age, marital or parental status, disability or other non-merit factors.<br>NOTE: For group awards, attach a list of members.   Show data in items 2-8, and award amount for each payee. | CASE NO.   (Personnel Use Only) |
|---|---|

| 1. NAME OF EMPLOYEE (Last, first, middle initial)<br><br>Garcia, Ray | 2. SOCIAL SECURITY NUMBER |
|---|---|

| 3. POSITION TITLE<br>Emergency Pre. Officer | 4. PAY PLAN-SERIES/GRADE/STEP<br>GS-13 | 5. DEPARTMENT<br>Corr. Srvcs. |
|---|---|---|

| 6. PERIOD COVERED FOR AWARD | From: Mar 6, 2012 | To: Mar 8, 2012 |
|---|---|---|

7. CITATION: Be specific and concise.   Use the space provided below. However, if additional space is needed, please attach justification to the nomination form.

Mr. Garcia during the week of March 6, 2012 to March 8, 2012, was specifically requested by Central Office to assist with the Bureau's Incident Command System training initiative, at MSTC in Aurora Co. His expertise in response procedures, knowledge of the incident command system, and mentoring skills were noted by Central Office staff providing the course instruction. Central Office staff noted that the class participants and training center staff provided positive feedback concerning his willingness to share expertise with the class. Due to Mr.. Garcia's enthusiasm, staff felt as they were better prepared to manage their facilities in crisis situations. Ray's professionalism, knowledge and technical expertise are a continued testament to his leadership and can do attitude. I strongly recommend Mr. Garcia for this award.

### COMPLETE THE APPROPRIATE AWARDS SECTION

**8.   EXTRA EFFORT AWARDS -   TYPE OF RECOGNITION RECOMMENDED** *(Check one)*

☉ Special Act          ○ Time Off Award          ○ Suggestion Award          ○ Other(Specify)

$ 300          Hrs.          $          $

**9.   PERFORMANCE AWARDS -   TYPE OF RECOGNITION RECOMMENDED** *(Check one)*

○ Sustained Superior Performance          ○ Qualitiy Step Increase

$

### RECOMMENDATION AND CONCURRENCE

| 10. RECOMMENDING INDIVIDUAL (Signature) | DATE<br>Mar 15, 2012 |
|---|---|
| 11. SUPERVISOR   (Signature) | DATE |

### HUMAN RESOURCE DEPARTMENT USE ONLY

12. LIST AWARDS OR QSI'S IN THE PAST 52 WEEKS (Specify type of award, amount received, and effective date ):
Perf Award   $700  1/11/12   SAA   $250  9/1/11          12 WXRO 28

| DATE OF LAST PROMOTION   12/31/00 | DATE OF LAST REGULAR PAY INCREASE   12/28/03 | |
|---|---|---|
| 13. HRS (Signature)<br>I certify that the proposed action is in compliance with statutory and regulatory requirements. | 14. EFFECTIVE DATE<br>3/25/12 | PAY PERIOD   7 |
| Human Resource Manager (Signature) | DATE<br>03/21/12 | |

### APPROVING OFFICIAL USE ONLY

| 15. Dep. Reg. Dir  (Signature) | APPROVAL   ○<br>DISAPPROVAL   ○ | DATE<br>Amount: $ |
|---|---|---|
| 16. REGIONAL DIRECTOR (Signature)<br>(Director if over $3,000.00) | APPROVAL   ○<br>DISAPPROVAL   ○ | DATE 3/21/12<br>Amount $ 250.0 |

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|
| GARCIA, RAY J | | | | 01/01/12 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 840 | INDIVIDUAL CASH AWARD RB | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | CORRECTNL PROG SPECLST<br>R2009001  UA0874 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19.Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 700.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF PRISONS<br>WESTERN REGION<br>WESTERN REGIONAL OFFICE<br>CORRECTIONAL SERVICES<br><br>DJ FP3007414802000000   PP 01 2012 |

## EMPLOYEE DATA

| 23. Veterans Preference | | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|---|
| 1 | 1 - None       3 - 10-Point/Disability       5 - 10-Point/Other<br>2 - 5-Point   4 - 10-Point/Compensable       6 - 10-Point/Compensable/30% | | 1 | 0 - None        2 - Conditional<br>1 - Permanent   3 - Indefinite | | YES   X  NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| W0   BASIC-5X ADDITIONAL | 9   NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per |
|---|---|---|---|
| M   FERS AND FICA SPECIAL | 12/03/89 | F   FULL TIME | Biweekly<br>Pay Period |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1   1 - Competitive Service   3 - SES General<br>2 - Excepted Service   4 - SES Career Reserved | E   E - Exempt<br>N - Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 06-3770-077 | STOCKTON  SAN JOAQUIN  CA |

| 40. Agency Data | 41.<br>SEX: M | 42.<br>CITZ: 1 | 43.<br>VET STAT: N | 44.<br>ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

45. Remarks

CASH AWARD - PERFORMANCE BASED
SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | E/S BY: JAMIE BRINKMAN |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | SUPVY HUMAN RESOURCES SPECLST |
|---|---|---|---|
| DJ FP | 4148 | 01/01/12 | |

5-Part 50-316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

**PP01**

## NOMINATION FOR INCENTIVE AWARD
### "WESTERN REGIONAL OFFICE"
#### POI 4148

| 1. NAME OF EMPLOYEE *(Last, first, middle initial)* | | | 2. SOCIAL SECURITY NUMBER |
|---|---|---|---|
| Ray Garcia | | | |

| 3. POSITION TITLE | 4. PAY PLAN-SERIES/GRADE/STEP | 5. DEPARTMENT |
|---|---|---|
| Emergency Preparedness Officer | GS-007-12/10 | Correctional Services |

| 6. PERIOD COVERED FOR AWARD *(mm,dd,yy)* | |
|---|---|
| From:   October 1, 2010 | To   September 30, 2011 |

7. CITATION: Be specific and concise. Use the space provided below. However, if additional space is needed, please attach justification to the nomination form.

I am recommending Ray Garcia, Emergency Preparedness Officer, Western Regional Office for a Quality Step Increase. This nomination is based on Mr. Garcia achieving an overall performance rating of "Outstanding" this past year.

### COMPLETE THE APPROPRIATE AWARDS SECTION

**8. EXTRA EFFORT AWARDS - TYPE OF RECOGNITION RECOMMENDED *(Check one)***

| ☐ SPECIAL ACT | ☐ TIME OFF | ☐ SUGGESTION AWARD | ☐ OTHER   Specify (EOM, COQ, etc.) |
|---|---|---|---|
| $ | Hrs. | | |

**9. PERFORMANCE AWARDS - TYPE OF RECOGNITION RECOMMENDED *(Check one)***

| ☒ SUSTAINED SUPERIOR PERFORMANCE   $ | ☐ QUALITY STEP INCREASE |
|---|---|

### RECOMMENDATION AND CONCURRENCE

| | DATE |
|---|---|
| 10. RECOMMENDING INDIVIDUAL (Signature)   Andy Matevousian, Correctional Services Administrator | 10/20/11 |
| 11. SUPERVISOR (Signature)   Andy Matevousian, Correctional Services Administrator | 10/20/11 |
| 13. DEPUTY REGIONAL DIRECTOR (Signature)   Audrey M. Gill | DATE |
| 14. REGIONAL DIRECTOR (Signature)   Robert E. McFadden | 12/20/11 |
| APPROVAL ☒   DISAPPROVAL ☐ | DATE   AMOUNT: $700.00 |

### EMPLOYEE SERVICES USE ONLY.

15. LIST AWARDS OR QSI'S IN THE PAST 52 WEEKS (Specify type of award, amount received, and effective date.)

SAA $250, 9/11/11

| 16. EMPLOYEE SERVICES ASSISTANT (Signature)   Julie M. Shepard | AWARD TYPE/AWARD CODE/LOG #   124XR064 | EFF. DATE/PAY PERIOD |
|---|---|---|
| DATE OF LAST PROMOTION:   12/21/00 | DATE OF LAST WITHIN GRADE INCREASE: | 12/23/03,  GS-12/10 |
| I certify that the proposed action is in compliance with statutory and regulatory requirements. | EMPLOYEE SERVICES MANAGER (Signature) | DATE   10/27/11 |

1238881/4148/WXR

PP19

## NOMINATION FOR INCENTIVE AWARD

**DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

It is the policy of the Department to ensure that consideration for awards is made without regard to race, color, national origin, religion, sex, age, marital or parental status, disability or other non-merit factors.
NOTE: For group awards, attach a list of members.   Show data in items 2-8, and award amount for each payee.

| CASE NO.   (Personnel Use Only) |
|---|
| 11WXR00045 |

| 1. NAME OF EMPLOYEE (Last, first, middle initial) | 2. SOCIAL SECURITY NUMBER |
|---|---|
| Garcia, Ray | |

| 3. POSITION TITLE | 4. PAY PLAN-SERIES/GRADE/STEP | 5. DEPARTMENT |
|---|---|---|
| EPO | GS007-12 | Corr Svcs |

| 6. PERIOD COVERED FOR AWARD | From: Jul 1, 2011 | To: Aug 18, 2011 |
|---|---|---|

7. CITATION: Be specific and concise.   Use the space provided below.  However, if additional space is needed, please attach justification to the nomination form.
During this rating period Mr. Garcia, has done an exceptional job in increasing the cadre of staff in the Western Region who have completed Incident Command System (ICS) Training. Ray has been instrumental in leading the agency in ICS certifications. Additionally, his knowledge and experience has been utilized in the South Central and North Central Region for ICS certification training.

### COMPLETE THE APPROPRIATE AWARDS SECTION

8. EXTRA EFFORT AWARDS - TYPE OF RECOGNITION RECOMMENDED *(Check one)*

(●) Special Act        ( ) Time Off Award        ( ) Suggestion Award        ( ) Other(Specify)

| $ 250 | Hrs. | $ | $ |
|---|---|---|---|

9. PERFORMANCE AWARDS - TYPE OF RECOGNITION RECOMMENDED *(Check one)*

( ) Sustained Superior Performance              ( ) Qualitiy Step Increase

$

### RECOMMENDATION AND CONCURRENCES

| 10. RECOMMENDING INDIVIDUAL (Signature) | DATE Aug 18, 2011 |
|---|---|
| 11. SECTION CHIEF (Signature)   Lee, DRO | DATE 8/30/11 |

### HUMAN RESOURCE DEPARTMENT USE ONLY

12. LIST AWARDS OR QSI'S IN THE PAST 52 WEEKS *(Specify type of award, amount received, and effective date.)*:
Special Act $250.⁰⁰ 5/23/10

| DATE OF LAST PROMOTION   N/A | DATE OF LAST REGULAR PAY INCREASE   N/A | |
|---|---|---|
| 13. HRS (Signature)   Karina Garcia | 14. EFFECTIVE DATE 9/11/11 | PAY PERIOD 19 |
| I certify that the proposed action is in compliance with statutory and regulatory requirements. | Human Resource Manager(Signature)   Jeanne Bristolini | DATE 08/23/11 |

### APPROVING OFFICIAL USE ONLY

| 15. CHIEF (Signature) | APPROVAL (✓) | DATE 8/31/11 |
|---|---|---|
| | DISAPPROVAL ( ) | Amount: $250.00 |
| 16. ASSISTANT DIRECTOR (Signature) (Director if over $3,000.00) | APPROVAL ( ) | DATE |
| | DISAPPROVAL ( ) | Amount: $ |

#148/WXR

1109524

Standard Form 50
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296–33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | | | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|---|---|
| GARCIA, RAY J | | | | | | 09/11/11 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5–A. Code **849** | 5–B. Nature of Action **INDIV CASH AWARD NRB** | 6–A. Code | 6–B. Nature of Action |
| 5–C. Code | 5–D. Legal Authority | 6–C. Code | 6–D. Legal Authority |
| 5–E. Code | 5–F. Legal Authority | 6–E. Code | 6–F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | CORRECTNL PROC SPECLST R2009001  UA0874 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19.Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 250.00 | |

| 12A. Basic Pay | 12B. Locality Adj. .00 | 12C. Adj. Basic Pay | 12D. Other Pay .00 | 20A. Basic Pay | 20B. Locality Adj. .00 | 20C. Adj. Basic Pay | 20D. Other Pay .00 |
|---|---|---|---|---|---|---|---|

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | BUREAU OF PRISONS WESTERN REGION WESTERN REGIONAL OFFICE CORRECTIONAL SERVICES  DJ FP3007414802000000  PP 19 2011 |

## EMPLOYEE DATA

| 23. Veterans Preference | | | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|
| **1** | 1 – None / 2 – 5-Point | 1 – 10-Point/Disability / 4 – 10-Point/Compensable | 5 – 10-Point/Other / 6 – 10-Point/Compensable/30% | **1** / 0 – None / 1 – Permanent / 2 – Conditional / 3 – Indefinite | | YES / **X**  NO |

| 27. FEGLI | | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|---|
| **W0** | BASIC–5X ADDITIONAL | **9**  NOT APPLICABLE | **0** |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part–Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| **M**  FERS AND FICA SPECIAL | 12/03/89 | **F**  FULL TIME | |

## POSITION DATA

| 34. Position Occupied | | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|---|
| **1** | 1 – Competitive Service / 2 – Excepted Service / 3 – SES General / 4 – SES Career Reserved | **E**  E – Exempt / N – Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 06–3770–077 | STOCKTON  SAN JOAQUIN  CA |

| 40. Agency Data | 41. SEX: M | 42. CITZ: 1 | 43. VET STAT: N | 44. ED LV:07 YR:00 INST PRG:000000 |
|---|---|---|---|---|

45. Remarks

INDIVIDUAL SPECIAL ACT OR SERVICE AWARD
SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. DEPARTMENT OF JUSTICE/FPS | E/S BY: JAMIE BRINKMAN |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | SUPVY HUMAN RESOURCES SPECLST |
|---|---|---|---|
| DJ FP | 4148 | 09/12/11 | |

5–Part 50–316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540–01–333–6238

C

STATEMENT OF KELLY SILVA – FEBRUARY 15, 2023

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF
CALIFORNIA:

My name is Kelly Silva and I am a retired federal law enforcement officer from the Federal
Bureau of Prisons.  I am writing this letter in regards to Ray J. Garcia of whom I have known for almost
22 years.  Currently, we both share custody of our 15 year old minor son, Gatlin Garcia.  Our son, Gatlin,
is currently a sophomore attending Atwater High School in Atwater, California.

I met Mr. Garcia in May of 2001 upon seeking employment at the United States Federal
Penitentiary, in Atwater, California. Mr. Garcia was employed as the Emergency Preparedness Officer at
the time and the institution itself was in a state of activation.  Numerous staff were being hired to fill
open vacancy positions. My first impression of Mr. Garcia was not a pleasant one.  He seemed to be
arrogant, blunt, and overly confident.  Mr. Garcia was one of several instructors in charge of teaching
the Introduction to Correctional Techniques (ICT) course and provided a wealth of information to newly
employed staff in regards to Federal Bureau of Prisons policies and procedures.  Upon completion of the
course, it was my hope I would not have excessive encounters with Mr. Garcia. I felt his personality
severely clashed with mine. However, over the period of several weeks, daily interactions proved to be
positive and my perception of him changed dramatically. I became aware of how extremely intelligent,
resourceful, and dedicated Mr. Garcia is.

Shortly after starting my employment, I engaged in a personal relationship with Mr. Garcia.
Although we were never married, we lived together as domestic partners for 14 years. Our minor son
Gatlin, was born in April of 2007.  At the age of 6, Gatlin was diagnosed with Asperger Syndrome and
ADHD. With both diagnoses came many hurdles and challenges to overcome.  Gatlin struggles quite
often both socially and educationally with his disabilities.  However, Mr. Garcia has always been an
instrumentally strong and engaged father in Gatlin's life. Today, he continues to participate in every
aspect associated with Gatlin even though we share weekly custody.

My oldest son, Tristan Silva, was from a previous marriage and also lived with us. Mr. Garcia was
like a father figure to him and participated in all educational and extracurricular activities involving
Tristan. They developed a very strong bond together which still exists today. As a result, Tristan is
currently employed with the Turlock Police Department as a Law Enforcement Officer.  Tristan is also a
collateral member of the SWAT team.

Throughout our relationship as well as our employment and careers with the Federal Bureau of
Prisons, I have witnessed first-hand the responsibilities, disappointments, and tribulations associated
with a law enforcement career.  Over the years, various friends, acquaintances, and employees have
either promoted, transferred and/or lateraled to a new institution, sought employment in a different
agency, retired, or just resigned.  An abundance of these situations have taken place of which Mr. Garcia
has personally been a participant in.  More so than not, I can attest to an overwhelmingly excessive
amount of demand associated with being employed as a correctional worker as well as the unbearable
level of stress and trauma that is associated with the occupation.

I have personally observed Mr. Garcia work an excessive amount of hours, complete numerous
projects and instillations, prepare for a variety of inspections and surveys, travel extensively for

professional meetings and seminars, educate and/or train hundreds of staff, and partake in several emergency situations all at an exceptional level of ability and respect.  Mr. Garcia has successfully fulfilled many positions with increasing responsibility throughout his bureau career, to include Correctional Officer, Lieutenant, Staff Mentor, Firearms Instructor, Employee Trainer, FEMA Trainer, Disturbance Control (DCT) Instructor, Special Operations Response Team (SORT) member, SORT leader, Emergency Preparedness Officer (EPO), Deputy Captain, Captain, Associate Warden, and ultimately Warden. Furthermore, Mr. Garcia has supervised, managed, and/or provided direction to several bureau institutions during his career, to include FCC Lompoc, FCI Englewood, FCC Victorville, USP Atwater, the Western Regional Office (WXRO), Central Office (CO), and FCI Dublin.  In each instance, Mr. Garcia was dedicated to his position, executed written bureau policies and procedures, and provided his knowledge and/or expertise in the area of sound correctional judgement.

Mr. Garcia possesses many strengths and talents of which has benefited the Bureau of Prisons over the span of his correctional career. Mr. Garcia has been utilized throughout several high profile situations to deal with embarrassing outcomes, difficult employees, and tarnished reputations. Situations like and escaped prisoner, the death of a staff member, or a genuine world-wide pandemic all proved to be a moment in which he could successfully manage the challenge and present a positive outcome. While these situations could create common adversaries, it would also equally create opponents.  Mr. Garcia's ability to manipulate written bureau policy and/or find loops holes in procedures to justify these negative situations indeed provided protection and rectification for the bureau.  He was always willing to meet the challenge, put forth the effort, and disseminate the problem.

In speaking about Mr. Garcia and his personality, I can definitively report he is not everyone's cup of tea.  However, in an emergency situation when everything is chaotic and fluid, he commands respect and brilliance unsurpassed by none.  He possesses a strong sense of old school work ethic which is not found in most employees. He is punctual, hard-working, knowledgeable, resourceful, energetic, and dedicated. On the other hand, Mr. Garcia can present to be quite arrogant, narcissistic, conceited, shrewd, impulsive, and demanding.  In having a past relationship with him, I can attest in many situations we did not see eye to eye.  Mr. Garcia does perceive situations very differently than most individuals which can be both positive and negative. In my personal opinion, he suffers in the area of social skills and is a creature of habit and routines.

As I attended the first day of Mr. Garcia's trial, I immediately became aware of the Judges' dissatisfaction with the defense and her irritation with the trial in general.  When the Judge verbally addressed the jury and prosecution, her tone and demeanor instantly changed to a more pleasant and accommodating tone.  I witnessed at a minimum half a dozen released inmates present in the jury room along with other individuals clearly in favor of the prosecution.  I also witnessed individuals in the jury room non-verbally communicating with the witnesses on the stand during testimony in order to make their responses more valid.  Additionally, on the first day of trial, I witnessed a juror fall asleep during witness testimony.

With the clear outcome of Mr. Garcia's guilty verdict, I would like to point out Mr. Garcia's previous attorney did not call a single witness in his defense nor did he present any exhibits which would favor his defense. My opinion is Mr. Garcia did not have a fair trial.   It is clear Mr. Garcia's attorney was extremely incompetent and did not properly address or challenge witness testimony.  His lack of education in the area of policies, procedures, and practices associated with the Federal Bureau of

Prisons ultimately resulted in the outcome of a guilty verdict for Mr. Garcia on all counts. Additionally, the appearance of lack of support for Mr. Garcia in the court room did not prove beneficial for a positive verdict.  In addition, currently employed as well as retired correctional staff could be under the impression that speaking in favor on the behalf of Mr. Garcia could pose a threat to their reputation as law enforcement officers which ultimately adds a layer of bias towards a negative verdict.

Thank your for considering my statement.

Sincerely,

Kelly Silva

D

Elida T. Stewart

2801 Loyola St.

Bakersfield, CA 93306


The Honorable Yvonne Gonzalez-Rogers

Ronald V. Dellums Federal Courthouse

1301 Clay St.

Oakland, CA 94612


3/22/2023


Your Honor,

My name is Elida Stewart. As a representative for my family, I am writing this letter to plead to the court for leniency or probation on behalf of my brother Ray Garcia.

We are fully aware of the seriousness of the charges for which my brother has been found guilty and although we have compassion for the victims, we wanted the court to understand the impact that losing our bother to the Federal Justice system would do to our family.

It is because of our parents that I am writing this letter today. They are both in their 70's and they both depend on my brother to help them. He is at our dad's house regularly to help with things around his house that our dad can no longer do. Ray often makes himself available for our mom to help or our sister move or do anything that requires heavy lifting. For our family, the trial experience has taken a toll on us emotionally. An extended sentence for my brother could mean that our parents would never see their son outside of prison ever again.

I also ask that the court consider my nephew Gatlin, Ray's special needs son. Gatlin is very close to his dad. Gatlin respects his dad, and they love each other so very much. Because of his autism, our fear is how a long sentence with his father away from home, will negatively affect Gatlin. Gatlin does not express emotions like a neurotypical individual and his autism makes it challenging for him to understand himself and others but mostly how a fair justice system can take away his dad for making a mistake. Losing his father would be devastating to my nephew. It could cause irreparable damage to his psyche. We as family beg the court to consider this fact.

Lastly, it does not serve the community to lock away a non-violent family man. Ray spent his entire career caring for individuals who committed heinous crimes with honor and integrity despite the jury's decision to the contrary. Because of Ray's 30-year career in law enforcement, he is at risk of being targeted by the same individuals he protected the community from.

My brother's life is here in California. He poses no flight risk, is a taxpaying citizen and any prison sentence would just add to the burden and costs of the Federal Bureau of Prisons system.

Therefore, as part of our leniency request, we, as a family are asking for Ray to be sentenced to an Electronic Monitoring Program or probation as determined by the court.

It is with much sincerity that we thank you for listening to this letter and considering our request.


Sincerely,

Elida Stewart

E

1  KEVIN G. LITTLE, SBN 149818
   **LAW OFFICE OF KEVIN G. LITTLE**
2  Post Office Box 8656
   Fresno, California 93747
3  Telephone:  (559) 342-5800
   Facsimile:   (559) 242-2400
4  E-Mail: kevin@kevinglittle.com

5  Attorneys for Defendant
   Ray J. Garcia
6

7

8                 IN THE UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,              CASE NO.:  4:21-CR-00429-YGR

12                        Plaintiff,       DECLARATION OF DANIEL FLINT RE:
                                           SENTENCING
13            v.

14  RAY J. GARCIA,

15                        Defendant.

16

17         The undersigned, Daniel Flint, hereby declares as follows:

18         1.      I am retired from the Federal Bureau of Prisons. I worked for the Bureau of Prisons for 27

19  years, starting out as a correctional officer, and eventually retiring as an Associate Warden in 2017.

20  During my career, I worked at several BOP facilities of various security levels.

21         2.      Under Bureau of Prisons policy, inmates with an offense level over 25 are eligible to be

22  placed in a USP (United States Penitentiary), which are among the higher security level institutions in

23  the federal system.  Most of the USP population consists of violent or more dangerous offenders,

24  including validated gang members. An inmate with a 150 month sentence could also very well be placed

25  in a USP, at least initially.

26         3.      Because Mr. Garcia worked his entire career in the BOP's Western Region, including as a

27  Warden and Executive Staff member, it would be highly unlikely that he would be assigned to a

28  Western Region facility.  There simply would be too high of a risk of retaliation against him by inmates

DECLARATION OF DANIEL FLINT                    1

1   who would be familiar with him as former BOP staff, and he also would likely interact with staff

2   members previously under his supervision.  He also would be subject to policy decisions, including

3   possible discipline, by Regional staff who were his former colleagues.  The much more likely scenario

4   would be that Mr. Garcia would be placed in a facility in another more remote BOP region, even though

5   generally the BOP normally strives to place inmates in facilities closer to their home areas so that they

6   are better able to maintain their family ties. The other possible option would be for Mr. Garcia to be

7   placed in one of the state facilities the BOP occasionally utilizes to house high risk inmates, and those

8   facilities typically tend to be even more dangerous.

9           4.      Mr. Garcia would likely be a considered a restricted status inmate by the BOP, because of

10   his prior status a a BOP employee, his status as a former law enforcement officer, his extensive

11   knowledge of BOP policies and procedures, his prior participation in inmate and staff discipline, and his

12   having been convicted of a sexual offense. Restricted status inmates are typically less able to participate

13   in available programs due to the security risk that their interaction with the general inmate population

14   would present.  Co-housing Mr. Garcia with another inmate would also be extremely difficult, due to

15   these same security risks.  Mr. Garcia would likely be isolated as much as possible if placed in a BOP

16   facility, despite the now well accepted detrimental psychological impact of extended isolation.

17           5.      As a result of all the aforementioned factors, in my opinion, Mr. Garcia's prison term

18   would result in his serving significantly "harder time" than most other inmates, due to his likely being

19   placed in a more remote and even possibly a state facility, and his likely restricted status wherever he

20   would be housed, and his likely isolation.  Also as a prior law enforcement officer, particularly a former

21   federal prison official convicted of sexually abusing federal inmates, it is very likely that Mr. Garcia

22   would be subject to violent retaliation if he is sentenced to a lengthy prison term in a typical custodial

23   setting.  Keeping a high risk inmate such as Mr. Garcia away from potential harm at all times is next to

24   impossible, even if he is assigned restricted status and generally isolated.

25           6.      In my opinion, it would be very unjust to sentence Mr. Garcia, a 55 year old vulnerable

26   inmate with no criminal history, to a lengthy prison term based on the circumstances outlined above.

27   ///

28   ///

DECLARATION OF DANIEL FLINT                       2

1    7.    If called as a witness, I could truthfully incompetently testify to the foregoing under oath.

2    Sworn under penalty of perjury under the laws of the United States of America, this 8th day of

3 March 2023.

4                                          _____

                                              Daniel Flint