**Pages 1 - 56**

                              UNITED STATES DISTRICT COURT

                            NORTHERN DISTRICT OF CALIFORNIA

              Before The Honorable Yvonne Gonzalez Rogers, Judge

              UNITED STATES OF AMERICA,        )
                                               )
                       Plaintiff,              )
                                               )
                VS.                            )        **NO. CR 21-00429-YGR**
                                               )
              RAY J. GARCIA,                    )
                                               )
                       Defendant.              )
              _____)


                                      Oakland, California
                                      Wednesday, March 22, 2023


                         **TRANSCRIPT OF SENTENCING PROCEEDINGS**


              **APPEARANCES:**

              For Plaintiff:
                                      **ISMAIL J. RAMSEY**
                                      United States Attorney
                                      1301 Clay Street, Suite 340S
                                      Oakland, CA  94612
                                **BY:  MOLLY PRIEDEMAN**
                                      **ANDREW PAULSON**
                                      **ASSISTANT UNITED STATES ATTORNEYS**

              For Defendant:
                                      LAW OFFICE OF KEVIN G. LITTLE
                                      Post Office Box 8656
                                      Fresno, CA  93747
                                **BY:  KEVIN G. LITTLE, ESQUIRE**

              Reported By:  Pamela Batalo-Hebel, CSR No. 3953, RMR, FCRR
                            Official Reporter

| | |
|---|---|
1 | **<u>Wednesday - March 22, 2023</u>**                              **<u>10:00 a.m.</u>**

2 | **P R O C E E D I N G S**

3 | **---oOo---**

4 |     **THE CLERK:**  Your Honor, now calling CR 21-429, United

5 | States vs. Ray J. Garcia.

6 |   If counsel could please state their appearances for the

7 | record, starting with the Government.

8 |     **MS. PRIEDEMAN:**  Good morning, Your Honor.  Molly

9 | Priedeman and Andrew Paulson for the United States.

10 |     **THE COURT:**  Good morning.

11 |     **MR. LITTLE:**  Good morning, Your Honor.  Kevin Little

12 | appearing on behalf of Ray Garcia.

13 |     **THE COURT:**  Good morning.

14 |     **THE PROBATION OFFICER:**  Good morning, Your Honor.

15 | Kyle Pollack for U.S. Probation.

16 |     **THE COURT:**  Good morning.  Glad you made it.

17 |   Well, Mr. Garcia, I need you to come to the podium,

18 | please.  We are here for your sentencing, sir.

19 |   In preparation for these proceedings, I have reviewed and

20 | considered the presentence -- the revised presentence

21 | investigation report, which was prepared on February 9th, 2023,

22 | disclosed March 1st and revised March 14th.

23 |   I've also considered numerous filings:  The United States'

24 | sentencing memorandum and the response to the objections; the

25 | Defense's sentencing memorandum, and all of the attachments,

1    extending about 133 pages.  I have considered additional victim

2    statements, additional statements from family members of yours,

3    including your son.

4        We have discussed other filings, but those are the

5    principal ones.

6        Have you had an opportunity to review and consider those

7    documents and are you prepared to proceed?

8            **THE DEFENDANT:**  Yes, Your Honor.

9            **THE COURT:**  All right.  Then we will start with the

10   sentencing guidelines, which are always the first place that

11   the Court starts.

12       In this particular case, as a reminder, you have been

13   convicted of eight counts.  Because they are similar, they are

14   grouped.  The counts with respect to Counts 1 and 8 -- this is

15   for a violation of Title 18 of the United States Code at

16   Section 2243(b) -- the base offense is 14.  This was for the

17   digital penetration of Melissa while you were in the bathroom

18   in the visitation room.  It's increased by two points because

19   you knew or should have known that she was a vulnerable victim.

20   It's increased by two more points because of the obstruction of

21   justice and your lying about it to the officials.  That gives

22   you an adjusted offense level of 18 for Count 1, Group -- for

23   Group 1, Counts 1 and 8.

24       Is there an objection to these calculations?

25           **MS. PRIEDEMAN:**  No, Your Honor.

1      **THE COURT:**  Is there an objection?

2      **MR. LITTLE:**  Not other than previously stated.  The

3 Defense agrees, Your Honor, that Mr. Garcia's base offense

4 level with respect to the group charges is 18.

5      **THE COURT:**  All right.  The Court adopts those for

6 purposes of Count Group 1.

7      Count Group 2 with respect to Count 2, sexual abuse of a

8 ward for a violation of Title 18 of the United States Code at

9 Section 2243(b), this is for conduct between December 2019 and

10 March 2020 for digital penetration again, base offense level of

11 14, increased enhancement of two points because the victim was

12 vulnerable, and increased enhancement of two points or two

13 levels because of the obstruction, again, adjusted offense

14 level of 18.

15      No objection?

16      **MS. PRIEDEMAN:**  No, Your Honor.  I would just note

17 that the obstruction enhancement applies not only for the false

18 statements provided to officials but also to his false

19 statements on the stand and other conduct described in the PSR.

20      **THE COURT:**  All right.

21      Anything?

22      **MR. LITTLE:**  None other than as previously stated,

23 Your Honor.

24      **THE COURT:**  All right.  So adjusted offense level is

25 18.

1       Count Group 3, Count 3, for a violation of Title 18 of the

2   United States Code at Section 2244(a)(4), this is for conduct

3   for touching Melissa's genitals and breasts in or about

4   February of 2020.  This is a different violation.  It starts

5   with a base offense level of 12, increased by two points or two

6   levels because she, the victim, was in the custody, care, or

7   supervisory control of the defendant, and, again, two more

8   levels because she was a vulnerable victim, two more levels

9   because of the obstruction.  And these are all under Sentencing

10  Guidelines 2A3.4(a)(3), .4(b)(3), 3A1.1(b)(1), and 3C1.1.

11      That brings us to an adjusted offense level of 18.  Any

12  objections?

13          **MS. PRIEDEMAN:**  No, Your Honor.

14       **MR. LITTLE:**  None other than previously stated,

15  Your Honor.

16       **THE COURT:**  The Court adopts those offense levels as

17  well.

18      Count Group 4, Count 4, for sexual abuse of a ward, so for

19  a violation of Title 18 of the United States Code at Section

20  2243(b).  This is with respect to the penetration of Melissa's

21  genital openings while in a warehouse.  A base offense level of

22  14, increase of two levels because of the vulnerability of the

23  victim, increased another two levels because of the obstruction

24  of justice, for an adjusted offense level of 18.

25      Any statements?

1     **MS. PRIEDEMAN:**  No, Your Honor.

2     **THE COURT:**  Mr. Little?

3     **MR. LITTLE:**  None other than as previously stated,

4  Your Honor.

5     **THE COURT:**  All right.  That's an 18 as well that the

6  Court adopts.

7     Count Group 5, Count 5, abusive sexual conduct -- contact.

8  This is for a violation of Title 18 of the United States Code

9  at Section 2244(a)(4).  This relates to conduct with Maria, who

10  was caused to touch defendant's penis.  They were in the

11  laundry room.  The base level of 12, increased by two levels.

12  As with the other, the victim was in his custody, care, or

13  supervisory control.  And increased two more levels given that

14  the victim was vulnerable, increased two more levels for

15  obstruction of justice, for an adjusted offense level of 18.

16     Any comments?

17     **MS. PRIEDEMAN:**  No, Your Honor.

18     **THE COURT:**  Any comments?

19     **MR. LITTLE:**  Nothing other than what has already been

20  provided, Your Honor.

21     **THE COURT:**  The Court adopts the level 18 based upon

22  those calculations.

23     Count Group 6, Count 6, abusive sexual contact, violation

24  of Title 18 of the United States Code Section 2244(a)(4).  This

25  is for conduct on or about January 21st through July 2021 with

1   relation to touching Maria's breasts while she is inside of her

2   cell.  Start with an offense level of 12.  That's increased by

3   two levels because she was under the custody, care, or control

4   or supervisory control of the defendant, increased another two

5   levels because she's a vulnerable victim, increased another two

6   levels because of obstruction of justice.  That brings us to an

7   adjusted level of 18.

8           Comments?

9           **MS. PRIEDEMAN:**  No, Your Honor.

10          **MR. LITTLE:**  None other than as already has been

11   stated, Your Honor.

12          **THE COURT:**  The Court adopts those calculations.

13          Count Group 7, Count 7, abusive sexual contact.  This is

14   for a violation of Title 18 of the United States Code at

15   Section 2244(a)(4).  This relates to conduct on or about

16   March 2020 through -- and September 2020 with respect to Rachel

17   for touching her buttocks when they were in the electrical

18   shop.  Start with a base offense level of 12, increased by two

19   levels given his role as warden, and she was under his custody,

20   care, supervisory control; increased another two levels because

21   she was a vulnerable victim; increased another two levels

22   because of obstruction of justice.  That brings us to an

23   adjusted level of 18.

24          Any comments?

25          **MS. PRIEDEMAN:**  No, Your Honor.

1        **MR. LITTLE:**  None other than as has been stated,

2   Your Honor.

3        **THE COURT:**  The Court adopts the adjusted level of 18.

4     Given that there are multiple similar counts, the way the

5   guidelines work is that we start with the greater of the

6   adjusted levels, which is 18.  The offense level is increased

7   pursuant to the number of units, which is five in this case

8   given the variety of acts.  That brings us to an adjusted level

9   of 23.

10      Any comments with respect to the adjusted offense level?

11        **MS. PRIEDEMAN:**  No, Your Honor.

12        **MR. LITTLE:**  No, Your Honor.

13        **THE COURT:**  With an adjusted level of 23 and no

14   criminal history category, other than -- that is, no prior

15   criminal history, he has a criminal history category of 1 with

16   a guideline range of 46 to 57 months.  Agreed?

17        **MS. PRIEDEMAN:**  Yes, Your Honor.

18        **MR. LITTLE:**  Yes, Your Honor.

19        **THE COURT:**  All right.  The Court adopts those

20   findings.

21      Let's review the objections.

22      You can have a seat for this part, Mr. Garcia.

23      As I noted last week, I do have concerns with respect to

24   what the Government, in my view, sought to do with the

25   additional evidence of incidents related to Mr. Garcia in terms

1    of the sentencing that they were asking for.  I did ask the

2    Government and provide an opportunity to have an evidentiary

3    hearing with respect to those additional victims.

4         *United States vs. Valle*, 940 F.3d at 473 to -- and 479,

5    that's a Ninth Circuit case at 2019, talks about the standards

6    that apply when we're in -- when you're, in effect, asking for

7    an enhanced sentence, and it is based upon the logic of that

8    case that it seemed appropriate to advise you that if you were

9    going to ask for a sentence as high as you were and you were

10   relying heavily on that evidence, that there should be an

11   evidentiary hearing.

12        I understand from your notation or email on Monday that

13   you've chosen not to proceed with an evidentiary hearing.

14   Mr. Little was copied on the email.

15        So do you wish to be heard at this point?

16        **MS. PRIEDEMAN:**  No, Your Honor.  As the Government

17   expressed at last week's hearing, we do believe the

18   non-testifying witnesses' statements are procedurally -- are

19   substantively and procedurally reliable based on the Ninth

20   Circuit's case in *Franklin*, but we understand the Court's

21   ruling and will not be proceeding with an evidentiary hearing

22   at this time.

23        **THE COURT:**  I don't want -- I don't want the public to

24   think that I don't think that there's some measure of

25   reliability, but I do think that the Constitution requires a

little bit more.

I have considered numerous victims' statements, and I have considered numerous family letters and interviews.  The Court looks at the totality of all of those circumstances, and with respect to those statements, I do not ignore them in their entirety, but beyond viewing them as anything other than what I would normally get, I don't think it's appropriate.

The presentence investigation report follows the defendant.  It doesn't necessarily include everything that the Court considers at sentencing.  It doesn't include all of the victim statements.  It doesn't include all of the family letters.  And so I treat it like that and nothing more, nothing less.

Does anybody wish to be heard?

**MR. LITTLE:**  No, Your Honor.

**MS. PRIEDEMAN:**  No, Your Honor.  Understood.

**THE COURT:**  Okay.  So let's go through this.

Many of the objections relate to a disagreement with the scope of the testimony.  All of those objections are overruled.  The testimony is the testimony.  He's been convicted.  He does not sit here as an innocent man.  He sits here as a felon.  That's what he is.  So the fact that he may still disagree with it is not relevant to me, and the objection is without basis.  They are overruled.

So starting at page 4, that relates to objection number 8,

9, 12 through 14.  All of those are overruled.

He objects to paragraphs 19, 20, 24.  Overruled.

He objects to all of the trial testimony of Melissa.
Overruled.

He objects to all of the testimony of Stephanie Millikin,
the BOP official.  Overruled.

He objects to the trial testimony of Maria.  All of those
objections are overruled.

He objects to the trial testimony of Rachel.  All of those
are overruled.

He objects to the trial testimony of Christina.  All of
those are overruled.

He objects to the trial testimony of Katrina.  All of
those are overruled.

He objects to the interviews of the other inmates.

Now, Mr. Pollack, this begins at paragraph 92.  So with
respect to the PSR, I'd ask that you remove paragraphs
beginning at 92 through, I believe -- so we have interviews of
CF.  That's at 92 through 111.  Those should be removed from
the PSR.

The interview of DGR begins at 112 through 127.  Those
should be removed.

The interview of MM starts at 128 through 136.  Those
should be removed from the PSR.

The interview of CRV at 137 through 145, those should be

removed from the PSR.

The interview of TG at 146 through 153, those should be removed.

The objections with respect to his own testimony are overruled.

Anything else with respect to objections, Mr. Little?

**MR. LITTLE:**  No, Your Honor, other than what is stated in our objection, which I believe the Court has covered to a great extent.

**THE COURT:**  What else do I need to rule on, if anything?

**MR. LITTLE:**  The other objections we made were to the summary of Lieutenant Putnam's testimony at paragraphs 168 and 169.

**THE COURT:**  Overruled.  What else?

**MR. LITTLE:**  And finally, we do not object to the summary of the victim impact letters, but we object for the same reason that we objected to paragraphs 92 through 153 for their inclusion beyond the fact that they are letters related to sentencing, for the same reason that we would object to having the other interview statements considered without an evidentiary hearing.

**THE COURT:**  Okay.  Is there something that I missed? I thought I ruled on those objections.

**MR. LITTLE:**  I think it's part and parcel of the same

1    thing, Your Honor.

2         **THE COURT:**  Anything else I need to do with respect to

3    your objections?

4         **MR. LITTLE:**  No, Your Honor.

5         **THE COURT:**  Okay.  Let's move to argument with respect

6    to an appropriate sentence.

7         We'll begin with the Government, and then we'll move to

8    the Defense.

9         You may proceed.

10        **MS. PRIEDEMAN:**  Thank you, Your Honor.

11        I do just want to note that there are victims present in

12    the courtroom.

13        **THE COURT:**  I understand I have victims who would like

14    to speak to the Court.  That will be allowed.  I understand

15    that there are individuals in support of the defendant who

16    would like to speak.  That will be allowed.  So that will all

17    be allowed.  We'll be here for a bit.

18        **MS. PRIEDEMAN:**  Understood.  I will proceed,

19    Your Honor.

20        Defendant's conduct in this case is unquestionably

21    egregious.  As the associate warden and the warden, Mr. Garcia

22    had nearly unchecked power over the inmates in his custody at

23    FCI Dublin.  As Your Honor is aware, he could help them by

24    granting their motions for compassionate release or he could

25    punish them by transferring them far from their families or

1   sending them to solitary housing.

2       He also knew the vulnerabilities in the prison.  He knew

3   where the surveillance cameras were and where they weren't.  He

4   exploited that power over and over and over again by grooming

5   his victims for his own sexual gratification and by abusing

6   them by digitally penetrating one of them, groping them,

7   ordering them to take their clothes off, showing them pictures

8   of his penis, and in one victim's case, taking a graphic sexual

9   picture of her.

10      He also took many calculated and intentional steps to hide

11  what he had done, again relying on his power to cover his

12  tracks.  As the Court heard at trial, he told the inmates he

13  was friends with the investigators in charge of investigating

14  sexual abuse.  He told them that they are the ones that could

15  get in trouble if anyone had found out what happened.  He told

16  one victim to destroy evidence, and he downloaded an

17  application on his phone to hide photographs.

18      In his role at FCI Dublin, he had the power to create a

19  culture of silence and abuse, and that's exactly what he did.

20  The victims in this case were terrified to come forward for a

21  long time.

22      The defendant's actions also set the tone for the rest of

23  the institution.  Four individuals who worked under the

24  defendant have been charged with sexual abuse of inmates.  And

25  when confronted by the FBI and DOJ OIG, the defendant lied

through his teeth about his abuse.

At trial, he doubled down.  He perjured himself and repeatedly attempted to try to blame the victims for his own misconduct and concocted stories to try to explain away the evidence that, frankly, defied common sense.

The defendant has also persisted in his complete lack of remorse throughout this entire case.  In his interview with the probation department, he refused to even acknowledge that there were victims in this case, telling probation that the victims were just felons that wanted a benefit from the government.

The consequences for the defendant's victims have been devastating.  Many of the victims have suffered nightmares and flashbacks, and they live in fear of retaliation, particularly the inmates who are still incarcerated, some of whom are under the custody of defendant's formers colleagues and subordinates.

Defense counsel has submitted numerous letters and other exhibits in support of its sentencing memorandum and many of them point out that the defendant had a very successful career at BOP.  A lot of people pointed out that he knew the policies better than anyone.  The Government does not agree -- disagree with that assertion, but that's not a mitigating factor that would support a downward departure, as Defense is suggesting.

His experience at BOP, his knowledge of the policies is what enabled him to commit the crimes in this case.  It's also what enabled him to get away with what he was doing for so

1   long.  It's what makes his crimes that much more egregious.

2        Defense counsel has also suggested that the fact that he's

3   in law enforcement is a mitigating factor because his time

4   might be harder in custody.  They cite to the *Koon* case for

5   that.  But, again, it's the Government's position that his

6   position as law enforcement is an aggravating factor, not a

7   mitigating factor.  It goes to the abuse of trust that he

8   exhibited by committing these crimes.

9        The Government agrees with the guidelines calculation in

10  this case, as we've already gone over, but it's also quite

11  obvious that the base offense level in this case radically

12  underrepresents the severity of the crime.  That's the

13  Department of Justice's opinion, and it's also the opinion of

14  another court in this district who recently sentenced the

15  chaplain at FCI Dublin for sexual abuse.  And as the Court is

16  well aware, the sentencing commission is also aware of the

17  discrepancy in the guidelines and is actively considering

18  increasing the base offense level for sexual abuse of a ward

19  from 14 to 22.

20       Under those new proposed guidelines, the guidelines range

21  in this case would be approximately 97 to 121 months.  The

22  Government recognizes that those are not the current

23  guidelines, but we believe it's a helpful reference point when

24  thinking about what an appropriate sentence in this case is.

25       The proposed increased base offense level would better

account for the inherent coercion present in the prison context, but it still would not account for the extreme imbalance of power here, given the defendant's role as associate warden and warden.  The guidelines also don't account for the pattern and extent of the defendant's actions in this case.

Now just looking at the victims in this case who testified, understanding the Court's ruling, the guidelines don't capture one of those charged counts at all because it simply caps out.  It also doesn't account for the defendant's conduct towards Christina or Katrina, and it also doesn't account for a lot of the conduct that occurred toward the charged victims.  For example, it doesn't account for when the defendant told one victim to put a candy cane in her vagina. It doesn't account for when he penetrated her digitally after that incident or when he took a picture of her naked body, took it home with him, and cropped it to focus on her genitalia.

It also doesn't account for his instructions to numerous victims to strip naked for him when he did his rounds.  As one victim testified, she felt uncomfortable doing it, and he told her he would come back and waited for her to undress for him.

It also doesn't account for when he took screenshots of another victim's naked body without her permission during a video chat after she had explicitly told him she was uncomfortable with naked photographs.

1          And it doesn't fully account for the defendant's

2    persistent and dogged efforts to cover his tracks by deterring

3    inmates from coming forward, lying to federal agents, lying to

4    the jury under oath, lying to probation, and continuing to

5    refuse to accept responsibility for his actions.

6          All of this conduct is relevant conduct in this case that

7    the Court can and should consider in reaching the appropriate

8    sentence.

9          The Government recognizes that the sentence it's

10   requesting is a significant one, but it's also a necessary and

11   appropriate sentence in this case.  It's necessary not only

12   because of the defendant's heinous actions in this case but to

13   deter others from committing the same crimes committed by the

14   defendant.

15         The defendant thought he could get away with his conduct

16   because he thought he could silence his victims.  He thought

17   they would never come forward, and if they did, he thought no

18   one would ever believe them.  It's necessary in this case to

19   send a message to others that the defendant was wrong.  There

20   are consequences for his actions.  There are serious

21   consequences.

22         For all of those reasons, the Government submits that a

23   sentence of 180 months is appropriate in this case.

24             **THE COURT:**  And as I understand it, you're also asking

25   for a term of supervised release for 15 years?

1          **MS. PRIEDEMAN:**  Yes, Your Honor.

2          **THE COURT:**  Mandatory assessment of $800 and a fine of

3     20,000; correct?

4          **MS. PRIEDEMAN:**  Yes, Your Honor.  And we also believe

5     restitution is appropriate in this case.  Two of the victims

6     have submitted requests for restitution after the Government

7     filed its sentencing memorandum.

8          **THE COURT:**  And what's the amount on the restitution?

9          **MS. PRIEDEMAN:**  Maria is requesting $6,240, and

10    Melissa is requesting approximately $5,280.

11         **THE COURT:**  Can you tell me how you -- you made a

12    reference to the -- an adjusted or a different kind of

13    guideline calculation.  I'm not sure how you got there.

14         **MS. PRIEDEMAN:**  Yes, Your Honor.  So under the new

15    proposed guidelines for sexual abuse of ward, the base offense

16    level would be 22, and you would add 2 for vulnerable victim

17    and 2 for obstruction, which would get to you a base offense

18    level of 26.  But as I understand it, the sentencing commission

19    is not recommending an increase in the guidelines for the

20    abusive sexual contact charges, and so that adjusted offense

21    level would stay at 18, and so because it's 5 to 8 levels less

22    serious under the guidelines, each of those would count as half

23    a point rather than a full point.

24         **THE COURT:**  So the enhancement would not be 5, it

25    would be what?

1          **MS. PRIEDEMAN:**  Four, Your Honor.

2          **THE COURT:**  So that would be 26 plus 4, for an

3  adjusted of 30, and that brings you to the 97 to 121?

4          **MS. PRIEDEMAN:**  Yes, Your Honor.

5          **THE COURT:**  Okay.  Thank you.  All right.

6     Mr. Little.

7          **MR. LITTLE:**  Thank you, Your Honor.

8     Mr. Garcia stands before the Court today knowing that the

9  Court will and should take into account the seriousness of the

10 conduct for which he has been convicted.  His hope, however, is

11 that he will be sentenced as an individual and not as a poster

12 boy or as an issue.

13    The Government has consistently stated throughout these

14 proceedings and again here today at sentencing that Mr. Garcia

15 was the person who fomented or created the environment at FCI

16 Dublin, making reference to other cases.

17    As compelling as that might sound to say, the facts don't

18 support that.  Mr. Garcia did not come to FCI Dublin until

19 December of 2018.  He was the associate warden for

20 approximately 18 months and then was the warden for

21 approximately the last 10 months of his tenure.

22    Mr. Garcia -- as the Court knows from other cases, the

23 allegations of sexual misconduct of other people who have been

24 charged and convicted in this case predate Mr. Garcia's tenure.

25    It's also a matter of public record that FCI Dublin has,

1    for many years, even going back to the 1990s -- has been a sick

2    institution, probably one that should have been closed long

3    ago.

4        Mr. Garcia believes that with respect to an appropriate

5    sentence, if he is given the individualized sentence that the

6    Constitution as interpreted by our Supreme Court indicates that

7    he is entitled to, that numerous factors in his past should be

8    considered as mitigating factors.

9        For instance, although the Government argues that

10   Mr. Garcia's status as a law enforcement officer being in a

11   position of trust is an aggravating factor, obviously the

12   guidelines speak to the contrary.  The guidelines related to

13   this case specifically say that an abuse of position of trust

14   enhancement under 3B1.1(a) through (c) is not something that

15   should be applied because it is subsumed in the guideline

16   provisions themselves.

17       The Government is also asking the Court to sentence

18   Mr. Garcia based on a proposal that is currently pending with

19   the sentencing commission, and I think we all know from our

20   experience that those proposals many times do not resemble or

21   certainly do not mirror the ultimate recommendations, and it

22   simply is -- to assume that defendants, starting next year,

23   will receive sentences with a base offense level of eight

24   levels higher is merely speculation.

25       I understand the Court's comments at our last hearing, and

1    I read the Court's comments at other hearings, that Your Honor

2    feels that the guidelines do not accurately reflect or

3    appropriately reflect the seriousness of the conduct, and that

4    may well be the case, but to assume that there is going to be

5    an eight-level difference moving forward is -- is only

6    speculation.  It also invites the Court to impose what would be

7    an ex post facto sentence on Mr. Garcia.

8         **THE COURT:**  The guidelines are not binding.  We all

9    know that; right?

10        **MR. LITTLE:**  That's correct, Your Honor.

11        **THE COURT:**  So I have discretion to do what I believe

12   is a reasonable, but not greater than necessary, sentence to

13   achieve the objectives of sentencing, and I don't want you to

14   misinform the public about what that means with respect to the

15   guidelines because they are not binding.

16        **MR. LITTLE:**  That is correct, Your Honor.  My point

17   only was that the Government is arguing as a 3553(a) factor, my

18   understanding, some potential amendment to that guideline, and

19   I'm just trying to point out the, in our view,

20   inappropriateness of making that particular argument.

21       Mr. Garcia has -- there is no indication that prior to

22   going to U.S. -- I'm sorry -- FCI Dublin in December '18 had

23   committed any misconduct, even though he had by that time been

24   in the Bureau of Prisons as an employee and as a supervisor for

25   29 years.  I think Mr. Garcia himself, when he speaks later

today, will tell you that it's an assignment that he should not have taken for a number of reasons, and his 29 years of exemplary performance as an employee, as a family man, as a father should not be discounted.  The entire individual is being sentenced today, not just the Ray Garcia that the Government wants to portray.

There are numerous factors in the case law that indicate that Mr. Garcia is entitled to, as part of the 3553(a) factors which require a sentence sufficient but not greater than necessary to serve the goals of sentencing, a departure on any one of numerous basis, and I've already argued this at length in our brief, but I'll just point out in general, the guidelines --

**THE COURT:**  Do you mean a variance as opposed to a departure, or are you talking about a departure?

**MR. LITTLE:**  Most of these are variances, Your Honor. There is a 5K2.20(a) departure possible because of Mr. Garcia's prior exemplary life before engaging in this criminal conduct, and that's in the *United States vs. Smith* case from the Ninth Circuit in 2004, but the -- but I believe the remainder of these are all -- would be downward variances.

With respect to his age, Mr. Garcia is 55.  I believe he turns 56 in three months.  That is a factor that the Court can consider.

With respect to the lack of prior imprisonment and the

likely reformative effect of a shorter sentence, that's
something that the Court could consider.

The fact that Mr. Garcia will be a particularly vulnerable
target in prison, and that's supported by Mr. Flint's
declaration that we've provided as Exhibit E.

**THE COURT:**  I don't understand how that's captured in
3553.  You want me to assume that the Bureau of Prisons does
not take care of its inmates?

**MR. LITTLE:**  Your Honor, it was considered in the *Koon*
case, and for the same reasons, we would ask the Court to
consider.  I believe that Mr. Flint, a long-time employee and
supervisor and associate warden at the Bureau of Prisons, has
indicated, even with the best intentions, the difficulties that
Mr. Garcia will face in custody, not only based on his law
enforcement status, but as a law enforcement -- a former law
enforcement officer who is there based on being convicted for
sex crimes.

**THE COURT:**  If the Bureau of Prisons' warden didn't
think that he or she could protect Mr. Garcia, they could put
him on home confinement, couldn't they?

**MR. LITTLE:**  It would be an extraordinary measure,
but, yes.

**THE COURT:**  So there are things that they can do.

**MR. LITTLE:**  They could.  I believe the program
statement that pertains to custodial assignment would make

1   Mr. Garcia's assignment to home confinement exceedingly

2   unlikely, but it certainly is not impossible.

3           **THE COURT:**  And why is that?

4           **MR. LITTLE:**  Because of his offense level, because of

5   the length of his sentence, because of the number of

6   convictions that he has, more likely than not he would be

7   assigned to either an FCI or a USP.

8           **THE COURT:**  Okay.  Proceed.

9           **MR. LITTLE:**  With respect to Mr. Garcia's care, being

10  the primary caretaker for a son with special needs, with

11  respect to the central role he's played in his

12  multigenerational family, with respect to all of those factors,

13  those are things that the Court could consider in determining

14  what is the appropriate 3553(a) sentence.

15      Mr. Garcia, as we've requested in this case, we believe,

16  notwithstanding what the Government believes -- the Government

17  is asking for the maximum sentence for any defendant, that any

18  defendant could receive based on the charges for which

19  Mr. Garcia has been convicted, and as bad as the conduct that

20  Mr. Garcia got convicted of is, the charging statutes also

21  contemplate even more egregious conduct.

22      With respect to what we believe would be an appropriate

23  sentence, this is a case where we believe that the guidelines

24  do reflect due consideration for the seriousness of the offense

25  and the attendant circumstances, and as indicated in our

sentencing papers, we also are asking the Court to consider a

downward variance because of Mr. Garcia's likely vulnerability

to a sentence within Zone C of the guidelines that would make

him more likely for home imprisonment or some other alternative

placement.

     With respect to the restitution issue, Your Honor, and the

fines --

          **THE COURT:**  Well, you've asked for 23 months, which is

Zone D.  Are you now asking that it be reduced even further to

18 months?

          **MR. LITTLE:**  No, Your Honor.  I'm sorry.  Zone D.

It's a sentence of less than 2 years, 23 months.

     And with respect to the fine, the fine is based on

Mr. Garcia's wife's income, which was considered by probation.

However, probation, I think, failed to consider that Ms.-- that

Mr. Garcia's spouse was not married to him at the time of these

offenses.  That they are -- and I can represent to the Court

that they are pending divorce.  And also her salary that she

receives is not free and clear.  She has her own children and

other expenses that weren't contemplated by the probation

calculation of ability to pay.

     And with respect to restitution, Your Honor, we'll submit

on that.

     With respect to the 5,200 and some odd number that was

given by Ms. Priedeman, I received a letter that had some very

1   general outlines of what the proposed restitution would be for

2   that particular victim.  I'm not aware of one that specifies a

3   particular number.

4           **THE COURT:**  No.  I've only received one -- one

5   request, the 6240.  I've not received the other.  We can talk

6   about restitution later.

7           **MR. LITTLE:**  Those are -- those are my comments,

8   Your Honor.  I -- I know that Mr. Garcia and -- is anxious to

9   address the Court and -- and we do have a few other people who

10  want to address the Court on his behalf.

11          **THE COURT:**  Well, let's start there.  We'll start

12  there.

13          **MR. LITTLE:**  Very well.  With Mr. Garcia?

14          **THE COURT:**  No.

15          **MR. LITTLE:**  Oh, sure.

16          **THE COURT:**  With the others.

17          **MR. LITTLE:**  Thank you, Your Honor.

18          **THE COURT:**  Who would like to address the Court on

19  behalf of the Defense?

20          **MR. LITTLE:**  Mr. Garcia's oldest sister, Elida, is

21  here.  It's spelled E-L-I-D-I-A [sic].

22          **THE COURT:**  Okay.

23          **MR. LITTLE:**  Would you like her to speak from afar or

24  come up to the podium?

25          **THE COURT:**  She should come up to the podium.

1          **MR. LITTLE:**  Please pass forward.

2          **MS. STEWART:**  Your Honor, my name is Elida Stewart.

3          **THE COURT:**  Good morning.  Could you spell your name

4     place.

5          **MS. STEWART:**  Elida, E-L-I-D-A, S-T-E-W-A-R-T.

6          **THE COURT:**  Okay.  Thank you.  Good morning.

7          **MS. STEWART:**  As a representative for my family, I

8     wrote this letter to plead to the Court for leniency or

9     probation on behalf of my brother, Ray Garcia.

10         We are fully aware of the seriousness of the charges for

11    which my brother has been found guilty, and although we have

12    compassion for the victims, we want the Court to understand the

13    impact that losing our brother to the federal justice system

14    would do to our family.

15         It is because of our parents that I write this letter

16    today.  They're both in their 70s.  They both depend on my

17    brother to help them.  He is at our dad's house regularly to

18    help with things around the house that our dad can no longer

19    do.

20         Ray often makes himself available for my mom to help, my

21    sister's move, or anything that requires heavy lifting, he's --

22    he's the one that's there for our family.

23         This -- for our family, the trial experience has taken a

24    toll on us emotionally.  An extended sentence for my brother

25    would mean that our parents would never see their son outside

1   of prison ever again.

2       I also ask that the Court consider my nephew G., Ray's

3   special-needs son.  G. is very close to his dad.  G. respects

4   his dad, and they love each other so very much.  Because of his

5   disability, our fear is how a long sentence with his father

6   away from home would negatively affect G.

7       G. does not express his emotions like a neurotypical

8   individual, and his disability makes it challenging for him to

9   understand himself and others but mostly how a fair justice

10  system can take away his dad for making a mistake.

11      Losing his father would be devastating to my nephew.  It

12  would cause irreparable damage to his psyche.  We, as a family,

13  beg the Court to consider that fact.

14      Lastly, I feel it doesn't serve the community to lock away

15  a non-violent family member.  Ray spent his entire career

16  caring for individuals who committed heinous crimes with honor

17  and integrity, despite the jury's decision to the contrary.

18  Because of Ray's 30-year-plus career in law enforcement, he is

19  at risk for being targeted by the same individuals he protected

20  the community from.

21      My brother's life is here in California, so he poses no

22  flight risk.  He is a taxpaying citizen.  And any prison

23  sentence would just add to the burden and cost of the federal

24  bureau systems.

25      Therefore, as part of our leniency request, we, as a

1   family, are asking for Ray to be sentenced to an electronic

2   monitoring program or probation or as determined by the Court.

3       It is with much sincerity that we thank you for listening

4   to this letter and considering our request.  Thank you.

5       **THE COURT:**  Ms. Stewart, thank you for speaking.  I

6   did -- again, I did read all the letters, and I'll have more to

7   say.

8       I can tell you he will serve a custodial sentence.  I am

9   not going to just do electronic monitoring.  I can't, in good

10  conscience, do that.  I still have more to hear, but I do

11  appreciate that you all love him and that he's an important

12  part of your family.  So thank you for speaking.

13      **MR. LITTLE:**  Your Honor, I believe that that's the

14  only family member who is going to want to speak today.

15  Ms. Stewart spoke on behalf of the entire family.

16      **THE COURT:**  All right.  Let's hear from the victims.

17  Just make sure if you would state your name and spell it for

18  the record, please.

19      **KATRINA:**  Thank you, Your Honor.  My name is Katrina.

20      **THE COURT:**  That's -- that's fine.

21      **KATRINA:**  Okay.  K-A-T-R-I-N-A.

22      Thank you for hearing us today, really, because coming

23  forward is very formidable, it's not only difficult.  I admit,

24  there is a great deal of fear that comes along with it,

25  reporting prison rape.  That it gets swept under the rug for

months or years is heartbreaking to the abused.  As a ward of the government, it was their job to protect me, and they failed.

It still baffles me that how during the indictment, I went from being victim to just proving the Government's case for them.

However, being a ward of the federal government Bureau of Prisons, it was their job to protect me, and they failed as well.  I believe that due to their leader Garcia setting a standard of abusing inmates himself, all these cases have been going on.

I haven't been able to transfer to a less corrupt place because the Government needed me close by to come see you in court, putting me -- putting the defendant again before my own needs, not to mention I was still housed in the place and I'm still housed in the place I was abused with the same people still working there that sweep it under the rug and have complete disregard for my safety, which ultimately -- sorry -- which ultimately leads to more abuse from other prison staff based on Garcia's actions, as you heard in my testimony.

I was not seen as a name or a number to the Government but as a sexual play toy or a piece of meat, while I was used, degraded, humiliated, and sexually abused to gratify their sexual desires.  I understand I made a bad choice, which put me in prison, and that's in the past, and I've done everything I

can and so many classes to better myself that I can assure you my sentence did not come with a clause to include being sexually abused by prison staff multiple times and multiple staff members causing me PTSD, mental and emotional anguish, and more.

My hope is that Ray Garcia will get a lengthy sentence and help and much-needed, I feel, counseling moving forward and a sentence that Your Honor feels is right for his crimes before you today.

As I stand here today, I appreciate and thank you for all of your help in putting an end to these matters.

I am happy to answer any questions you have for me.  I did want to let you know that we have been able to see -- the TriValley Care has came to see us for outside psych help. However, we're only allowed to see them five times.  It usually ranges around a half hour, 45 minutes each time, and then we have to revert back to the staff at Dublin or whichever BOP they might be at, which I don't feel is helpful.

Each time they come, they are different people.  There is no continuity of care.  It's really, really re-traumatizing to have to go through the whole thing again, which each person that comes in -- no one has ever showed me credentials.  I haven't heard that any of them are actually licensed in that profession, which is disconcerting and disheartening as well.

While the staff may be changing at Dublin, the culture

1   isn't.  And the part that bothers me the most is regardless of

2   how he responds here in court today, there was no remorse shown

3   at all with his actions throughout the whole time.  It was

4   always laughs and smiles and then boasting about it afterwards.

5       If you have any questions, I'm happy to answer them for

6   you.

7       **THE COURT:**  I don't have questions.

8       There has been plenty of things, letters sent to me

9   about -- which suggests that BOP still has a lot of work to do

10  to get their house in order.  There were, during the course of

11  this case, a number of the United States Congress congressional

12  officials, who seemed to be interested, including

13  Representative Swalwell, and to the extent that you've not

14  written them, perhaps you should consider writing to them,

15  because that's what they are there for, and I do think they're

16  concerned.

17      **KATRINA:**  Okay.  I will definitely do that.  Thank

18  you.

19      **THE COURT:**  All right.  Anyone else?

20      **MS. PRIEDEMAN:**  Yes, Your Honor.

21      **MELISSA:**  Good morning, Your Honor.

22      **THE COURT:**  Good morning.

23      **MELISSA:**  At first I was terrified to be here.

24      **THE COURT:**  Wait.  I'm sorry.  I'm sorry to interrupt,

25  but you do need to give me your name and spell it.  Thank you.

1        **MELISSA:**  Melissa, M-E-L-I-S-S-A.

2        **THE COURT:**  Thank you.

3        **MELISSA:**  At first I was terrified to be here, to face

4   you again.  I never wanted to see your face or be anywhere near

5   you.  The hell that you brought to my life is unconceivable,

6   but the more I thought about it and talked to my family about

7   it, the more I knew I had to be here.  The only way I can put

8   this past me is to tell you in this court and anyone else who

9   is listening what happened to me and how it has affected me.

10  People like you need to be brought to justice.

11      You raped my mind, my soul.  You molested my body.  You

12  made my life a living hell in Dublin.  The impact and scars you

13  left me will never heal.  I have nightmares about what you did

14  to me.  You were supposed to protect and serve; instead, you

15  are a predator and a pervert.  You are a disgrace to the

16  federal government.

17      My family was the only people I trusted to tell what

18  happened to me.  You listened to my phone calls.  You watched

19  my video visits.  You discussed my visits with me and even

20  spoke of my son to me.  You stalked me for years and would hide

21  in the bushes outside to watch my every move.

22      You manipulated me and abused me for your perverted

23  pleasures.  You showed me hundreds of pictures of your penis on

24  your phone.  They made me sick.  You demanded me for years to

25  be naked and take pictures of me and sexually assault me.  You

played God with my life.  You used me and abused me.  You

tormented me.  You sucked the life out of me, but I want you to

know that you have no more power over me.

    You were supposed to lead by example, and you did not.

You said it was okay to rape us women and sexually assault us.

You covered up everything because you thought you had all the

power.  Look at you now.

    I have lived in fear every day.  The anxiety you've given

me is unexplainable.  I contemplated suicide because of the

trauma you put me through.  I never felt safe in Dublin.  Not

only did you sexually assault me and harass me, so did your

staff.  But you set the example, didn't you, Garcia.  What you

said goes.  So it was okay for you and everyone else who worked

there to harass us, and no one would say anything about it.

You encouraged everything and made it your playground.

    My family went through hell.  I was not able to tell them

anything over the phone.  I would just cry and scream and yell,

and they had no idea what was going on.  I finally was able to

tell my sister in person.  She spent countless hours helping

me, making phone calls.  She was demoted at her job because it

took up so much of her time, but she was doing everything that

she could to help me and to relay information to the FBI.

    I want you to look -- I want you to look me in the face

and apologize to me.  I want you to look the FBI and Marilyn

Andrew in the face and apologize and take responsibility for

what you did.

I want justice to be served at its fullest.  I want you to be made an example of.  This type of abuse needs to stop.  Men in power like you that prey on women who are locked in cages, terrified and afraid to speak out to save themselves from monsters like you, Garcia, you need to be stopped.

I pray I can heal from this.  I pray that other women can find the strength to do so, too.

I have no idea or how long, if ever, it will take to trust any man or any man in law enforcement again.  I fear retaliation every day because of Garcia.

I went to prison to better myself.  I thought I would be safe and do my time in peace, but instead, I was put in the hands of a sick predator.

You were the warden.  You were supposed to supervise and train staff and make sure all inmates were treated fair.  Instead, you did the exact opposite.

Your Honor, I am asking you to please take him away in handcuffs today.  He has had months to tie up all his loose ends after being found guilty on all charges.

Thank you, Your Honor.

**THE COURT:**  Thank you, Melissa.

Melissa, before you leave, I will let you know, just like I let the others, I am not -- I do not intend to send him away today.  And I have reasons for that as well, but thank you for

speaking.

**MELISSA:**  Thank you for letting me speak.

**THE COURT:**  Anyone else?

**MS. PRIEDEMAN:**  No, Your Honor.

**THE COURT:**  Mr. Garcia, you have the right to address the Court during your sentencing.  Would you like to do so, sir?

**THE DEFENDANT:**  Good morning, Your Honor.

**THE COURT:**  Good morning.

**THE DEFENDANT:**  Do you need me to spell my name?

**THE COURT:**  No.

**THE DEFENDANT:**  Your Honor, I stand before you today as a broken man.  I couldn't be more shamed.  I couldn't be more sorry.

I need to explain to you how I got to this point.

Two years ago, I was a respected employee of the Bureau of Prisons, and now I'm a convicted felon on my way to prison.

In December of 2018, I was assigned to Dublin and not an assignment that I wanted, not an assignment that I asked for. It's not even an assignment that I tried to accept, actually. The records from the agency will show that on my walkthrough of Dublin, I spoke to Warden Jenkins and advised him that I would prefer to resign in December of -- I'm sorry -- retire in December of 2018 than to work at Dublin because of difficulties in my life and because of the reputation of the institution.

He implored me to reconsider and give him a year's worth of work to establish a better correctional basis at that institution.

My reasons for being reluctant were not just based on its extremely poor reputation and long history of sordid conduct but also because I knew it was a place that would test my character and my difficulties.  For reasons that I -- are difficult to explain, I've always been a highly sexualized person, even as a young man in my 30s, and obviously now.  It is an issue that I never dealt with as I was constantly busy with my career and my family.  I tried to always be responsible and carry the burden of my family's needs, as well as the Bureau's needs.

I always try to be the person who is there for my parents. I didn't think to worry about my own issues or my own faults or doing something to work on my problems because I typically worked 60 or more hours a week, and it was my job to care for my family and all of the staff at all the many institutions I worked for.

I hated what I've become at Dublin.  The record should show I took every advantage of every detail that would assign me away from that institution.  I hate what it was making me become and that I was headed down a road that was hurting other people.  I didn't show strength, discipline, or character.

I don't want to make this about myself more than I already

have.  I am sorry beyond sorry to the women I've hurt or the victims in this case.  I don't refer to them by name, not out of disrespect but as -- out of respect, as I've not earned the right to call them by their first names.

I cannot imagine the pain and fear, shame that they've gone through as a result of my actions.  As a brother of four sisters, I have always tried to protect them from harm.  I had no right or reason to act as I did.

I am very sorry that I could not take responsibility for it sooner.  I foolishly hoped that somewhere somehow the good Lord would see a way to judge my good deeds and hard work over 30 years over the things that I had done wrong and that I would avoid being in front of you here today.  I thought that somehow this would go away, but I was wrong, terribly wrong.

What I can tell you is that I intend on making the best of my time in custody, and I'm finally going to work on myself like I should have done many years ago.  I am hoping to emerge from this a better father to my son.  I can only apologize to him since I've put him in this terrible situation.

My son has special needs, and I am and I always tried to be his anchor, his connection to the harshness the outside world imposes on children with special needs, so I'm very worried of what is going to happen to him.  I love him more than anything in this world, and it is unbearable to me to think he is having to make his way through the world without

1    me.  I will miss most of his growing-up years, but I also know

2    at the same time I've placed myself in this situation.

3        I am ashamed to be here admitting that I victimized women

4    who are victims and the witness -- I'm sorry -- who are the

5    victims in this case.  They are commended for having the

6    courage to come forward.

7        And I wanted my friends and family here today because I've

8    been avoiding confronting my issues for far too long.  I am

9    bringing on myself today the pain and embarrassment, the

10   humiliation that I always hoped to avoid, and I want them to

11   see it because if they're going to love the person who comes

12   out, they're going to have to accept the things I've done.

13       I cannot think of any other thing to say to you before I

14   accept your sentence that you will impose and hope that you

15   will consider all of the factors in your sentencing.

16           **THE COURT:**  So, Mr. Little, do I take it, given your

17   client's statement, that you are not appealing his conviction?

18           **MR. LITTLE:**  That's correct, Your Honor.

19           **THE COURT:**  So you take full responsibility for what

20   has happened?

21           **THE DEFENDANT:**  Yes, Your Honor.

22           **THE COURT:**  And you're waiving your rights to appeal?

23           **THE DEFENDANT:**  Yes, Your Honor.

24           **THE COURT:**  Mr. Little, *voir dire* him on that issue,

25   please.

1      **MR. LITTLE:**  Mr. Garcia, you're aware that you have a

2 statutory and constitutional right to appeal your conviction in

3 this case?

4      **THE DEFENDANT:**  Yes, Your Honor.  Yes, Your Honor.

5      **MR. LITTLE:**  Are you aware that only you, no one on

6 your behalf, can waive that right, and that your waiver of that

7 must not only be personal but knowing and intelligent?  Are you

8 aware of that?

9      **THE DEFENDANT:**  Yes, Your Honor.

10      **MR. LITTLE:**  And knowing that it's a personal right

11 that you have and intelligently waiving that and knowing that

12 only you can waive it and that the law entitles it to you, do

13 you nonetheless waive your right to appeal not only the

14 judgment in this case, the verdict, but also whatever sentence

15 Her Honor might impose?

16      **THE DEFENDANT:**  Yes, Your Honor.

17      **THE COURT:**  And collateral proceedings?

18      **MR. LITTLE:**  And, Mr. Garcia, you also, by a matter of

19 statute, have the right to appeal -- I'm sorry -- to file what

20 is called a motion under 28 U.S.C. 2255, which is a motion to

21 set aside your conviction and/or sentence in this case, and you

22 would be entitled to pursue that unless it is something that

23 you waive.  And, again, this is a waiver that you would have to

24 make personally, and it would have to be knowing and

25 intelligent by you.  Only you can make this of waiver.  No one

1    can make it for you.

2         Knowing that it's a waiver that only you can make and that

3    you have the right, unless waived, to pursue that motion, are

4    you prepared to waive that right?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Anything else with respect to those

7    issues, Ms. Priedeman?

8              MS. PRIEDEMAN:  Your Honor, I would just inquire if

9    he's had the opportunity to discuss this previously with

10   counsel and if he was satisfied with his representation with

11   current counsel.

12             MR. LITTLE:  Have you had --

13             THE COURT:  Go ahead.

14             MR. LITTLE:  Have you had an opportunity to discuss

15   and consider this matter?

16             THE DEFENDANT:  Yes, Your Honor.

17             MR. LITTLE:  And are you satisfied with the

18   representation that you've received from my office since you

19   retained us?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Okay.

22        Is there anything else from the Government?

23             MS. PRIEDEMAN:  No, Your Honor.

24             THE COURT:  Mr. Little, anything else?

25             MR. LITTLE:  Nothing further.

1      **THE COURT:**  Is there any reason why sentence should

2  not now be imposed?  Mr. Little?

3      **MR. LITTLE:**  No legal cause.

4      **THE COURT:**  Mr. Garcia, when young lawyers interview

5  judges and they think they want to be a judge, they always ask

6  us, "Well, what's the most difficult part of your job," and I

7  would say that most of us tell them that it's sentencing.  It's

8  sentencing because there is no clear answer, generally.

9      The objectives of sentencing have to consider lots of

10  different -- or they have lots of considerations.  So I've

11  heard today from you, from your family, from victims.  I sat

12  through that trial.  You lied on the stand.

13      One of the things that was not ever said explicitly is

14  deterrence, and it was never explicitly said by your lawyer.

15  It is right that a sentence is unique to you, unique to your

16  circumstance, and under Title 18 of the United States Code at

17  Section 3553, we look at lots of various issues, and a sentence

18  must consider you as an individual, but it also must consider

19  the seriousness of the offense.  The sentence must promote

20  respect for the law.  It must provide just punishment.  And

21  importantly in this case, it must provide deterrence.

22      The Bureau of Prisons has a lot of work to do.  It sounds

23  like you know it.  Your attorney knows it.  People who are

24  testifying before the sentencing commission know it.  And those

25  things do conflict with the need for your son to have a father

1    at home and the need for your parents to have their son at

2    home.  Right?

3        I've obviously been thinking about your case for a very

4    long time.  I will say that I disagree and -- with the

5    guideline calculations.  I've never said that -- well, I take

6    that back.  I did also disagree with them with respect to how

7    they dealt with crack cocaine.

8        But in this kind of case, the guidelines really do not

9    promote accountability, deterrence, or they're not quite

10   proportionate to sentencing for this kind of crime because

11   people in your position, by the nature of your position, tend

12   to be first-time offenders, so we're always looking at the

13   lowest end of the guidelines.

14       The guidelines really do not address the fact that

15   individuals who are found committing these crimes are doing

16   them to multiple people.  You didn't just hurt one person.  We

17   know you've hurt all of the people -- the women who testified,

18   and it appears from many of the submissions that I got that it

19   was not -- that they were not the only ones.  I don't know that

20   for a fact, but I don't have reason really to disbelieve them.

21       The courts, I think, across the United States are imposing

22   much higher sentences.  In the Highhouse case which

23   Judge Gilliam -- Judge Gilliam imposed the sentence, he imposed

24   84 months.  In that case, the acts may have been significantly

25   more traumatic.  I don't know.  I wasn't the judge in that

1   case.  I don't know all the facts.  But he imposed upwards of

2   80.  A Kentucky judge imposed 80.  Another judge in the Second

3   Circuit, upwards of 80.  Another judge in Virginia, 120.  These

4   are extraordinary, extra ordinary, breaches of public trust.

5   They are, in fact, what we call "abuse of power."  They are, in

6   fact, abuse of individuals who we expected you to protect.

7   That was the expectation.  That was the oath you took.

8       I sentence hundreds of people.  I sentence hundreds of

9   people.  I expect, and they should be able to expect, that when

10  they go into federal custody, they won't be abused.  And you

11  abused them, and there was no one watching you.  You were the

12  warden and you were the associate warden.  You were supposed to

13  be the check.  You were supposed to be the person making sure

14  no one else did that.  PREA doesn't work when the warden is the

15  one doing the abusing.  How is it supposed to work?

16      I can and I do weigh heavily the fact that you have

17  finally, finally taken responsibility.  I have imposed other

18  sentences, or at least one, and in the situation of my

19  colleagues, both of those individuals, both of them, accepted

20  responsibility.

21      You do have a constitutional right to a trial, but aside

22  from that, these victims need to heal.  I can tell you that

23  whatever sentence I impose here, they will have trauma well

24  after your leaving.  These things go on for years, decades,

25  their trauma.

1  I hope they don't.  I hope that they are able to move past
2  this.  And when I said to you last week when I told you this
3  was the piece that was missing, I was hoping that you would
4  finally digest what I was talking about.  So it works in your
5  favor that you finally are accepting responsibility.  And I
6  hope they can move on.  But this was a first step, and it was
7  an important step.  It was a critically important step.

8  As I looked at the sentencing factors, there were very few
9  which I considered to be mitigating.  Unlike Mr. Little, age is
10 not a mitigating factor, in my view.  You're in the -- you're
11 about the same age as most people that we send to prison or
12 that I sentence to prison.  If I have someone who is very young
13 and I don't believe that their brain is fully formed or someone
14 who is very old, that's where age might play a part, but you
15 knew exactly what you were doing.  You are a fully developed
16 individual.

17 You have, other than what you've told me today -- you had
18 no mental or emotional conditions that I knew about.  You
19 weren't diminished in terms of capacity by drugs or alcohol.
20 So most of -- most of the factors do not suggest a variance.

21 I do understand that you're very good to your family.
22 Many felons are.  And I understand that your son needs you.
23 Many felons have families that need them.  So that gets
24 weighed.

25 I do think it's important for you to remember -- and

1    you've waived your appellate rights.  I've said this before,

2    you had a constitutional right to a trial.  You were given

3    that.  You didn't have a constitutional right to lie, make

4    things worse.  You don't have a constitutional right to have

5    your lawyer teach you how to lie.

6         Until today, I would have called you an unrepentant

7    predator.  You're repenting now.  You were a predator, though.

8    I hope those predatory days are done, but that's what you were.

9         It was interesting, among the letters that were sent to

10   me, someone indicated that you presented arrogant, conceited,

11   and narcissistic.  They used the word "presented," which

12   suggested to me that somehow they thought you weren't those

13   things, but I certainly thought that you had characteristics of

14   those; right?

15        An exaggerated self, sense of one's own importance or

16   abilities.  That's arrogance.

17        An excessive pride in one's self.  That's conceit.  You

18   seemed to fit that.

19        An excessive interest in admiration of one's self, an

20   inflated sense of self-importance and entitlement, a need to be

21   constantly admired, to expect special treatment, preoccupation

22   with power, success, beauty.  Narcissistic.

23        Those all seem to be characteristics of what you were

24   doing out there.

25        When I thought about the victims, originally I didn't know

1   what they were going to say exactly, but I knew they weren't

2   lying because if they'd wanted to lie, they could have made it

3   so much worse.

4             (Cell phone rings in the courtroom.)

5        **THE COURT:**   Whoever has that phone better leave the

6   courtroom now.

7        They could have made it worse, and yet what they said --

8   what did they say?  They said they were lonely.  They liked the

9   attention.  And you knew it.  You knew it, so you fed yourself.

10  That's what we call exploiting your power for sexual

11  gratification.  I knew they weren't lying because they told us

12  that you were showing them pictures of your penis off your

13  phone.  We have plenty of pictures of your penis off your

14  phone.

15       I knew they weren't lying because the stories that you had

16  concocted in your head were, frankly, ludicrous, unbelievable.

17  The jury knew it and I knew it.

18       I would agree with Mr. Little in the sense that it appears

19  you entered a sesspool and then did nothing about it.  You just

20  went along for the ride and enjoyed the sesspool yourself.  You

21  should have done something about it.  There could have been

22  more evidence of that.

23       So I don't know everything.  I don't know the totality of

24  what's going on out there, but it needs to be stopped.  And

25  defendants need to know that accepting responsibility is an

1   important part of getting it to stop, and sentences need to be

2   long enough for them to understand that if they don't stop, if

3   they don't begin to accept responsibility, they will go away

4   for a very, very long time.

5       Pursuant to the Sentencing Reform Act of 1984, it is the

6   judgment of this Court that Ray J. Garcia be committed to the

7   Bureau of Prisons for a term of 70 months.  This term consists

8   of 70 months on Counts 1, 2, and 4; 24 months on Count 3, 5, 6

9   and 7; and 70 months on Count 8, all counts to be served

10  concurrently.

11      The Court recommends that the defendant participate in the

12  Bureau of Prisons Sex Offender Specific Treatment Program.

13      Upon release from imprisonment, the defendant shall be

14  placed on supervised release for a term of 15 years.  This term

15  consists of 15 years on Counts 1 through 7, 3 years on Count 8,

16  all terms to run concurrently.

17      Within 72 hours of release from the custody of the Bureau

18  of Prisons, the defendant shall report in person to the

19  probation office in the district in which he is released.

20      While on supervised release, you shall not commit another

21  federal, state, or local crime, you shall comply with all

22  standard conditions that have been adopted by this Court,

23  except the mandatory drug-testing program is suspended.

24      You shall comply with the following additional conditions,

25  including that the defendant shall comply with third-party risk

1  notification.

2  You shall not have any contact with the identified victims

3  in this case -- Melissa, Maria, and Rachel -- or any other

4  current or former federal inmate unless otherwise directed by

5  probation.

6  You must pay restitution, fines, and special assessments

7  imposed by this judgment that remain unpaid at the commencement

8  of the term of supervised release.

9  You must cooperate in the collection of DNA as directed by

10  probation.

11  You must submit your person, residence, office, vehicle,

12  or any property under your control, including computers, cell

13  phones, and other electronic devices, to search whenever asked

14  by a United States Probation Officer at a reasonable time and

15  in a reasonable manner based upon reasonable suspicion of

16  contraband or evidence or a violation of a condition of

17  release.  Failure to submit to such a search may be grounds for

18  revocation.  You must warn residents with whom you live that

19  you are subject to that provision.

20  You must not own or use a computer or computer-related

21  device without prior approval of probation.  "Computer" or

22  "computer-related device" means any electronic device capable

23  of creating, accessing, storing, viewing, or transmitting

24  material with visual depictions of sexually explicit conduct.

25  "Computer" or "computer-related device" includes, but is not

1    limited to, desktops and tower computers, laptops, smartphones,

2    security cameras such as nanny cams or cameras linked to

3    doorbells, USB or thumb drives, gaming platforms, compact

4    disks, and external hard drives.

5        I understand that in today's world, that is virtually

6    impossible.  The point is you need to check with probation

7    first to make sure that we have appropriate controls over what

8    it is you're doing to ensure you do not violate any more laws.

9        Do you understand?

10            **THE DEFENDANT:**  Yes, Your Honor.

11            **THE COURT:**  As directed by probation, you must enroll

12   in the probation office's Computer and Internet Monitoring

13   Program.  You must abide by the requirements of that program

14   and its Acceptable Use Contract.

15       You must not access the Internet or any online computer

16   service at any location, including employment, without the

17   prior approval of probation.  "Online services" includes any

18   Internet service provider or any public or private computer

19   network.  You must warn your employer of restrictions regarding

20   your use as directed by probation.

21       You must consent to probation's conducting periodic,

22   unannounced examinations of your computer equipment which may

23   include retrieval and copying of all data from your computer

24   and any peripheral device to ensure compliance with this

25   condition and/or removal of any such equipment for the purpose

1    of conducting more thorough inspection.

2        You must consent to the installation of any hardware or

3    software as directed by probation to monitor your Internet use.

4        You must not possess or use any data encryption technique

5    or program.

6        You must not access via the Internet or otherwise any

7    pornography or other materials depicting sexually explicit

8    conduct as defined at Title 18 of the United States Code at

9    Section 2256, subsection (2), without prior approval of

10   probation.

11       Your employment must be approved by probation.  Any change

12   in employment must be preapproved by probation.  You must

13   submit any name and addresses of proposed employers to the

14   probation office at least 10 days prior to any scheduled

15   change.

16       Your residence must be approved by probation and any

17   changes thereto must be preapproved.  You must submit any

18   request at least 10 days prior to any scheduled change.

19       You must register with the state sex offender registration

20   agency as required by state law.  You must provide proof of

21   registration to probation within three days of release from

22   imprisonment and placement on supervision in any state that has

23   adopted the requirements of the Sex Offender Registration and

24   Notification Act.

25       You must also comply with all requirements as directed by

probation, the Bureau of Prisons, or any state sex offender registration agency in which you reside, are a student, or were convicted of a qualifying offense.

You must participate in sex-offender treatment as directed by probation.  You are required under the law to pay all or part of the cost of such treatment in an amount not to exceed the cost of the treatment and as directed by probation. Probation will determine the proper copay.  And you may release any previous mental health evaluations to the provider.

As part of the program, you must submit to polygraph testing as recommended by the treatment provider.  However, you do retain your Fifth Amendment right under the Constitution to refuse to answer questions during the course of the treatment, absent a grant of use and derivative use immunity.

As part of the treatment program, you must submit to psychological testing as recommended by the treatment provider.

You shall pay a mandatory special assessment of $800, $100 per count.  The Court does not impose a fine in this case for the reasons outlined in the Defense memo.

With respect to restitution, I am prepared to order both requests, but it appears to me I don't know whether additional requests are coming in or should come in with respect to restitution, and under the code, I can delay a restitution order for, I think, 60 or 90 days.  Comments?

**MR. LITTLE:**  Your Honor, with respect to a restitution

| | |
|---|---|
| 1 | hearing, the Defense would agree to an approximate 90-day |
| 2 | continuance. |
| 3 | **MS. PRIEDEMAN:**  That's fine, Your Honor. |
| 4 | **THE COURT:**  Do you anticipate anything more? |
| 5 | **MS. PRIEDEMAN:**  I don't anticipate -- my understanding |
| 6 | is only the three charged victims can seek restitution under |
| 7 | the statute. |
| 8 | **THE COURT:**  Right, but I only have two. |
| 9 | **MS. PRIEDEMAN:**  Right.  The third victim has informed |
| 10 | me that she's not seeking restitution. |
| 11 | And just for the record, Your Honor, for Melissa's |
| 12 | request, she provided an approximation, so the number that I |
| 13 | had reached was essentially taking the low end of that |
| 14 | approximation. |
| 15 | **THE COURT:**  What was the high end? |
| 16 | **MS. PRIEDEMAN:**  The high end was $100 to $200 dollars |
| 17 | per session, so it would essentially be doubled. |
| 18 | **THE COURT:**  Do you want to meet and confer on that, or |
| 19 | do you want me to order it now? |
| 20 | (Counsel confer off the record.) |
| 21 | **MS. PRIEDEMAN:**  Your Honor, the parties have agreed to |
| 22 | 7500 for each -- 7500 for each for therapy sessions, |
| 23 | Your Honor. |
| 24 | **THE COURT:**  So 1500 total -- or 15,000 total? |
| 25 | **MS. PRIEDEMAN:**  Yes, Your Honor. |

1    **MR. LITTLE:**  That's correct, Your Honor.

2    **THE COURT:**  Restitution is ordered in the amount of

3    15,000.

4    I believe it is much more beneficial to have the amounts

5    paid directly to the victims than back to the U.S. government

6    in this particular case, so I'd rather have his resources go to

7    that issue.

8    As I've mentioned multiple times, the request to remand

9    today is denied.  The record should be clear that I could have

10   and perhaps I should have remanded him today.  Under Title 18

11   of the United States Code at 3143, in my view, any appeal would

12   have been for purposes of delay, but he's waived his right to

13   an appeal, and I will afford him the ability to put his affairs

14   in order.

15   It seems to me typically BOP needs at least 30 days to

16   find an appropriate placement.  The other consideration that I

17   had was that had I remanded him today, he would have gone

18   straight to Santa Rita as opposed to the Bureau of Prisons, and

19   it's not clear to me that Santa Rita could accommodate this.

20   So looking at my calendar, May 19th.

21   **MS. PRIEDEMAN:**  That's fine, Your Honor.

22   **THE COURT:**  May 19th?

23   **MR. LITTLE:**  Yes, Your Honor.

24   **THE COURT:**  All right.  So you must appear May 19th.

25   If you do not hear from BOP in terms of a placement at that

1    time, then you shall report in this courthouse downstairs at

2    the U.S. Marshals office before noon on Friday, May 19th.

3         Do you understand?

4              **THE DEFENDANT:**  Yes, Your Honor.

5              **THE COURT:**  Okay.

6         For the victims, I do hope that you can move on.  I can

7    tell you that this is now closure.  The fact that he waived his

8    constitutional rights to an appeal, to collateral proceedings,

9    to a new trial, which -- well, that was denied, but the new

10   trial would have been the request -- it means it's over.  With

11   respect to him, it's over.  And I will be watching him for the

12   15 -- well, maybe not all of 15 years.  I don't know how long

13   I'll be here, but certainly once he's out, I will be watching.

14   I'm not going away.

15        I hope you all can move on.  I know it's tough, but this

16   is a step in the right direction.

17        Anything else?

18             **MS. PRIEDEMAN:**  No, Your Honor.  Thank you.

19             **MR. LITTLE:**  Nothing further, Your Honor.  Thank you.

20             **THE COURT:**  We're adjourned.

21                  (Proceedings adjourned at 11:47 a.m.)

22

23

24

25

1

2

3                    <u>CERTIFICATE OF REPORTER</u>

4          I certify that the foregoing is a correct transcript

5   from the record of proceedings in the above-entitled matter.

6

7   DATE:   Friday, March 24, 2023

8

9   *Pamela Batalo Hebel*

10  _____
    Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
11  U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25